## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MEDLY HEALTH INC., *et al.*,[1] | ) | Case No. 22-11257 (___) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) |  |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) GRANTING RELATED RELIEF

The above-captioned debtors and debtors-in-possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), hereby file this motion (the "Motion") seeking entry of an interim order (the "Interim Order") and a final order (the "Final Order"), substantially in the forms attached to this Motion as **Exhibit A** and **Exhibit B**, pursuant to sections 105, 345, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the Debtors to (a) continue operating the Cash Management System (as defined

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Medly Health Inc. (3391); Care Well Pharmacy, Inc. (9048); Grubbs Care Pharmacy NW Inc. (0490); Marg Pharmacy, Inc. (5838); Medly Atlanta Inc. (7312); Medly Baltimore Inc. (2354); Medly Bedford Ave Pharmacy Inc. (3690); Medly Bristol Inc. (4556); Medly Bronx Inc. (4741); Medly Chicago Inc. (5231); Medly Dallas Inc. (7581); Medly DC Inc. (9403); Medly Enterprise LLC (8898); Medly Grand Central Inc. (1741); Medly Houston Inc. (7443); Medly Jersey City Inc. (5677); Medly Mail Service Pharmacy LLC (9203); Medly Miami Inc. (8101); Medly Orlando Inc. (7581); Medly Pharmacy Inc. (4606); Medly Pharmacy PA Inc. (8494); Medly Pittsburgh Inc. (8381); Medly Queens Inc. (9623); Medly Raleigh Inc. (5140); Medly San Antonio Inc. (9973); Medly Stamford Inc. (4966); Medly Tampa Inc. (5128); Medly UCHC Pharmacy Inc. (6672); Medly Utah Inc. (4648); Pharmaca Integrative Pharmacy, Inc. (0334); Tango340B LLC (4781); and West Campbell Pharmacy Inc. (2931).  The Debtors' business address is 7088 Winchester Circle, Suite 100, Boulder CO 80301.

herein), (b) honor and pay the Bank Fees (as defined herein) in the normal course, and (c) maintain existing business forms, and (ii) granting certain related relief, as described more fully herein.  In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. The Debtors confirm their consent pursuant to Rule 9013-1(f) of the Local Rules to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2.

## Background

4.      On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.  No trustee or examiner has been appointed in the Debtors' chapter 11 cases, and no committees have been appointed or designated.

DOCS_DE:241448.4 56185/001

5.      The Debtors operate four full service digital pharmacies, twenty-one brick-and-mortar, full-service specialty pharmacies serving twenty markets across nine states and one health and wellness store in Seattle, Washington.  The Debtors also operate an e-commerce business through the "Pharmaca.com" site.  The Debtors offer orchestrated consumer services such as delivery, prior authorization coordination, copay management, refill management and much more.  The Debtors' strategic pillars include prescription medications, health and wellness and order fulfilment, including, where available, same day delivery.  The Debtors hire expert practitioners and experienced pharmacists who deliver a superior customer experience.  As a result, the Debtors are a trusted partner of consumers and doctors.

6.      The factual background regarding the Debtors, including their historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of Richard Willis in Support of the Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.

## Cash Management System

7.      In the ordinary course of business, the Debtors utilize a centralized cash management system (the "Cash Management System") to collect, manage, and disburse funds used in their business.  The Cash Management System is essential to the stability of the Debtors' assets and business objectives, and to maximizing the value of their estates.

8.      As of the Petition Date, the Debtors maintained one hundred fifty one (151) bank accounts (the "Bank Accounts"), at three (3) different banks – JP Morgan Chase ("JP Morgan"), Silicon Valley Bank ("SVB"), and Wells Fargo, N.A. ("Wells") (collectively, the "Banks").  Payments to creditors are made from the Bank Accounts, in a variety of ways, including checks, drafts, wire transfers, credit cards, and automated clearinghouse ("ACH") transfers.  A general

3

diagram of the movement of funds within the Cash Management System is attached hereto as **Exhibit C**, and a summary of bank accounts and a short description of the purpose of each account is attached hereto as **Exhibit D** (the "Bank Accounts").

9.      All funds on deposit in the Debtors' Bank Accounts are insured by the Federal Deposit Insurance Corporation to the extent provided by law.   All of the Banks are on the Region 3 U.S. Trustee's list of approved depository institutions.   The Debtors do not invest any of their excess cash on hand.

10.      The following is a brief narrative summary of the typical cash flow for the key accounts in the Cash Management System.   Further explanation is provided on **Exhibit C** to this Motion:

    a.   Medly Store-Level Accounts:   The Debtors' Medly pharmacy stores (and mail pharmacy) each maintain approximately 4-5 accounts, including a main account at JP Morgan, and other accounts with SVB (checking, operating, payroll, and cash collateral) (the "Medly Store-Level Accounts").   These accounts are used to pay operating expenses and payroll at the store level.

    b.   Pharmaca Accounts:   The Debtors also maintain several accounts for their Pharmaca.com online and store-level pharmacy business (the "Pharmaca Accounts").   Unlike the Medly Store-Level Accounts, the Pharmaca Accounts are consolidated for all stores, rather than a series of store-level accounts.   These accounts include a main operating account (detailed below), receivable accounts, disbursement accounts, operating, payroll, and cash collateral, among others.

    c.   Main Operating Accounts:   The Debtors utilize two main operating accounts for each line of business – one main operating account for Pharmaca at JP Morgan (account XX0805) ("Pharmaca Main Operating Account") and one main operating account for Medly at SVB (account XX2628) (the "Medly Main Operating Account").

        i.      The Pharmaca Main Operating Account funds Pharmaca payroll, disbursements for Pharmaca accounts payable, other accounts for payments like benefit claim payments serviced through UMR.   The Pharmaca Main Operating Account also wires funds to the Medly Main Operating Account as needed to support Medly payable needs.

      Receipts into the Pharmaca Main Operating Account
include the Medly Store-Level Accounts, the Pharmaca
consolidated store account, Pharmaca e-commerce account,
and others.

ii.      The Medly Main Operating Account pays debt service,
which is swept daily by SVB, as well as funding
disbursements for Medly accounts payable at the Medly
Store-Level Accounts.

## Bank Fees

11.     The Debtors incur certain fees and charges in connection with the ordinary course

operation of the Cash Management System (collectively, the "Bank Fees"). The Bank Fees include

account maintenance charges, charges relating to ACH and wire transfers, lockbox and depository

service charges, and other customary miscellaneous charges. On average, the Debtors incur

approximately $50,000 in Bank Fees per month. In the ordinary course of business and typically

on a monthly basis, the Bank charges the Debtors and deducts from the appropriate bank accounts

certain service charges, and other fees, costs, and expenses. The Debtors do not believe there are

any material prepetition Bank Fees outstanding on the Petition Date, but nonetheless seek approval

to pay and, for the Bank to deduct, any such Bank Fees in the ordinary course when due.

## Business Forms

12.     The Debtors utilize numerous preprinted business forms in the ordinary course of

their business (including, without limitation, letterhead, purchase orders, invoices, and checks),

including in connection with their Cash Management System. The Debtors would be required by

the United States Trustee (the "U.S. Trustee") under the U.S. Trustee's *Operating Guidelines for

Chapter 11 Case* (the "U.S. Trustee Guidelines") to incur the expense and delay of ordering

entirely new business forms referencing the Debtors' status as debtors-in-possession absent relief

from the Court. The Debtors seek authority to use pre-existing business forms without such a

5

reference in order to minimize expense to the estate.  The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, therefore, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reorder checks with the designation "Debtor-in-Possession" and the corresponding case number.

## **Credit Card Program**

13.     As part of the Cash Management System, in the ordinary course of business, Brex Inc. ("Brex") provides the Debtors with access to corporate credit cards used by the Debtors' employees pursuant to a corporate credit card program (the "Credit Card Program").  The Brex corporate credit cards are issued by Fifth Third Bank, N.A..  The Credit Card Program is used to provide employees with the ability to cover certain payments for employment-related expenses, such as travel expenses, and other necessary and approved company expenditures.

14.     Employees must obtain prior approval in accordance with Company policy before incurring expenses to be paid by the Debtors.  Once an expense is approved, it is submitted to the accounts payable system for payment.  If an employee makes an unauthorized charge through the Credit Card Program, the employee is responsible for the unauthorized charge.  The Company, however, remains liable to Brex for payment on account of such charge if the employee does not remit payment.

15.     As of the Petition Date, Brex has issued 13 corporate credit cards under the Credit Card Program.  Debtor guarantees all obligations owing under the Credit Card Program, including any obligations incurred by the Debtors that use the Credit Card Program (collectively, such

obligations and guarantee of such obligations, the "Credit Card Obligations").  On average, the Credit Card Obligations amount to approximately $238,000 in the aggregate per month.

16.    The Credit Card Program is an integral part of the Cash Management System. Continued use of the credit cards by employees for business-related purchasing needs is essential to the continued operation of the Debtors' businesses.  As applicable, and to the extent not otherwise authorized under any order of this Court granting the relief requested in the Wages Motion,[2] the Debtors seek authority to (a) continue using credit cards and incurring Credit Card Obligations on a postpetition basis pursuant to the Credit Card Program; and (b) honor all past and future Credit Card Obligations of any of the Debtors to Brex and any of its affiliates in connection with the Credit Card Program, in the ordinary course of business on a postpetition basis, including, without limitation, making timely payments on account of any charges that were made under the Credit Card Program both prior to and after the Petition Date.

### Intercompany Transactions and Claims

17.    In the ordinary course of business, the Debtors engage in intercompany transactions ("Intercompany Transactions") with each other, which in turn give rise to intercompany receivables and payables (each, an "Intercompany Claim") in the ordinary course of their business. There are no non-debtor affiliates involved in any Intercompany Transactions.

18.    At any given time, as a result of the Intercompany Transactions, there may be claims owing by one Debtor to another Debtor.  The Debtors generally account for and record all Intercompany Transactions and Intercompany Claims in their centralized accounting system, the

---

[2] The "Wages Motion" means the *Debtors' Motion Seeking Entry of Interim and Final Orders (I) Authorizing, But Not Directing, the Debtors to (A) Pay Prepetition Employee Wages, Salaries, Other Compensation, and Reimburseable Employee Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief,* filed contemporaneously herewith.

results of which are recorded concurrently on the Debtors' balance sheets and regularly reconciled. The accounting system requires that all general ledger entries be balanced at the legal entity level, and, therefore, when the accounting system enters an intercompany receivable on one entity's balance sheet, it also automatically creates a corresponding intercompany payable on the applicable affiliate's balance sheet.  This results in a net balance of zero when consolidating all intercompany accounts.  All accounting entries, including Intercompany Transactions are recorded in the Debtors' accounting system.

19.    Through the relief requested by this Motion, the Debtors intend to continue undertaking Intercompany Transactions on account of obligations arising on a postpetition basis as between Debtors.  The Debtors maintain, and will continue to maintain, records of these transfers of cash and bookkeeping entries on a postpetition basis, and can ascertain, trace, and account for the Intercompany Transactions on demand.

### The Debtors' Bank Accounts Comply with Section 345 of the Bankruptcy Code

20.    Pursuant to the U.S. Trustee Guidelines, the U.S. Trustee generally requires chapter 11 debtors to, among other things, deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the U.S. Trustee's office.  As noted above, the Bank Accounts are maintained at JP Morgan Chase, Silicon Valley Bank, and Wells Fargo, N.A., each of which have executed a Uniform Depository Agreement ("UDA") with, and are designated as authorized depositories by, the U.S. Trustee, pursuant to the U.S. Trustee Operating Guidelines.  For this reason and the reasons articulated above, the Debtors submit that they are in compliance with section 345 of the Bankruptcy Code and with the U.S. Trustee Operating Guidelines.

## **Relief Requested**

21.     The Debtors seek entry of the Interim Order and Final Order, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Rules 6003 and 6004 of the Bankruptcy Rules, and Rule 2015-2 of the Local Rules, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, (c) maintain existing business forms, and (d) granting certain related relief, as described more fully herein.

## **Basis for Relief**

**A.      Maintaining the Existing Cash Management System
        is Essential to Debtors' Operational Stability**

22.     The U.S. Trustee Guidelines require a debtor-in-possession to, among other things:

    a.  establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes;

    b.  close all existing bank accounts and open new debtor-in-possession accounts;

    c.  maintain a separate debtor-in-possession account for cash collateral; and

    d.  obtain checks that bear the designation "debtor-in-possession" and reference the bankruptcy case number and type of account on such checks.

23.     These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and help protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date. Enforcement of this provision of the U.S. Trustee Guidelines during this Chapter 11 Case would severely disrupt the administration of the Debtors' estates. Accordingly, the Debtors respectfully

DOCS_DE:241448.4 56185/001

request authorization to operate the Bank Accounts in the same manner as was maintained in the ordinary course of business prior to the Petition Date.

24.    Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Additionally, courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  *In re Columbia Gas Sys.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).  The Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient."  *Columbia Gas*, 997 F.2d at 1061; *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

25.    Here, continued use of the Cash Management System will facilitate the Chapter 11 Cases by, among other things, avoiding administrative inefficiencies and expenses associated with disrupting this system and minimizing delays in the payment of postpetition obligations. The Debtors respectfully submit that parties in interest will not be harmed by the maintenance of the existing Cash Management System because the Debtors employ appropriate mechanisms and internal control procedures to prevent unauthorized payments on account of obligations incurred before the Petition Date.  As such, maintaining the Cash Management System is in the best interests of the Debtors' estates.

26.     Furthermore, as discussed above, in the ordinary course of business, the Debtors conduct transactions through electronic wire transfers and other similar methods.  If the Debtors' ability to conduct transactions by debit, wire, credit card, ACH transfer, or other similar methods is impaired, their estates will incur additional and unnecessary costs.  Accordingly, the Debtors submit that it is in the best interests of all stakeholders for the Court to grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.

**B.     Authorizing (i) the Bank to Continue to Maintain, Service, and Administer the Bank Accounts and (ii) the Debtors to Pay Bank Fees, Each in the Ordinary Course of Business, Is Warranted**

27.     The Debtors respectfully request that the Court authorize the Banks to continue to maintain, service, and administer the Bank Accounts as an account of the Debtors as debtors-in-possession, without interruption and in the ordinary course of business.  In this regard, the Banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, other instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; provided, however, that any check, advise, draft, or other notification that the Debtors advised the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the Banks only to the extent authorized by order of the Court.

28.     The Debtors further request that the Court authorize the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.  The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account either (i) at the direction of the Debtors, (ii) in a good-faith belief that the Court has

authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, the Bank will not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition. The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

29.     The Debtors further request that the Court authorize them to pay the Bank Fees and authorize the Banks to (i) continue to charge the Bank Fees and (ii) charge-back returned items to the applicable Bank Account, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business. The Debtors' inability to pay the prepetition Bank Fees or to continue to pay the Bank Fees in the ordinary course of business postpetition could hinder their ability to manage the Cash Management System to the detriment of the Debtors' estates.

30.     Courts in this district routinely have waived the U.S. Trustee Operating Guidelines in operating chapter 11 cases with ongoing business operations and restructuring efforts. *See*, *e.g.*, *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (authorizing the Debtors' continued use of existing bank accounts); *In re TZEW Holdco, LLC*, Case No. 20-10910 (CSS) (Bankr. D. Del. April 14, 2020) (same); *In re PES Holdings, LLC*, No. 19-11626 (KG) (Bankr. D. Del. Aug. 20, 2019) (same); *In re Blackhawk Mining LLC*, No. 19-11595 (LSS) (Bankr. D. Del. Aug. 9, 2019) (same).

**C.      The Court Should Authorize the Debtors to Continue
         Using Their Existing Business Forms**

31.     To avoid disruption of the Cash Management System and unnecessary expenses, pursuant to Local Rule 2015-2(a), the Debtors request authorization to continue to use their business forms substantially in the form existing immediately before the Petition Date, without

12

reference to the Debtors' status as debtors-in-possession.  The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors-in-possession and, thus, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, the Debtors will reorder checks with the designation "Debtor-in-Possession" and the case number.

32.     In other large chapter 11 cases, courts in this district have allowed debtors to use their prepetition business forms without the "debtor in possession" label.  *See*, *e.g.*, *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (authorizing debtors' continued use of preprinted check stock without a "Debtor in Possession" marking); *In re Riverbed Tech., Inc.,* No. 21-11503 (CTG) (Bankr. D. Del. Nov. 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 13, 2020) (same); *In re Extraction Oil and Gas, Inc.*, No. 20-10548 (Bankr. D. Del. July 13, 2020) (same).

**D.     Continued Performance of Intercompany Transactions Is Warranted**

33.     As stated above, the Debtors routinely engaged in Intercompany Transactions before the Petition Date.  In this regard, section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business . . . and [] use property of the estate in the ordinary course of business without notice or a hearing."  Additionally, under section 503(b)(1)(A) of the Bankruptcy Code, "[a]fter notice and a hearing, there shall be allowed, administrative expenses . . . including the actual, necessary costs and expenses of preserving the estate . . .".

34.     The Debtors believe that they do not require the Court's approval to continue entering into and performing under the Intercompany Transactions because such transactions are in the ordinary course of business within the meaning of section 363(c)(1) of the Bankruptcy Code. The Intercompany Transactions are not just a matter of routine in the Debtors' business; they are the types of transactions that are common among many business enterprises that operate through affiliates.    Yet, precisely because of their routine nature, the Intercompany Transactions are integral to the Debtors' ability to operate their businesses and successfully emerge from chapter 11.   Accordingly, out of an abundance of caution, the Debtors request express authority to engage in such transactions postpetition.

35.     Similar relief has been granted in other comparable multi-debtor chapter 11 cases in this district and others.   *See*, *e.g.*, *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Aug. 24, 2022) (authorizing postpetition intercompany transactions between debtors and granting administrative expense status to intercompany claims related thereto); *In re Riverbed Tech., Inc.,* No. 21-11503 (CTG) (Bankr. D. Del. Nov 18, 2021) (same); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 14, 2021) (same); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Mar. 26, 2021) (same); *In re Town Sports Int'l, LLC*, No. 20-12168 (CSS) (Bankr. D. Del. Oct. 13, 2020) (same).

E.      **Granting Administrative Expense Priority to Postpetition
        Intercompany Claims is Necessary and Appropriate**

36.     The Debtors also request that the Court grant  administrative expense status to all Intercompany Claims that arise postpetition as a result of an Intercompany Transaction, subject and junior in all respects to any superpriority claims, including adequate protection claims.   If Intercompany Claims are accorded such status, each entity using funds that flow through the Cash

Management System will continue to bear the ultimate responsibility for its ordinary-course transactions with affiliates.

37.     The Debtors' funds are aggregated in the Cash Management System.  The Debtors track all fund transfers in their accounting system and have the ability to identify and account for all Intercompany Transactions, including all cash receipts and disbursements.  Continuation of the Intercompany Transactions is in the best interests of the Debtors, their estates, and parties in interest.  To ensure that each individual Debtor will not fund, at the expense of its creditors, the operations of another entity, the Debtors request that, pursuant to sections 503(b)(1) and 507(a) of the Bankruptcy Code, all Intercompany Claims arising after the Petition Date be accorded administrative expense priority.

## Satisfaction of Bankruptcy Rule 6003

38.     The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion.  Pursuant to Bankruptcy Rule 6003, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001."  To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.  For reasons discussed above, the relief requested herein is integral to the Debtors' administrative activities in these Chapter 11 Cases and necessary to preserve the value of their business and maximize the value of their estates for the benefit of all stakeholders. Failure to receive such authorization and other relief during the

15

first twenty-one (21) days of these Chapter 11 Cases would severely disrupt the administration of the Debtors' estates at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Reservation of Rights

39.     Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay a prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law.

## Waiver of Bankruptcy Rule 6004

40.     The Debtors seek a waiver of any stay of the effectiveness of any order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." As set forth in the Motion, the relief requested herein is essential to prevent immediate and irreparable harm to the Debtors' business operations. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## **Notice**

41.     The Debtors will provide notice of this Motion to:  (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the agent under the Debtors' postpetition credit facility; (d) counsel to the lenders under the Debtors' prepetition credit facilities; (e) the United States Attorney's Office for the District of Delaware; (f) the state attorneys general for all states in which the Debtors conduct business; (g) the Banks; and (h) any party that requests service pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).

## **No Prior Request**

42.     No prior request for the relief sought in this Motion has been made to this or any other Court.

DOCS_DE:241448.4 56185/001

WHEREFORE, the Debtors respectfully request entry of the proposed Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor and pay the Bank Fees in the normal course, including any prepetition Bank Fees, and (c)  maintain existing business forms, and (ii) granting such further relief as may be appropriate and proper.

Dated: December 9, 2022                    **PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware  19899 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:   (302) 652-4400
Email: ljones@pszjlaw.com
             dbertenthal@pszjlaw.com
             tcairns@pszjlaw.com

Proposed Counsel to the Debtors and Debtors in Possession