IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MEDLY HEALTH INC., *et al.*,[1] | ) Case No. 22-11257 (KBO) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) Hearing Date: January 3, 2023 at 11:00 a.m. (ET) |
| | ) Obj. Deadline: January 2, 2023 at 12:00 p.m.(ET)[2] |
| | ) Re: Docket No. 15 |
| | ) |

**OBJECTION OF BEL AIRE PLAZA, LLC AND DEUTSCHE ASSET & WEALTH MANAGEMENT TO MOTION OF THE DEBTORS FOR ENTRY OF ORDERS: (I)(A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO STALKING HORSE AGREEMENT AND TO PROVIDE BID PROTECTIONS THEREUNDER, (C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES AND (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF; (II)(A) APPROVING THE SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND <u>(III) GRANTING RELATED RELIEF</u>**

Bel Aire Plaza, LLC and Deutsche Asset & Wealth Management ("<u>Landlords</u>")

respectfully submit their objection to *Motion of the Debtors for Entry of Orders: (I)(A) Approving*

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Medly Health Inc. (3391); Care Well Pharmacy, Inc. (9048); Grubbs Care Pharmacy NW Inc. (0490); Marg Pharmacy, Inc. (5838); Medly Atlanta Inc. (7312); Medly Baltimore Inc. (2354); Medly Bedford Ave Pharmacy Inc. (3690);Medly Bristol Inc. (4556); Medly Bronx Inc. (4741); Medly Chicago Inc. (5231); Medly Dallas Inc. (7581);Medly DC Inc. (9403); Medly Enterprise LLC (8898); Medly Grand Central Inc. (1741); Medly Houston Inc.(7443); Medly Jersey City Inc. (5677); Medly Mail Service Pharmacy LLC (9203); Medly Miami Inc. (8101);Medly Orlando Inc. (7581); Medly Pharmacy Inc. (4606); Medly Pharmacy PA Inc. (8494); Medly Pittsburgh Inc. (8381); Medly Queens Inc. (9623); Medly Raleigh Inc. (5140); Medly San Antonio Inc. (9973); Medly Stamford Inc. (4966); Medly Tampa Inc. (5128); Medly UCHC Pharmacy Inc. (6672); Medly Utah Inc. (4648); Pharmaca Integrative Pharmacy, Inc. (0334); Tango340B LLC (4781); and West Campbell Pharmacy Inc. (2931).The Debtors' business address is 7088 Winchester Circle, Suite 100, Boulder CO 80301.

[2] Extended by agreement of the parties.

*Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into Stalking Horse Agreement and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 15] (the "Bid Procedures Motion") and state as follows:

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

1.     On or about December 9, 2022 (the "Petition Date"), Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). No trustee or examiner has been appointed and Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.     The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the locations (the "Centers") set forth on the attached **Schedule A**.

3.     Each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.     On the Petition Date, Debtors filed their Bid Procedures Motion, seeking approval of Debtors' entry into that certain Stalking Horse Agreement, dated as of December 9, 2022 (the "Stalking Horse Agreement")[3] with MedPharmaca Holdings, Inc. (the "Stalking Horse"), as "stalking horse" for the sale of Assets, subject to higher and better competing bids at an Auction.

---

[3]     Capitalized terms not otherwise defined shall have the same meaning as set forth in the Bid Procedures Motion and proposed Stalking Horse Agreement.

The Bid Procedures Motion further seeks approval of bidding procedures (the "Bid Procedures") for the presentation and consideration of competing bids for the purchase of Debtors' assets, including the assignment of its leases.

5.  Landlords do not object to a fair and open sale process that provides the Debtors an opportunity to maximize the value of their assets, but that process must adequately protect the rights of the Landlords under Section 365 of the Bankruptcy Code, as well as the Landlords' due process, legal, and negotiated lease rights. The Bid Procedures, and the sale timeline proposed in the Bid Procedures Motion does not provide Landlords with sufficient time to meaningfully assess and object (if necessary) to any proposed assumption and assignment of the Leases. Landlords understand that the Debtors now intend to pursue different dates and objection deadlines than those sought in the Bid Procedures Motion, but have not been informed what those dates will be. Nor do the proposed Bid Procedures or the sale schedule provide the Landlords with the protections to which they are entitled to under their Leases and the Bankruptcy Code.

6.  Prior to filing this Objection, Landlords engaged in informal discussions with the Debtors which resulted in agreements to resolve some, but not all, of the Landlords' objections. As of the time of filing of this Objection, a revised form of Bid Procedures Order incorporating these resolutions has not yet been filed. To the extent any revised form of Bid Procedures Order filed by the Debtors fails to incorporate these agreements, the Landlords reserve their right to raise such objections at the hearing.

**II. ARGUMENT**

  **A. Any Sale Timeline Must Protect Landlords' Due Process Rights.**

7.  Fundamental due process requires that "notice must be reasonably calculated to apprise interested parties of the pendency of an action and to afford them an opportunity to present objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). *See also Sullivan v. Barnett*, 139 F.3d 158, 171 (3d Cir. 1998) (due process requires notice and a meaningful

opportunity to be heard).[4]  The Due Process Clause of the United States Constitution applies to proceedings under the Bankruptcy Code.  *See, e.g.*, *In re Center Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985); *Matter of Boomgarden*, 780 F.2d 657, 660-661 (7th Cir. 1985).  A fair and open sale process must provide Landlords with a meaningful opportunity to review adequate assurance information, assess a Successful Bidder's ability to perform under the Leases, sufficient time to file a substantive objection, and (if necessary) conduct discovery in advance of an evidentiary hearing on the proposed assumption and assignment of Leases.[5]  The proposed Bid Procedures do not provide that opportunity.

8.     The Bid Procedures do not take into account the complexity of reacting to potential bids and determining the effect of those bids on a Landlord's particular leasehold and shopping center.  Even assuming that the potential assignee is a nationally recognized and financially acceptable tenant, such that adequate assurance of future performance from a financial standpoint is not an issue, the Landlords still must review the nature of the potential use, proposed timing of renovations, requests for additional term or options, tenant improvement allowances, *etc.* as well as various exclusives, prohibitions, co-tenancies, reciprocal easement agreements, and other tenant matters to determine whether or not the proposed use and tenant either violates other leases or creates other issues for the landlord and the shopping center.  For example, should the use clause permit a change of use, Landlords need to determine whether or not other tenant exclusives or other provisions may be violated by that change of use.  While certain of the Landlords may have

---

[4]  Ordinarily, Rule 6004(b) of the Federal Rules of Bankruptcy Procedure provides that objections to proposed sales be filed and served not less than seven (7) days before the proposed action on the sale.

[5]  To the extent the Bid Procedures Motion contemplates the assumption and assignment of the Leases, it initiates a contested hearing subject to Rule 9014 of the Federal Rules of Bankruptcy Procedure ("FRBP").  *See* Fed. R. Bankr. P. 6006(a).  Any evidentiary hearing will include witness testimony, and under FRBP 9014, the Court should establish procedures to provide parties a reasonable time to schedule an evidentiary hearing where witnesses will testify.  *See* FRBP 9014(e).  Any final schedule must establish a reasonable time to deal with evidentiary hearings relating to the assumption and assignment of Leases.

only one or a few properties which they are managing, others have multiple shopping centers. They cannot be expected to respond on what may be less than a day's notice simply to satisfy the Debtors' compressed time frame for a Sale, less than two months after their bankruptcy filing. Landlords did not create this alleged emergency, and it cannot be used as an excuse to deny Landlords their due process rights, or the protections afforded them by the Bankruptcy Code.

9.      The timeline proposed by the Bid Procedures Motion presented a number of issues, including having objections to the identity of the Stalking Horse and other bidders due before the requisite adequate assurance information was provided to counterparties, an Auction commencing only 48 hours before the proposed Sale Hearing, and Auction results filed as soon as practicable but up to one day following conclusion of the Auction, with objections to the Auction and identity of the Successful Bidder due at the Sale Hearing.  As happens all too frequently, auctions rarely start when scheduled and often go late into the evening or early morning, sometimes even for more than one or two days.  The Debtors then contemplate that they will not file results of the Auction until possibly twenty-four hours after the end of the Auction.  The Bid Procedures require adequate assurance objections to be presented at the Sale Hearing, including an evidentiary hearing, quite possibly before the Auction concludes and the results of the Auction are known or any adequate assurance information is even disseminated.  The Court should not approve a process that could potentially require Landlords to conduct discovery and draft objections for a potential evidentiary hearing on assumption and assignment of Leases without even knowing if those Leases are subject to a bid, or if they are subject to a bid, without knowing the identity of the bidder or the proposed use of the Premises.

10.     In order to receive the benefits that the Bankruptcy Code provides to the Landlords under Section 365, including the heightened protections afforded shopping center landlords under 11 U.S.C. § 365(b)(3), Landlords need at least five (5) business days to assess any Successful Bidder and object prior to the Sale Hearing.  As proposed, the schedule does not provide any time for the Landlords to assess, let alone receive adequate notice of, the Successful Bidder for the Leases, to prepare and file relevant objections to the Sale.

5

11. Objections to the Sale, including to the assumption and/or assumption and assignment of the Leases to a Successful Bidder other than the Stalking Horse, should not be due until at least five (5) business days after: (a) a Successful Bidder has been identified; (b) the final proposed form of asset purchase agreement and form of sale order has been filed of record; and (c) Landlords have received adequate assurance information from such Successful Bidder. Otherwise, any Sale Hearing should serve only as a status conference and a subsequent hearing date set for consideration of any assumption and assignment of the Leases to a Successful Bidder.

**B. The Debtors must provide Landlords with Adequate Assurance Information that satisfies Section 365(b)(1) & (b)(3) prior to any objection deadline.**

12. Adequate assurance information must be provided to Landlords in a timely fashion and with sufficient time to file any objections and prepare for the Sale Hearing. While the Bid Procedures do require Qualified Bidders to submit certain so-called adequate assurance information related to their ability to consummate the Sale, the Bid Procedures do not specify the kinds of information that bidders must provide to Landlords as adequate assurance of future performance under the assumed leases. Nor do the Bid Procedures provide for any dissemination of such adequate assurance information received from Qualified Bidders to counterparties, yet the proposed procedures do establish a deadline for Landlords to object to such information anyway. The Debtors have committed to provide adequate assurance information for the Stalking Horse by no later than January 5, 2023, but have made no such commitment on the transmission of adequate assurance information for other qualified bidders.

13. It is well-established that Debtors bear the burden of presentation for assumption and assignment of a lease and the ultimate burden of proof that all requirements for the proposed assumption and assignment of a lease have been met. *In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *In re Memphis-Fridays Assocs.*, 88 B.R. 830, 840-41 (Bankr. W.D. Tenn. 1988); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309-10 (5th Cir. 1985); *In re Airlift Int'l Inc.*, 761 F.2d 1503, 1508 (11th Cir. 1985). Adequate assurance of future performance is clearly an element of the assumption process which must be met in addition

to the curing of any default. 11 U.S.C. § 365(b)(1)(A) & (C). Section 365(f)(2)(B) provides that a trustee or debtor-in-possession may assign an unexpired nonresidential lease only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 370 (Bankr. D. Del. 1999).

14. The initial burden of presentation as to adequate assurance falls upon the debtor. *Sea Harvest Corp. v. Riviera Land Co.*, 868 F.2d 1077, 1079 (9th Cir. 1989). The *Sea Harvest* court rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that "Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." *Sea Harvest, supra,* 868 F.2d at 1080. Adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. *In re World Skating Center, Inc.*, 100 B.R. 147, 148-49 (Bankr. D.Conn. 1989). Indeed, courts have required a *specific factual showing* through competent evidence to determine whether adequate assurance of future performance has been provided. *See, e.g.*, *Matter of Haute Cuisine, Inc.*, 58 B.R. 390, 393-94 (Bankr. M.D. Fla. 1986); *In the Matter of CM Systems, Inc.*, 64 B.R. 363, 364-65 (Bankr. M.D. Fla. 1986).

15. It has been held that the best form of adequate assurance of future performance is advance rent or a deposit. *In re Hub of Military Circle, Inc.*, 19 B.R. 460, 461 (Bankr. E.D. Va. 1982). However, it may also include "sufficient financial backing, escrow deposits or other forms of security or guaranty," *In re Gold Standard at Penn, Inc.*, 75 B.R. 669, 674 (Bankr. E.D. Pa. 1987), sound financial statements and a substantial net worth, *In re Taylor Manufacturing, Inc.*, 6 B.R. 370, 372 (Bankr. N.D. Ga. 1980), projected sales proceeds sufficient for and earmarked for payment of rent, *Buchakian v. Musikahn Corp.*, 69 B.R. 55, 56 (E.D.N.Y. 1986), and a substantial cash reserve, a favorable market outlook and the history of prompt payment, *Seacoast Products, Inc. v. Spring Valley Farms, Inc.*, 34 B.R. 379, 381 (M.D.N.C. 1983).

16. In its consideration of the setting of applicable deadlines, the Court should leave adequate time for landlords to receive necessary information, prepare and present objections, if necessary, and arrange for witnesses to appear at any contested Sale Hearing, thus affording landlords the protections of Section 365 of the Bankruptcy Code. The schedule should be adjusted to provide landlords with a minimum of five (5) business days to analyze and, if necessary, prepare an objection to the Successful Bidder after the Auction. Landlords cannot be assured that the evidence of adequate assurance of future performance, when provided by a Successful Bidder, will be complete in the first instance. Accordingly, any schedule must provide an opportunity for follow-up requests for further information and potentially even expedited discovery. There is no such opportunity provided by the Bid Procedures Motion, prejudicing the protections afforded to landlords by 11 U.S.C. § 365(b) and (f)(3). *See, e.g.*, *In re Joshua Slocum, Ltd.,* 922 F.2d at 1086; *In re Trak Auto Corporation*, 277 B.R. 655, 665-66 (Bankr. E.D. Va. 2002) (The legislative history of 1984 amendments to Section 365 "indicates that Congress sought to provide special protections to lessors of a debtor.").

17. The procedures proposed by the Bid Procedures Motion need to be modified to provide affected landlords with adequate notice of any proposed assignees of Debtors' leases and a meaningful opportunity to review and respond to evidence of adequate assurance of future performance, as required by Bankruptcy Code section 365, in advance of the Sale Hearing. As a practical matter, given the expedited sale process proposed by the Debtors, the Debtors should be required to provide all adequate assurance information to the affected landlords and their counsel of record by email, fax and/or overnight courier service within twenty-four (24) hours of the Debtors' receipt of such information from a potential bidder, and in no event later than at least five (5) business days before any proposed objection deadline.

**C.  Contents of Adequate Assurance Information**

18. The Debtors should be required to provide Landlords with adequate assurance information that satisfies Section 365(b)(1) & (b)(3) of the Bankruptcy Code in a timely fashion

and with sufficient time to file any objections and prepare for the Sale Hearing. While the Bid Procedures Motion does require Qualified Bidders to submit certain limited information to the Debtors related to their ability to perform under assumed contracts, the Bid Procedures do not adequately specify the kinds of information that bidders must provide to the Debtors as adequate assurance of future performance under the Leases (the "Adequate Assurance Information") and do not impose any requirement on providing complete Adequate Assurance Information to Landlords.

19. Adequate Assurance Information must address the ability of the proposed assignee to perform under the Leases in the future, and Landlord must receive, at a minimum, the following information, and a reasonable timeframe to review such information, if Debtors are to satisfy their burden:

(a) the specific name of the bidder, the proposed tenant that will act as the assignee, and the proposed name under which the assignee intends to operate in the Premises;

(b) the potential assignee's intended use for the Premises;

(c) audited financial statements, tax returns, and annual reports for the proposed assignee for the past three (3) years, including all supplements or amendments thereto;

(d) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the locations subject to the assignment request, and any financial projections, calculations and/or pro-formas prepared in contemplation of purchasing the Leases;

(e) all documents and other evidence of the potential assignee's commercial experience and experience operating businesses in a shopping center;

(f) a contact person for the proposed assignee that Landlords may directly contact in connection with adequate assurance of future performance; and

(g) if the proposed assignee is a newly formed entity, information regarding when such entity was formed, how it will be financed or capitalized, together with evidence of any financial commitments or credit enhancements, if any, that will be offered to guaranty the performance of obligations under the leases the newly formed entity seeks to have assumed and assigned to it.

20. The above is a non-exclusive list of the minimum information that should be included with any bid package for Landlords to timely and adequately assess a potential assignee's

viability, and the Debtors should be required to modify the Bid Procedures to provide notice to bidders of the kinds of Adequate Assurance Information that shall be provided with their bids. Landlords reserve the right to request further information they deem necessary to make an informed decision as to a potential assignee's ability to satisfy the requirements of Section 365.

21.   The proposed Bid Procedures also do not account for (or acknowledge) the heightened adequate assurance threshold the Bankruptcy Code requires for shopping center leases. The Bankruptcy Code requires more than the basic adequate assurance of future performance of the leases under Section 365(b)(1)(C). *In re Sun TV and Appliances, Inc.*, 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, the Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) - (D). *See Joshua Slocum*, 922 F.2d at 1086; see also *L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.)*, 209 F .3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements include the following:

- The source of rent and assurance that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);

- That any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);

- That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

- That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

22.   The Debtors must satisfy these heightened requirements in connection with an assumption and assignment under Section 365(f)(2)(B). *Sun TV and Appliances, Inc.*, 234 B.R. at 370. Courts also require a specific factual showing through competent evidence to determine whether the Debtors can satisfy Section 365(b)(3)'s heightened adequate assurance of future

performance requirements. *Haute Cuisine, Inc.*, 58 B.R. at 394. The Bid Procedures Motion fails to address this heightened standard, and the Bid Procedures should advise bidders that they must satisfy this heightened standard in order to be eligible to take an assignment of the Lease.

23. Finally, to the extent any Successful Bidder does not satisfy Landlords that it has a sufficient operational history or possesses sufficient operating experience, or does not show appropriate financial resources to satisfy Landlords' requirements, Landlords demand, pursuant to Section 365(l) of the Bankruptcy Code, that the Stalking Horse or other Successful Bidder post a security deposit, letter of credit, or other credit enhancement such as a third-party guaranty of at least four (4) month's rent and additional rent as security for the performance of the assignee's obligations under the Leases.

        **D.**     **Sale to Backup Bidder**

24. The Bid Procedures propose that in the event of the failure of a Successful Bidder to timely consummate an approved sale transaction, the Backup Bidder shall be deemed the Successful Bidder and the Debtors can consummate a transaction, including assumption and assignment of leases, to the Backup Bidder without any notice to landlords or further order of the Court. As with any successful bidder, the Landlords must be given notice of any alternate sale transaction to a Backup Bidder, including adequate time to investigate and review adequate assurance information for any Backup Bidder, and object, if necessary, before such Sale is approved. Accordingly, until such Backup Bidder has been identified as the Successful Bidder and adequate assurance information has been provided to the Landlords, with no less than five (5) business days to object following the provision of such information and notice of the Sale to the Backup Bidder, the Debtors may not consummate a sale transaction, or the assignment and transfer of any Lease, to a secondary bidder, and certainly not without a hearing, which should not be scheduled any earlier than at least five (5) business days following the date the Landlord may have to object.

### E.  **Landlord Bids**

25. The Bid Procedures are not clear as to whether the Debtors seek approval of an auction process solely for all of the Debtors' assets, or if the Debtors will accept partial bids or bids on individual lease lots. To the extent the Debtors are accepting such partial or individual lease bids, the Bid Procedures should include streamlined protocols for a Landlord to bid on its own Lease, as is customary in auctions in other cases. Landlords are the fee simple owners of their Premises and are positioned differently than other bidders—at least with respect to bidding on their own Leases. Landlords do not need access to due diligence information, and should not have to provide financial information, adequate assurance of future performance information, or other information to bid on their own Leases. In addition, Landlords should be entitled to credit bid any portion of the outstanding amounts owed under the Leases without the need of submitting a deposit. A Landlord bid letter that evidences the bid on its Lease and agreement to execute an agreeable form of lease termination or other agreement, that provides the amount of any proposed credit or other bid, should be deemed to satisfy the bid requirement for a Landlord and entitle such Landlord to appear and participate at the auction

### III.  JOINDER

To the extent not inconsistent with the foregoing, Landlords join in the objections to Debtors' Bid Procedures Motion filed by Debtors' other landlords and executory contract counterparties.

### IV.  RESERVATION OF RIGHTS

Landlords reserve the right to make such other and further objections to Debtors' Bid Procedures Motion as may be appropriate based upon any new information provided by Debtors or upon any different relief requested by Debtors. Landlords further reserve their rights to object to (i) any specific request to assume and assign either Lease on any grounds, including any showing

of adequate assurance of future performance proffered by Debtors or a proposed assignee, and (ii) any proposed form of asset purchase agreement submitted by any Successful Bidder(s).

## V. CONCLUSION

Accordingly, any order approving the Bid Procedures Motion should modify the proposed Auction and Sale Hearing timeline to provide for a fair process that affords landlords with a meaningful opportunity to review, analyze and, potentially, object to the proposed assignment of their leases with Debtors.

Dated: January 2, 2023
Wilmington, Delaware

*/s/ Laurel D. Roglen*
Leslie C. Heilman (DE No. 4716)
Laurel D. Roglen (DE No. 5759)
Margaret A. Vesper (DE No. 6995)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801-3034
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: heilmanl@ballardspahr.com
       roglenl@ballardspahr.com
       vesperm@ballardspahr.com

and

Dustin P. Branch, Esquire
Nahal Zarnighian, Esquire
BALLARD SPAHR LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: (424) 204-4400
Facsimile: (424) 204-4350
E-mail: branchd@ballardspahr.com
       zarnighiann@ballardspahr.com

*Counsel for Bel Aire Plaza, LLC and Deutsche Asset & Wealth Management*