**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| MEDLY HEALTH INC., *et al.*,[1] | ) Case No. 22-11257 (KBO) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) Related to Docket Nos. 15, 71, 132 |

**TRIPLEPOINT'S RESPONSE TO THE OBJECTION AND REQUEST
FOR ADJOURNMENT OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO MOTION OF DEBTORS FOR ENTRY OF ORDERS (I)(A)
APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL
OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO
STALKING HORSE AGREEMENT AND TO PROVIDE BID PROTECTIONS
THEREUNDER, (C) SCHEDULING AN AUCTION AND FOR RELATED RELIEF**

TriplePoint Venture Growth BDC Corp. ("TPVG"), TriplePoint Private Venture Credit, Inc. ("TPVC"), and TriplePoint Capital LLC ("TPC" and, collectively with TPVC and TPVG, "TriplePoint"), in their capacities as prepetition lenders and lenders under that certain DIP Credit Facility (as defined below). hereby file this response (this "Response") to the Official Committee of Unsecured Creditors' (the "Committee") *Objection and Request for Adjournment to the Motion of Debtors for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors Assets, (B) Authorizing the Debtors to Enter Into Stalking Horse Agreement and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and for Related Relief* [Docket

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Medly Health Inc. (3391); Care Well Pharmacy, Inc. (9048); Grubbs Care Pharmacy NW Inc. (0490); Marg Pharmacy, Inc. (5838); Medly Atlanta Inc. (7312); Medly Baltimore Inc. (2354); Medly Bedford Ave Pharmacy Inc. (3690); Medly Bristol Inc. (4556); Medly Bronx Inc. (4741); Medly Chicago Inc. (5231); Medly Dallas Inc. (7581); Medly DC Inc. (9403); Medly Enterprise LLC (8898); Medly Grand Central Inc. (1741); Medly Houston Inc. (7443); Medly Jersey City Inc. (5677); Medly Mail Service Pharmacy LLC (9203); Medly Miami Inc. (8101); Medly Orlando Inc. (7581); Medly Pharmacy Inc. (4606); Medly Pharmacy PA Inc. (8494); Medly Pittsburgh Inc. (8381); Medly Queens Inc. (9623); Medly Raleigh Inc. (5140); Medly San Antonio Inc. (9973); Medly Stamford Inc. (4966); Medly Tampa Inc. (5128); Medly UCHC Pharmacy Inc. (6672); Medly Utah Inc. (4648); Pharmaca Integrative Pharmacy, Inc. (0334); Tango340B LLC (4781); and West Campbell Pharmacy Inc. (2931). The Debtors' business address is 7088 Winchester Circle, Suite 100, Boulder, CO 80301. [Docket

No. 132] (the "Objection"). In support of this Response, TriplePoint respectfully states as follows:[2]

## RELEVANT BACKGROUND

### A.  Prepetition Loan to the Debtors and the Debtors' Operational Setbacks

1. Pursuant to the Plain English Growth Capital Loan and Security Agreement, dated as of November 20, 2020 (as amended, supplemented or otherwise modified, renewed or replaced from time to time, the "TPC Loan Agreement," together with such loan documents related thereto, the "TPC Loan Documents"), between the Debtors and TriplePoint, TriplePoint made certain secured advances to the Debtors (the "TPC Credit Facility") in accordance with the terms thereof.

2. Pursuant to the TPC Loan Documents, the Debtors granted to TriplePoint a second priority lien on substantially all their assets, senior to all other prepetition liens other than (x) the liens granted to the Silicon Valley Bank under that certain Loan and Security Agreement, dated as of November 1, 2019 (and other ancillary loan documents) and (y) the liens granted to certain holders of promissory notes the Debtors issued prior to the Petition Date (as to which the TriplePoint's liens are *pari passu*).[3]

---

[2]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Objection or the *Motion of the Debtors for Entry of Orders: (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (B) Authorizing the Debtors to Enter into Stalking Horse Agreement and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II) (A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Docket No. 15] (the "Bidding Procedures Motion").

[3]  The Committee makes an unfounded allegation that because TriplePoint shares part of its second lien position with certain insiders of the Debtors in their capacities as holders of promissory notes the Debtors issued, TriplePoint may also be an insider of the Debtors. Not so. TriplePoint has no relationship with any of the Debtors' insiders and is not affiliated with the Debtors in any way. TriplePoint's relationship with the Debtors has strictly adhered to a creditor–debtor relationship.

3. As of the Petition Date, the total outstanding amount due under the TPC Credit Facility is approximately $81 million in principal, plus interest, fees and costs.

4. About eighteen months after the parties executed the TPC Loan Documents, beginning in 2022, the Debtors experienced a number of operational setbacks. *First*, the Debtors' niche digital pharmacy model proved unprofitable and unsustainable. For example, the Debtors' digital pharmacy operations under the "Medly" brand name lost an average of $12-14 million each month for over a year. That underperformance forced the Debtors to close certain underperforming stores in an effort to bolster the profitability of the remaining stores

5. *Second*, in August of 2022, the Debtors' senior management became aware of certain operational and accounting irregularities orchestrated by the Debtors' original founders and certain other related individuals. Management promptly reported the issues to the Debtors' board of directors (the "Board"). The Board terminated the members of the Debtors' founders group who were involved in the improper activities.

6. *Third*, also in August 2022, the Debtors suffered a liquidity crisis. Specifically, on August 11, 2022, the Debtors were set to receive $125 million in financing from MidCap Financial Services LLC ("MidCap"). But hours before the funds were to be disbursed, Midcap informed the Debtors that it would not be funding the loan. The Debtors faced an immediate and critical liquidity crisis with devastating effects. For three and a half weeks, the Debtors were unable to purchase drugs with which to fill prescriptions. Sales plummeted by eighty percent (80%). With the Debtors unable to disburse necessary medications, many customers took their prescriptions elsewhere so they could be timely filled.

7.      As a result of this unanticipated liquidity crunch, the Debtors closed more than twenty (20) stores, shuttered their Utah call center and proceeded to terminate the employment of about 617 employees.

**B.      Short-Term Funding, Chapter 11 Preparations, and the DIP Credit Facility**

8.      The Debtors attempted over the course of months to raise additional financing before turning to TriplePoint. In response to those efforts, TriplePoint agreed to provide $10 million of additional financing under the TPC Loan Agreement in late August 2022. But that financing proved insufficient for the long term. So, to ensure that the Debtors could keep the lights on, TPC agreed to provide bridge financing of $1 million under the TPC Loan Agreement on a priority basis, which closed on November 30, 2022. Suffice it to say, TriplePoint was reluctant to extend any of the foregoing additional funding but agreed to the Debtors' requests after reviewing revised projections the Debtors provided.

9.      Unfortunately, the Debtors' operations continued to deteriorate. As a result, the Debtors realized that the only way to maximize value for their stakeholders was to commence these Chapter 11 Cases to pursue one or more sales of substantially all their assets. But the Debtors recognized they could not survive in chapter 11 on cash collateral alone, so they turned to TriplePoint for debtor-in-possession financing.

10.     TriplePoint again (reluctantly) agreed to extend up to $8 million in debtor-in-possession financing (the "DIP Credit Facility") on the terms set forth in the Superpriority Secured Debtor-In-Possession Credit Facility Term Sheet (the "DIP Term Sheet").[4] The DIP

---

[4]  The DIP Term Sheet is attached as Exhibit A to the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Authorizing the Debtors to Obtain Secured Superpriority Postpetition Financing, (II) Granting Priming Liens and Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Docket No. 73] (the "Interim DIP Order").

Term Sheet contemplated accelerated sale processes for three of the Debtors' business lines: (a) a private sale of the Debtors' Medly prescription lists to CVS (the "Medly Transaction"); (b) a private sale of certain Debtors' federal drug discount pricing program assets (the "Tango Transaction"); and (c) a sale of substantially all of the Debtors' assets related to the Pharmaca business on a going concern basis pursuant to a court-approved sale process (the "Pharmaca Transaction"). Under the DIP Term Sheet, the Medly Transaction and the Tango Transaction were both supposed to close by December 30, 2022. *See* DIP Term Sheet, Ex. A. These timelines were crucial because the Debtors' operations continued to lose money week after week, and the value of the Debtors' assets, particularly the prescription files, was rapidly deteriorating. Notably, the DIP Credit Facility does not provide for a roll-up of *any* of the amounts outstanding under the prepetition TPC Loan Agreement.

        C.      **Post-Petition Setbacks**

11. Since the Petition Date, the Debtors' Chapter 11 Cases have not gone according to plan, to say the least. On December 29, 2022, a major pharmacy retailer informed the Debtors that it was no longer interested in consummating the Medly Transaction. Although the Debtors quickly engaged with three other potential bidders, on December 30, 2022, each potential acquirer informed the Debtors they were no longer interested in acquiring the Medly assets. Importantly, the Medly Transaction was expected to generate $3 million in sale proceeds—a crucial source of liquidity that has now vanished practically overnight.

12. Moreover, the Debtors' operations have continued to hemorrhage cash. Indeed, the Debtors' recent projections show that the Medly business alone is losing $500,000 per week.

**D.      The Committee's Objection to the Bidding Procedures Motion**

13.     On January 2, 2023, the Committee filed its Objection.  The Committee takes issue with, among other things, the proposed sale timeline.  The Committee asks the court to delay the hearing on the Bidding Procedures Motion for an additional two weeks (*i.e.*, from January 3, 2023 to January 17, 2023) and extend the overall sale timeline by an additional six (6) weeks.  Objection, ¶¶ 1, 53.  To support its request to delay the sale timeline, the Committee maintains that the Debtors' prepetition marketing efforts were insufficient, and that the Debtors manufactured the process to deliver the assets to the Stalking Horse without a meaningful marketing process.  *Id.*, ¶¶ 36–37, 40.[5]

## RESPONSE

14.     The Court should reject the Committee's requests to delay the hearing on the Bidding Procedures Motion by an additional two weeks and extend the overall sale timeline by an additional six weeks.  The Committee fails to consider the extreme liquidity and time constraints all parties in interest have been under since August 2022.  While all parties in interest would have liked more time to consider their options, that time simply was not—and is not—available.  Indeed, it is TriplePoint that will suffer most from the Debtors' shortcomings—to the tune of more than $81 million.

15.     When the Debtors commenced these Chapter 11 Cases, given their constrained liquidity, they had only a limited path available to deliver a meaningful recovery to their stakeholders because of the rapidly declining value of the Debtors' assets, the Debtors' financial performance to date, and the Debtors' own projections.  Consistent with that understanding, the

---

[5]  The Committee spends a great deal of time highlighting that the Stalking Horse is an affiliate of TriplePoint.  *See, e.g.*, Objection, ¶¶ 4, 6, 26, 28, 36.  Numerous parties, including TriplePoint, have previously disclosed that fact to the Court, and TriplePoint has never attempted to hide it.

Debtors, TriplePoint, and other parties in interest recognized the need for a tight, accelerated timeline with little room for deviation. Those factors were instrumental in formulating the Approved Budget (as defined in the DIP Term Sheet) and the overall plan for the Chapter 11 Cases reflected in the Milestones. *See* Bidding Procedures Motion, ¶ 11; DIP Term Sheet, Ex. A.

16. As explained above, however, since the Petition Date, the Debtors' restructuring efforts have stalled. Indeed, the failure of the Medly Transaction has two adverse effects on these Chapter 11 Cases: (a) the Debtors have a $3 million hole in the Approved Budget; and (b) the Debtors are in default under the DIP Credit Facility. *See* DIP Term Sheet, at 14 (providing that the failure to satisfy any of the "Chapter 11 Milestones" constitutes an "Event of Default"). The Event of Default gives TriplePoint the right to terminate the Debtors' access to the DIP Credit Facility. *See* Interim DIP Order, ¶ 21.

17. The reality is that at this point, there is no longer any certainty that the DIP Credit Facility will be repaid in full if additional amounts are funded as contemplated. Although the Committee asserts that the Approved Budget has some flexibility to extend the timeline, Objection, ¶ 38, a preliminary analysis of the Approved Budget indicates that extending the timeline of the Chapter 11 Cases by a mere three weeks means the Debtors begin to run a negative cash balance of about $2.0 million beginning the week of March 4, 2023.

18. TriplePoint is not committed to funding additional amounts into these Chapter 11 Cases. Instead, TriplePoint will have no choice but to evaluate its options and carefully consider whether funding the sale process makes sense. Even without the Committee's Objection, this was already under consideration by TriplePoint. Although TriplePoint appreciates the difficult position that the Committee and its constituents are in, unsecured creditors are deeply out of the

money and have little if any prospect of seeing a recovery of any kind. Notwithstanding that dim outlook, the Pharmaca Transaction contemplates a sharing arrangement under which a portion of litigation proceeds being acquired will be shared with the estates (which proceeds are expected to ultimately flow to unsecured creditors).

19. Again, any further delays of the kind the Committee seeks in its Objection will only compound the likelihood of further setbacks, and TriplePoint will have few options. These Chapter 11 Cases had a limited path for success from the outset and are at an inflection point. The Debtors must now continue to operate in default under the DIP Credit Facility and without the much-needed sale proceeds from the Medly Transaction. Given these setbacks, the Debtors simply cannot afford an extension of any Milestones, and TriplePoint is unwilling to go down that path.

## CONCLUSION

**WHEREFORE**, TriplePoint respectfully requests that the Court (a) overrule the Committee's Objection, (b) grant the Bidding Procedures Motion, and (c) provide any other relief the court deems necessary.

Dated: Wilmington, Delaware
January 3, 2023

**MCDERMOTT WILL & EMERY LLP**

*/s/ David R. Hurst*
David R. Hurst (I.D. No. 3743)
David W. Giattino (I.D. No. 5614)
1007 North Orange Street, 10th Floor
Wilmington, Delaware 19801
Telephone:   (302) 485-3900
Facsimile:   (302) 351-8711
Email:       dhurst@mwe.com
             dgiattino@mwe.com

– and –

Darren Azman (admitted *pro hac vice*)
Riley T. Orloff (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
Telephone:(212) 547-5400
Facsimile: (212) 547-5444
Email:　　dazman@mwe.com
　　　　　rorloff@mwe.com

– and –

R. Jacob Jumbeck (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, Illinois 60606
Telephone:　(312) 372-2000
Facsimile:　(312) 984-7700
Email:　　　jjumbeck@mwe.com

*Counsel to TriplePoint Venture Growth BDC Corp., TriplePoint Private Venture Credit, Inc., and TriplePoint Capital LLC*