# **EXHIBIT B**

# **Reply**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| MEDLY HEALTH INC., *et al.*,[1] | ) Case No. 22-11257 (KBO) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: Docket Nos. 14, 73, 147** |

**DEBTORS' REPLY IN SUPPORT OF MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 361, 362,
363, 364, AND 507 (I) AUTHORIZING DEBTORS TO OBTAIN SECURED
SUPERPRIORITY POSTPETITION FINANCING, (II) GRANTING PRIMING
LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS,
(III) AUTHORIZING THE USE OF CASH COLLATERAL, (IV) GRANTING
ADEQUATE PROTECTION, (V) SCHEDULING A FINAL HEARING
AND (VI) GRANTING RELATED RELIEF**

The above-referenced affiliated debtors and debtors in possession (together, the "Debtors") file this reply (the "Reply") in support of their financing motion [Docket No. 14] (the "Motion")[2] and in response to the objection to the Motion [Docket No. 147] (the "Objection") filed by the Official Committee of Unsecured Creditors in these cases (the "Committee"). Separately, the Debtors will be filing with the Court a proposed form of final order approving the Motion,

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Medly Health Inc. (3391); Care Well Pharmacy, Inc. (9048); Grubbs Care Pharmacy NW Inc. (0490); Marg Pharmacy, Inc. (5838); Medly Atlanta Inc. (7312); Medly Baltimore Inc. (2354); Medly Bedford Ave Pharmacy Inc. (3690); Medly Bristol Inc. (4556); Medly Bronx Inc. (4741); Medly Chicago Inc. (5231); Medly Dallas Inc. (7581); Medly DC Inc. (9403); Medly Enterprise LLC (8898); Medly Grand Central Inc. (1741); Medly Houston Inc. (7443); Medly Jersey City Inc. (5677); Medly Mail Service Pharmacy LLC (9203); Medly Miami Inc. (8101); Medly Orlando Inc. (7581); Medly Pharmacy Inc. (4606); Medly Pharmacy PA Inc. (8494); Medly Pittsburgh Inc. (8381); Medly Queens Inc. (9623); Medly Raleigh Inc. (5140); Medly San Antonio Inc. (9973); Medly Stamford Inc. (4966); Medly Tampa Inc. (5128); Medly UCHC Pharmacy Inc. (6672); Medly Utah Inc. (4648); Pharmaca Integrative Pharmacy, Inc. (0334); Tango340B LLC (4781); West Campbell Pharmacy Inc. (2931); Khora Health Solutions, Inc. (2909) and RPH Innovations, LLC (3767). The Debtors' business address is 7088 Winchester Circle, Suite 100, Boulder, CO 80301.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

along with a redline against the entered interim order [Docket No. 73]. In further support of this Reply, the Debtors respectfully state as follows:

**REPLY**

1. Faced with an extreme liquidity crisis and a rapidly closing window to save their business, the Debtors moved with alacrity to secure the DIP Credit Facility to protect employees and patients, while preserving and maximizing going concern value, particularly with respect to the Debtors' Pharmaca line of business, for the benefit of all of their stakeholders. The terms of the DIP Credit Facility were hard fought and negotiated in good faith and arms' length in concert with an asset purchase agreement with a third party, TerraMar Capital, LLC, along with the Prepetition TPC Lenders. The DIP Credit Facility, among other things, ensures that: (a) employees are timely paid for all of their hard work; (b) patients of the Debtors' pharmacy operations continue to be serviced without interruption; (c) creditor claims are mitigated where possible; and (d) ultimately, the value of estate assets can be maximized. While the Committee attacks the DIP Credit Facility, the Committee offers no viable alternative and its "burn all bridges" approach would lead to the immediate shutdown of the Debtors' going concern operations. If the Committee had its way, all of the Debtors' employees would be immediately terminated, patients would be left without a trusted pharmacy partner, and the pending stalking horse bid of $18.5 million in cash (subject to working capital adjustments) would be wasted.

2. The Debtors will not belabor the points about timing and process raised by the Committee in its objection to the proposed bid procedures in these cases (and reasserted in the Objection), which already have been hotly contested at an evidentiary hearing. It suffices to say that the DIP Credit Facility is absolutely necessary in order to allow the Debtors to function as a

2

DOCS_SF:108344.2 56185/001

proper steward of their chapter 11 estates and satisfy all accruing administrative expenses. The Committee primarily takes issue with the scope of the liens provided under the DIP Credit Facility, which cover commercial tort claims and the proceeds of Avoidance Actions. However, there is nothing unusual about this request given that there is up to $8 million of new money that is being provided under the DIP Facility on a priming basis. The DIP Lenders, as to the new money advances, and the Consenting Prepetition Lenders, as to any potential diminution in value, are entitled to be covered by liens and superpriority claims on substantially all of the Debtors' assets consistent with the applicable provisions of the Bankruptcy Code.

3. Further, the Debtors are advised that the DIP Lenders and the Consenting Prepetition Lenders are considering certain concessions. Those negotiations are still ongoing.[3]

4. At bottom, the relief sought under the Motion represents the best, and only, opportunity for the Debtors to operate their business as a going concern during the pendency of these chapter 11 cases and thereby maximize the value of these estates for the benefit of all parties in interest, including unsecured creditors. Based on the foregoing, and for the reasons set forth below, the Debtors respectfully request that the Court approve the Motion on a final basis.

**BASIS FOR RELIEF**

A. **The DIP Credit Facility Should Be Approved Under the Business Judgment Standard**

5. As noted in the Motion, a debtor's decision to enter into a postpetition lending facility under section 364 of the Bankruptcy Code is governed by the business judgment standard. *See, e.g.*, *Trans World Airlines, Inc. v. Travelers Int'l AG (In re Trans World Airlines, Inc.)*, 163

---

[3] The Debtors are also currently in the process of updating their proposed budget, which is subject to approval by the DIP Lenders.

B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition credit facility because such facility "reflect[ed] sound and prudent business judgment"); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (financing decisions under section 364 of the Bankruptcy Code must reflect a debtor's business judgment).

6. The Committee asserts, without any legal precedent or legitimate factual basis, that the DIP Credit Facility is "unfair", "may not be the best source of financing available", and "should be reduced". The Committee focuses on the DIP Lenders' and the Prepetition TPC Lenders' dual status as prepetition lenders and minority interest holders in the stalking horse bidder (specifically, 17.5% as disclosed at the bid procedures hearing). None of that has anything to do with the applicable business judgment standard for approval of the DIP Credit Facility.

7. Of course the Debtors need the money available under the DIP Credit Facility. There can be no credible argument that they do not. As it is, given a $3 million shortfall in the budget associated with the sale of prescription lists that has fallen apart, the Debtors barely have enough cash to make it through a contemplated closing date by no later than February 11, 2023.

8. The proper standard in the Third Circuit has been described by Judge Gross as follows:

> Debtors correctly posit that courts will almost always defer to the business judgment of a debtor in the selection of the lender. The business judgment rule is a standard of judicial review designed to protect the wide latitude conferred on a board of directors in handling the affairs of the corporate enterprise. The rule refers to the judicial policy of deferring to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions. Under the rule, courts will not second-guess a business decision, so long as corporate management exercised a minimum level of care in arriving at the decision. The business judgment rule under Delaware law and the law of numerous other jurisdictions establishes a presumption that in making a business decision, the directors of a

corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.

Under this formulation, the business judgment rule governs unless the opposing party can show one of four elements: (1) the directors did not in fact make a decision, (2) the directors' decision was uninformed; (3) the directors were not disinterested or independent; or (4) the directors were grossly negligent.

*In re L.A. Dodgers, LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011), *see also Official Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements Inc. (In re Midway Games Inc.)*, 428 B.R. 303, 320 (Bankr. D. Del. 2010) ("a heightened scrutiny of a transaction between a parent and subsidiary, 'entire fairness,' is appropriate only when a controlling stockholder uses its control to negate the judgment of the subsidiary's independent board and both causes the transaction and dictates the terms."), *but see Deutscher Tennis Bund v. ATP Tour, Inc.*, 610 F.3d 820, 839 (3d Cir. 2010) ("The business judgment rule presumption can be rebutted by establishing that the board was either interested in the outcome of the transaction or lacked the independence to consider objectively whether the transaction was in the best interest of its company and all of its shareholders. To establish that a board was interested[,] . . . a plaintiff must allege facts as to the interest . . . of the individual members of that board.").

9. There is no heightened scrutiny required here with respect to the DIP Credit Facility because the Debtors and their board independently approved it without any input or influence from the DIP Lenders or the Prepetition TPC Lenders, who have no relationship with the Debtors aside from their position as secured creditors. The fact that the DIP Lenders and Prepetition TPC Lenders have a 17.5% minority role in the stalking horse bidder is not relevant to the analysis.

10. Further, contrary to the Committee's implications, the Debtors are not, through the DIP Credit Facility, handing over the estates' litigation claims to the DIP Lenders. All such assets

5

remain property of the Debtors' estates, pending the outcome of the Debtors' ongoing sales process. Yes, litigation claims are included in the collateral package in favor of the lenders, but that is only to the extent necessary to secure the Debtors' obligations under the DIP Credit Facility and to provide adequate protection to the Consenting Prepetition Lenders in the event of any diminution in the value of their interests in the Debtors' assets. Moreover, as noted, the DIP Lenders and the Consenting Prepetition Lenders are considering other concessions too. Nothing more is required to meet the business judgment standard for approval of the DIP Credit Facility.

B. **The DIP Liens and Adequate Protection Liens in Commercial Tort Claims and the Proceeds of Avoidance Actions Are Necessary to Obtain the Financing**

11. Section 550 of the Bankruptcy Code provides that the debtor-in-possession may recover property in connection with avoided transfers "for the benefit of the estate." 11 U.S.C. §550; *Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290, 293 (7th Cir. 2003) ("Lest this way of resolving the issue be taken to assume that § 550(a) requires that some benefit flow to unsecured creditors, we add that the statute does not say this. Section 550(a) speaks of benefit to *the estate*— which in bankruptcy parlance denotes the set of all potentially interested parties—rather than to any particular class of creditors."); *see also Calpine Corp. v. Rosetta Res. Inc.* (*In re Calpine Corp.*), 377 B.R. 808, 813 (Bankr. S.D.N.Y. 2007) (citing *Mellon Bank* with approval). Section 364 of the Bankruptcy Code, in turn, allows a debtor in possession to encumber "property of the estate" in order to obtain postpetition financing that meets the requirements set forth therein. *See* 11 U.S.C. §§ 364(c)(2), (3), and (d)(1). In the case of adequate protection liens, section 361(2) of the Bankruptcy Code expressly contemplates the imposition of "additional liens" as a form of adequate protection to the extent of any diminution in value. 11 U.S.C. § 361(2). Thus, on its

6

face, the Bankruptcy Code empowers a chapter 11 debtor to encumber estate property in the form of commercial tort claims and the proceeds of avoidance actions in connection with court-approved postpetition financings.

12. Sections 363(c)(2) and 363(e) of the Bankruptcy Code are clear that secured claimants with an interest in cash collateral are entitled to adequate protection against such projected diminution in value. Moreover, the grant of a replacement lien is an appropriate means of providing such adequate protection. *See* 11 U.S.C. §§ 361–363. The Debtors commenced these cases with a tight budget and a timeline that accounted for the liquidity pressures facing the Debtors. These are not artificial limitations – the DIP Lenders are only willing to fund up to $8 million in new advances to the Debtors and even that took substantial effort on the Debtors' part to obtain. The loans under the DIP Credit Facility come ahead of the Consenting Prepetition Lenders, all of which provides the potential for diminution in the value of such lenders' interest in the Prepetition Collateral, in particular as cash is used to fund the chapter 11 cases. Moreover, the Consenting Prepetition Lenders already have liens on substantially all of the Debtors' assets, and commercial tort claims and the proceeds of Avoidance Actions are the only two categories of assets upon which the Debtors could grant a replacement lien that is not already encumbered to secure the Consenting Prepetition Lenders' diminution claims, if any. *See In re Swedeland Development Grp., Inc.*, 16 F.3d 552, 565-67 (3d Cir. 1994) (holding that the adequate protection was insufficient where a debtor provided a secured creditor with nothing more than it was entitled to receive).

13. Here, the encumbrance of the commercial tort claims and the proceeds from avoidance actions was negotiated in good faith and at arm's length among the Debtors and the

7

lenders as a necessary inducement to provide the DIP Credit Facility and consent to the use of Cash Collateral, as applicable. The Court should give effect to the negotiated agreement struck by the Debtors in their business judgment with the lenders and overrule the Committee's objection.

14. Notwithstanding the foregoing, the DIP Lenders and the Consenting Prepetition may provide other concessions. Accordingly, the Committee's objections to the scope of the DIP Liens and adequate protection liens should be overruled.

C. **Waivers of Marshaling, Section 506(c) Surcharge, and Section 552(b) "Equities of the Case" Rights are Routinely Granted and Appropriate Here**

15. The Committee's argument against the Debtors' waiver of the equitable doctrine of marshaling, Section 506(c), and Section 552(b)'s "equities of the case exception" of the Bankruptcy Code should be rejected.

16. As a threshold matter, marshaling is a remedy available only to certain secured creditors and is not available to general unsecured creditors. *In re Advanced Mktg. Servs., Inc.*, 360 B.R. 421, 427 (Bankr. D. Del. 2007). Courts in this District have routinely approved a debtor's waiver of marshaling. *See e.g., In re Ector Cnty. Energy Ctr. LLC*, Case No. 22-10320 (JTD) (Bankr. D. Del. June 3, 2022) [Docket No. 195]; *In re Quorum Health Corp.*, Case No. 20-10766 (KBO) (Bankr. D. Del. May 6, 2020) [Docket No. 286]; *In re KiOR, Inc.*, Case No. 14-12514 (CSS) (Bankr. D. Del. Jan. 16, 2015) [Docket No. 275]; *In re Verso Corp.*, Case No. 16-10163 (KG) (Bankr. D. Del. Mar. 1, 2016) [Docket No. 372]; *In re Quiksilver, Inc.*, Case No. 15-11880 (BLS) (Bankr. D. Del. Oct. 15, 2015) [Docket No. 382].

17. The Committee's objections to the Section 506(c) and 552(b) waivers should also be overruled. Such waivers are routinely granted as a *quid pro quo* where, as here, the Consenting

8

Prepetition Lenders with blanket liens on substantially all of the Debtors' assets have: (a) consented to the use of collateral in order to fund administration of these chapter 11 cases through an approved budget; (b) agreed to priming liens and obligations under the DIP Facility; and (c) agreed to subordinate their liens and claims to the Carve-Out. *See e.g., In re VJGJ, Inc.*, Case No. 21-11332 (BLS) (Bankr. D. Del. 2021 Nov. 15, 2021) [Docket No. 174]; *In re Quorum Health Corp.*, Case No. 20-10766 (KBO) (Bankr. D. Del. May 6, 2020) [Docket No. 286]; *In re True Religion Apparel, Inc.*, Case No. 20-1510941 (CSS) (Bankr. D. Del. May 29, 2020) [Docket No. 278]; *In re HDR Holdings, Inc.*, Case No. 19-11396 (MFW) (Bankr. D. Del. Aug. 7, 2019) [Docket No. 164].

18. Debtors alone have the authority to waive their rights under section 506(c) of the Bankruptcy Code. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000); 11 U.S.C. § 506(c) ("the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property, to the extent of any benefit to the holder of such claim.") (emphasis added). The Supreme Court in *Hartford Underwriters* expressly held "[t]he question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision [section 506(c)]. We have little difficulty answering yes." *Hartford Underwriters*, 530 U.S. at 6; *see also In re Smart World Techs., LLC*, 423 F.3d 166, 181-82 (2d Cir. 2005) ("Section 506(c) . . . allows only the 'trustee,' or debtor-in-possession, to take advantage of this exception . . . . We read *Hartford Underwriters* to stand for the proposition that § 1109(b) does not entitle parties in interest, such as . . . creditors, to usurp the debtor-in-possession's role as legal representative of the estate."). *Hartford Underwriters* supports the Debtors' view that the proposed waiver of section 506(c)

9

surcharge rights is an appropriate exercise of the Debtors' business judgment, especially given the substantial benefits the Debtors will receive under the DIP Credit Facility, together with the full package of protections provided by the Carve-Out.

19. The Committee's conclusory allegations are wholly insufficient to deny the lenders certain appropriate and customary protections under the DIP Credit Facility, which comprise material components of an integrated agreement to obtain DIP financing and the consensual use of Cash Collateral. Accordingly, the Court should approve the Debtors' decision to provide such protections to the DIP Lenders and the Consenting Prepetition Lenders in exchange for a critical financing lifeline to support the chapter 11 cases.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of a final order granting the Motion and such other and further relief as the Court may deem just and appropriate.

Dated: January 5, 2023

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (DE Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
email: ljones@pszjlaw.com
 dbertenthal@pszjlaw.com
 tcairns@pszjlaw.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*