**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MEDLY HEALTH INC., *et al.*, [1] | Case No. 22-11257 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 15** |

**ORDER (I) APPROVING BIDDING PROCEDURES
AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF
SUBSTANTIALLY ALL OF DEBTORS' ASSETS, (II) SCHEDULING
BID DEADLINES AND THE AUCTION, (III) APPROVING FORM AND
MANNER OF NOTICE THEREOF, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(the "Debtors") for the entry of an order (this "Order"): (a) authorizing and approving the proposed

bidding procedures attached hereto as **Exhibit 1** (the "Bidding Procedures") including the

approval of a breakup fee and expense reimbursement in connection therewith; (b) establishing

certain dates and deadlines, including the Bid Deadline and the Auction, if any; (c) scheduling a

hearing (the "Sale Hearing") to consider approval of the proposed Sale; (d) authorizing and

approving the form of (A) notice of the sale of the Acquired Assets, the Bid Deadline, the Auction

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Medly Health Inc. (3391); Care Well Pharmacy, Inc. (9048); Grubbs Care Pharmacy NW Inc. (0490); Marg Pharmacy, Inc. (5838); Medly Atlanta Inc. (7312); Medly Baltimore Inc. (2354); Medly Bedford Ave Pharmacy Inc. (3690); Medly Bristol Inc. (4556); Medly Bronx Inc. (4741); Medly Chicago Inc. (5231); Medly Dallas Inc. (7581); Medly DC Inc. (9403); Medly Enterprise LLC (8898); Medly Grand Central Inc. (1741); Medly Houston Inc. (7443); Medly Jersey City Inc. (5677); Medly Mail Service Pharmacy LLC (9203); Medly Miami Inc. (8101); Medly Orlando Inc. (7581); Medly Pharmacy Inc. (4606); Medly Pharmacy PA Inc. (8494); Medly Pittsburgh Inc. (8381); Medly Queens Inc. (9623); Medly Raleigh Inc. (5140); Medly San Antonio Inc. (9973); Medly Stamford Inc. (4966); Medly Tampa Inc. (5128); Medly UCHC Pharmacy Inc. (6672); Medly Utah Inc. (4648); Pharmaca Integrative Pharmacy, Inc. (0334); Tango340B LLC (4781); West Campbell Pharmacy Inc. (2931); Khora Health Solutions Inc. (2909); and RPH Innovations LLC (3767). The Debtors' business address is 7088 Winchester Circle, Suite 100, Boulder CO 80301.

[2] Capitalized terms used but not defined herein have the meanings given to them in Motion, the Bidding Procedures attached hereto as **Exhibit 1**, or the Stalking Horse Agreement, as applicable.

and the Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice") and (B) notice to each relevant Counterparty to the Debtors' Contracts and Leases regarding the Debtors' potential assumption and assignment of such Contracts and Leases (collectively, the "Potential Assumed Contracts") the amount necessary to cure any defaults thereunder, substantially in the form attached hereto **Exhibit 3** (the "Potential Assumption and Assignment Notice"); (e) authorizing and approving procedures for the assumption and assignment of the Potential Assumed Contracts and the determination of Cure Amounts with respect thereto (collectively, the "Assumption and Assignment Procedures"); and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Bidding Procedures Hearing"); and pursuant to the settlement among key parties as set forth on the record at the Bidding Procedures Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Bidding Procedures Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      The Court has jurisdiction to consider the Motion, the relief requested therein, and the transaction contemplated by the Stalking Horse Agreement in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b). Venue of the Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The bases for the relief requested in the Motion are sections 105, 363, 365, and 1146(a) of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), Rules 2002(a)(2), 6004, 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 6004-1, and 9006-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States District Court for the District of Delaware (the "<u>Local Rules</u>").

D.      The Debtors' proposed notice of the Motion and the hearing thereon, including, without limitation, the Bidding Procedures and the proposed entry of this Order, is (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and

the Local Rules, and (iii) adequate and sufficient under the circumstances of the Chapter 11 Cases, such that no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and payment of the Break-Up Fee and Expense Reimbursement) has been afforded to parties in interest.

      E.      The process for selecting MedPharmaca Holdings, Inc. (the "Stalking Horse Bidder") as the "stalking horse" bidder was fair and appropriate under the circumstances and in the best interests of the Debtors' estates. The Debtors have articulated good and sufficient reasons for the Court to: (i) approve the Bidding Procedures; (ii) schedule the Auction and approve the manner of notice of the Auction; (iii) approve the procedures for the assumption and assignment of the Potential Assumed Contracts, including notice of proposed Cure Amounts; and (iv) grant the Break-Up Fee and Expense Reimbursement, to the extent and as provided in that certain *Asset Purchase Agreement*, dated as of December 9, 2022, as amended by that certain Amendment to Asset Purchase Agreement dated as of January 18, 2023, by and among the Debtors and MedPharmaca Holdings, Inc. (including all exhibits and schedules related thereto, the "Stalking Horse Agreement"), and in this Order.

      F.      The Bidding Procedures and the Stalking Horse Agreement were each negotiated among the Debtors and the Stalking Horse Bidder the parties at arms'-length and in good faith. The Stalking Horse Agreement represents the highest and otherwise best offer that the Debtors have received to date for the Acquired Assets.

G.      The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable and appropriate, are designed to maximize creditor recoveries from a sale of the Acquired Assets and permit the Debtors to comply with their obligations and the Milestones provided under the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Authorizing Debtors to Obtain Secured Superpriority Postpetition Financing, (II) Granting Priming Liens and Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Scheduling a Final Hearing and (VI) Granting Related* Relief, [Docket No. 73] (the "DIP Order"), and are consistent with the Debtors' exercise of their fiduciary duties under applicable law.

H.      To the extent payable under the terms of the Stalking Horse Agreement, as modified by this Order, the Break-Up Fee and the Expense Reimbursement (together, the "Bid Protections"): (i)(a) shall be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) shall constitute allowed administrative expense claims against the Debtors' estates pursuant to sections 105(a), 503(b) and 507(a)(2) of the Bankruptcy Code, and (c) shall not be subordinate to any other administrative expense claims against the Debtors but shall be subordinate to the DIP Superpriority Claims, DIP Liens, the Carve-Out, and, solely with respect to the Break-Up Fee, the claims of SVB under the Prepetition Senior Loan Documents (each as defined in the DIP Order), and; (ii) are commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (iii) are reasonably tailored to encourage, rather than hamper, bidding for the Acquired Assets, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and

facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Acquired Assets; (iv) provide a substantial benefit to the Debtors' estates and stakeholders and all parties in interest herein; (v) are reasonable and appropriate; (vi) are a material inducement for, and condition necessary to, ensure that the Stalking Horse Bidder will continue to pursue the Stalking Horse Agreement to purchase the Acquired Assets; and (vii) are reasonable in relation to the Stalking Horse Bidder's efforts and to the magnitude of the Sale and the Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction.  Unless it is assured that the Bid Protections will be available, the Stalking Horse Bidder is unwilling to remain obligated to consummate the Stalking Horse Agreement or otherwise be bound under the Stalking Horse Agreement, including, without limitation, the obligations to maintain its committed offer while such offer is subject to higher or otherwise better offers as contemplated by the Bidding Procedures.

I.      The Stalking Horse Bidder shall act as the "stalking horse bidder" in accordance with the Stalking Horse Agreement.  The Stalking Horse Bidder is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in section 101 of the Bankruptcy Code, and no common identity of incorporators, directors, officers, or controlling stockholders exists between the Stalking Horse Bidder and the Debtors.

J.      The Bid Protections, as approved by this Order, (i) are fair and reasonable, (ii) have been negotiated by the Stalking Horse Bidder and the Debtors at arm's-length and in good faith, (iii) provide a benefit to the Debtors' estates and stakeholders, and (iv) are necessary to ensure that

the Stalking Horse Bidder will continue to pursue its Stalking Horse Agreement and transactions contemplated thereby.

K.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby: (i) approve of the Bidding Procedures as contemplated by the Stalking Horse Agreement and the Motion; (ii) authorize the Break-Up Fee and Expense Reimbursement, under the terms and conditions set forth in the Stalking Horse Agreement, as modified by this Order; (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing, and other deadlines set forth in the Bidding Procedures; (iv) approve the proposed noticing procedures (the "Noticing Procedures") and the forms of notice; and (v) approve the Assumption and Assignment Procedures and the forms of relevant notice.  Such compelling and sound business justification, which was set forth in the Motion, the First Day Declaration, and on the record at the Bidding Procedures Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

L.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest herein.

M.      The Bidding Procedures comply with the requirements of Local Rule 6004-(1)(c).

N.      The Sale Notice attached hereto as **Exhibit 2** is fair, appropriate, and reasonably calculated to provide proper and sufficient notice to creditors, the Debtors' economic stakeholders, and other parties in interest of the Sale Hearing and the relief requested under the Motion, including, without limitation, the procedures and deadlines by which parties may object to the

Motion.  The Potential Assumption and Assignment Notice attached hereto as **Exhibit 3** is fair, appropriate, and reasonably calculated to provide each Counterparty to the Potential Assumed Contracts with proper and sufficient notice of the potential assumption and assignment of such Potential Assumed Contracts by the Successful Bidder(s) or any of their known proposed assignees (if different from the Successful Bidder) and the requirement that each Counterparty assert any objection to the proposed Cure Amounts prior to the Assumption and Assignment Objection Deadline or otherwise be barred from asserting claims arising from events occurring following assumption and assignment of such Potential Assumed Contracts. The Assumption and Assignment Procedures comply with section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections to the relief requested in the Motion, the filing and service of the proposed bidding procedures order approving the relief in the Motion, and the attachments to such order, that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are hereby overruled in all respects on the merits.

**I.      Approval of Dates and Deadlines Requested in the Motion.**

3.      **Bid Deadline**.  **January 31, 2023, at 5:00 p.m. (prevailing Eastern Time)**, is the deadline by which bids for the Acquired Assets (as well as the deposit and all other documentation required under the Bidding Procedures for Qualified Bidders) must be submitted in accordance with the terms of the Bidding Procedures.

4.      **Auction**.  In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse Bid, an Auction shall be conducted on **February 3, 2023, at 10:00 a.m. (prevailing Eastern Time)** at the offices of Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (or, following consultation with the Consultation Parties (as defined in the Bidding Procedures) by videoconference link to the live proceedings at this location provided that if the Debtors provide a videoconference link to such live proceedings, they will indicate when the Auction goes on the record and shall, upon request, provide a videoconference link to those parties participating in the Auction via videoconference).  The Debtors shall provide notice of the date, time, and place of the Auction to the Qualified Bidders no later than one (1) day before such Auction, and will post notice of the date, time, and place of the Auction no later than one business day before such Auction on the website of the Debtors' notice and claims agent at https://dm.epiq11.com/MedlyHealth (the "Case Information Website") *provided however* that any party who wishes to physically attend the Auction (other than (i) the parties set forth in the Bidding Procedures (including the Qualified Bidders), and (ii) such other parties the Debtors deem appropriate), shall provide at least five (5) days' notice of such attendance prior to the Auction by sending an email to counsel to the Debtors. The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

5.      Within five (5) hours following the conclusion of the Auction, if held, the Debtors shall file with the Court a notice of the Auction results (the "Notice of Auction Results") and serve such notice by electronic mail (if known), or otherwise by overnight mail, on Counterparties and any other parties that have requested service pursuant to Bankruptcy Rule 2002.  Objections to the conduct of the Auction, the Successful Bidder, or, if applicable, the Sale to the Successful Bidder (other than the Stalking Horse Bidder), must be made at the Sale Hearing.

6.      **Sale Hearing**.  The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, Courtroom 3, 824 North Market Street, 6th Floor, Wilmington, Delaware 19801, on **February 7, 2023, at 10:30 a.m.** (prevailing Eastern Time) or such other date and time that the Court may later direct and as agreed upon by the Debtors, the Successful Bidder(s), and the DIP Lender; *provided*, *however*, that the Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by filing a notice on the Court's docket or by announcement of any continued hearing in open Court or on the Court's docket; *provided*, *further*, that no such adjournment shall impair the rights of the Stalking Horse Bidder under the Stalking Horse Agreement.

## II.      Sale Objections.

7.      Objections to the Sale, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **January 31, 2023, at 4:00 p.m.** (prevailing Eastern Time) (the "Sale Objection Deadline) and (d) be served on: (1) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801, Attn: Laura Davis Jones; (2) proposed counsel to the statutory committee appointed in the Chapter 11 Cases (the "Committee"), Porzio, Bromberg & Newman P.C., (i) 100 Southgate Parkway, P.O. Box 1997, Morristown, NJ 07962,  Attn: Warren J. Martin, Jr., Robert M. Schechter, and Kelly D. Curtin (WJMartin@pbnlaw.com, RMSchechter@pbnlaw.com, and KDCurtin@pbnlaw.com) and (ii) 300 Delaware Avenue, Suite 1220, Wilmington, DE 19801, Attn. Cheryl A. Santaniello (casantaniello@pbnlaw.com); (3) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801, Attn: Linda Casey (the "U.S. Trustee");(4) counsel to Silicon Valley Bank:  Morrison & Foerster LLP, 200 Clarendon Street, Floor 21 Boston, MA 02116 Attn:  Alexander G. Rheaume (ARheaume@mofo.com) and 250 West 55th Street, Floor 20 New York, NY 10019 Attn:  Seth J. Kleinman & Miranda Russell

(SKleinman@mofo.com and MRussell@mofo.com); (5) counsel to the Prepetition TPC Lenders and the DIP Lenders:  McDermott Will & Emery LLP, 2049 Century Park E., Suite 3800, Los Angeles, CA 90067, Attn:  Gary B. Rosenbaum (grosenbaum@mwe.com) and One Vanderbilt Ave., New York, NY 10017, Attn:  Darren Azman (dazman@mwe.com) and Riley Orloff (rorloff@mwe.com); (6) counsel to Stalking Horse Bidder: McDonald Hopkins LLC, 300 North LaSalle Street, Suite 1400, Chicago, IL 60654, Attn: Marc Carmel (mcarmel@mcdonaldhopkins.com); and (7) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").  The failure of any objecting person or entity to timely file an objection prior to the Sale Objection Deadline shall be a bar to the assertion at the Sale Hearing or thereafter of any objection to the relief requested by the Debtors, or the consummation and performance of the Sale of the Acquired Assets to the Successful Bidder, including the Sale of the Acquired Assets free and clear of all liens, claims, interests, and other encumbrances (with the same to attach to the cash proceeds of the Sale to the same extent and with the same order of priority, validity, force and effect which they previously had against the Acquired Assets, subject to the rights and defenses of the Debtors and the Debtors' estates with respect thereto), and the Debtors' assumption and assignment of the Potential Assumed Contracts to the Successful Bidder.

**III.    Auction, Bidding Procedures, and Related Relief.**

8.    The Bidding Procedures, substantially in the form attached hereto as **<u>Exhibit 1</u>**, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the sale of the Acquired Assets. Any party desiring to submit a Bid for the Acquired Assets shall comply with the Bidding Procedures and this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

9.      **Noticing Procedures**.  The Noticing Procedures as set forth in this Order and the Motion, including the form of Sale Notice attached hereto as **Exhibit 2**, are hereby approved. Within three (3) Business Days after entry of this Order, the Debtors shall serve the Sale Notice by email (where known) and first-class mail upon: (a) proposed counsel to the Committee; Porzio, Bromberg & Newman P.C., (i) 100 Southgate Parkway, P.O. Box 1997, Morristown, NJ 07962, Attn: Warren J. Martin, Jr., Robert M. Schechter, and Kelly D. Curtin (WJMartin@pbnlaw.com, RMSchehcter@pbnlaw.com, and KDCurtin@pbnlaw.com) and (ii) 300 Delaware Avenue, Suite 1220, Wilmington, DE 19801, Attn. Cheryl A. Santaniello (casantaniello@pbnlaw.com); (b) the U.S. Trustee; (c) counsel to Silicon Valley Bank; Morrison & Foerster LLP, 200 Clarendon Street, Floor 21 Boston, MA 02116, Attn:  Alexander G. Rheaume (ARheaume@mofo.com) and 250 West 55th Street, Floor 20 New York, NY 10019 Attn: Seth J. Kleinman & Miranda Russell (SKleinman@mofo.com and MRussell@mofo.com); (d) counsel to the Prepetition TPC Lenders and the DIP Lenders: McDermott Will & Emery LLP, 2049 Century Park E., Suite 3800, Los Angeles, CA 90067, Attn: Gary B. Rosenbaum (grosenbaum@mwe.com) and One Vanderbilt Ave., New York, NY 10017, Attn: Darren Azman (dazman@mwe.com) and Riley Orloff (rorloff@mwe.com); (e) counsel to the Stalking Horse Bidder: McDonald Hopkins LLC, 300 North LaSalle Street, Suite 1400, Chicago, IL 60654, Attn: Marc Carmel (mcarmel@mcdonaldhopkins.com); (f) all known creditors of the Debtors (for whom identifying information and addresses are available to the Debtors); (g) the Internal Revenue Service; (h) all applicable federal, state, and local taxing authorities; (i) all persons and entities known by the Debtors, Rock Creek Advisors LLC ("Rock Creek") or the Committee to have expressed an interest to the Debtors in the Acquired Assets during the past 6 months; (j) all persons and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in the Acquired

Assets (for whom identifying information and addresses are available to the Debtors); (k) Counterparties to Potential Assumed Contracts; (l) any governmental authority known to have a claim against the Debtors in the Chapter 11 Cases; (m) the United States Securities and Exchange Commission; (n) the United States Attorney's Office for the District of Delaware; (o) United States Attorney General's Office for the District of Delaware; (p) the Office of the Attorney General and the Secretary of State in each state in which the Debtors operate; (q) all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and (r) all other parties as directed by the Court (collectively, the "Sale Notice Parties"). On or about the same date or as soon as reasonably practicable, the Debtors shall publish the Sale Notice on the Case Information Website and shall publish a notice substantially similar to the Sale Notice in *USA Today* or similar publication with national circulation. Service of the Sale Notice on the Sale Notice Parties and publication thereof in the manner described in this Order constitutes good and sufficient notice of the Auction and the Sale Hearing. No other or further notice is required.

10. **Coordination**. The Debtors will work in real time with Rock Creek, to manage the sale process from and including the date hereof. The Debtors' financial data and information and bidder data will be made available to Rock Creek. Rock Creek will host the transaction data room, which shall be engineered to track which interested party enters and how much time an interested party spends in the data room. The Debtors will augment the data room with information including budgets to actual cash flow performance results from the inception of the bankruptcy to date. Requests from any interested party for information will typically be answered by posting the requested information in the data room. Rock Creek and the Debtors' lead to keep each other updated promptly on information requests and data room postings.

11.    **Cancellation of Auction**.  If the Debtors do not receive any Qualified Bids (other than the Stalking Horse Bid):  (a) the Debtors, after consultation with  the Consultation Parties, will not hold the Auction; (b) the Stalking Horse Bidder will be deemed the Successful Bidder for the Acquired Assets; and (c) the Debtors shall be authorized to seek approval of the Stalking Horse Agreement at the Sale Hearing; *provided, however*, that the Debtors may, in their discretion, open the Auction solely for the purpose of reflecting on the record that no other Qualified Bids were received other than the Stalking Horse Bid.

12.    **Stalking Horse and Bid Protections**.  MedPharmaca Holdings, Inc. is approved as the Stalking Horse Bidder for the Acquired Assets, pursuant to the terms of the Stalking Horse Agreement.

13.    The Stalking Horse Bid shall be subject to higher or otherwise better Qualified Bids, in accordance with the terms of the Bidding Procedures; provided that approval of the Stalking Horse Agreement is subject to entry of the Sale Order.

14.    The Stalking Horse Bidder is a Qualified Bidder, and the Stalking Horse Bid as set forth in the Stalking Horse Agreement is a Qualified Bid.

15.    No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fees, "topping" fee, termination fee, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for expense reimbursement, breakup fees, "topping" fee, termination fee, or other similar fee or payment of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

16.    The Break-Up Fee and Expense Reimbursement are each approved on the terms set forth in the Stalking Horse Agreement, as modified herein.  Pursuant to sections 105, 363, 503 and

507 of the Bankruptcy Code, the Debtors are authorized to pay the Break-Up Fee and Expense

Reimbursement to the Stalking Horse Bidder in accordance with the terms of the Stalking Horse

Agreement as modified herein without further order of the Court.  The Break-Up Fee and Expense

Reimbursement shall only be payable if the conditions to payment of such amounts set forth in the

Stalking Horse Agreement as modified herein have been satisfied.  The Break-Up Fee and Expense

Reimbursement, to the extent payable under the terms of the Stalking Horse Agreement and this

Order, shall not be subject to reduction of any kind unless otherwise ordered by the Court.  The

Break-Up Fee and Expense Reimbursement (i) shall be deemed an actual and necessary cost and

expense of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy

Code; (ii) (a) shall be deemed an actual and necessary cost and expense of preserving the Debtors'

estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) shall constitute allowed

administrative expense claims against the Debtors' estates pursuant to sections 105(a), 503(b) and

507(a)(2) of the Bankruptcy Code, and (c) shall not be subordinate to any other administrative

expense claims against the Debtors but shall be subordinate to the DIP Superpriority Claims, DIP

Liens, the Carve-Out, and, solely with respect to the Break-Up Fee, the claims of SVB under the

Prepetition Senior Loan Documents (each as defined in the DIP Order); and (iii) shall survive the

termination of the Stalking Horse Agreement and dismissal or conversion of the Chapter 11 Cases.

17.    The Break-Up Fee and Expense Reimbursement shall be payable by the Debtors as

set forth in Section 6.1(b) of the Stalking Horse Agreement and in accordance with terms thereof

and this Order; *provided, however*, that, notwithstanding anything to the contrary in the Stalking

Horse Agreement or this Order, (a) the Expense Reimbursement shall only be payable if the

Stalking Horse Agreement is terminated because an entity other than the Stalking Horse Bidder is

the Successful Bidder at the Auction and closes such bid and the proceeds from such transaction

are sufficient to satisfy the amounts to which the Expense Reimbursement is subordinate and (b) the Break-Up Fee shall only be payable if the Stalking Horse Agreement is terminated because an entity other than the Stalking Horse Bidder is the Successful Bidder at the Auction and closes such bid and the proceeds from such transaction are sufficient to satisfy the amounts to which the Break-Up Fee is subordinate.  As stated by the Bankruptcy Court at the hearing on January 13, 2023, if the Bid Protections are not earned by the Stalking Horse Bidder, the Stalking Horse Bidder reserves all rights to seek allowance and payment of any claim under section 503 of the Bankruptcy Code or otherwise, and all parties reserve their rights with respect thereto.

18.     If the Stalking Horse Bidder is entitled to the Bid Protections, such Bid Protections will be paid directly to the Stalking Horse Bidder at the closing (and in no event later than one (1) business day after any such closing) from the proceeds of each Alternative Transaction until satisfied, subject to the terms of the Stalking Horse Agreement and this Order.

19.     The Bid Protections shall not be payable to the Prepetition TPC Lenders in any capacity.

20.     The Bid Protections shall only be payable from the proceeds of an Alternative Transaction and not otherwise payable from the Debtors' estates.

**IV.     Credit Bidding**

21.     The DIP Lender and the Prepetition TPC Lenders (as defined in the DIP Order) are affiliated with the Stalking Horse Bid.  Notwithstanding anything to the contrary provided herein or in the Bidding Procedures, at any time during the Auction, (i) the DIP Lender, subject to section 363(k) of the Bankruptcy Code, may credit bid all or any portion of its postpetition secured claims pursuant to section 363(k) of the Bankruptcy Code, and (ii) each of the Prepetition TPC Lenders, subject to section 363(k) of the Bankruptcy Code, may credit bid up to 50% of the Prepetition TPC Lenders' secured claims; *provided, however*, that other than in support of any Overbid, any credit

bid submitted by the Prepetition TPC Lenders and the DIP Lender shall only be used to enhance the value the Stalking Horse Bid, and such credit bid, unless in support of any Overbid, shall not be made by the Prepetition TPC Lenders and the DIP Lender on behalf of any other bids for their own benefit or the bid of any other party other than the Stalking Horse Bidder; *provided further* that any improved Stalking Horse Bid pursuant to any such credit bid must continue to comply in all respects with the requirements for Qualified Bids as set forth in the Bidding Procedures. Notwithstanding anything herein to the contrary, the DIP Lender and/or Prepetition TPC Lenders (or any affiliates thereof) may not exercise their credit bid rights, whether under section 363(k) of the Bankruptcy Code or otherwise, without having received the prior written consent of the Prepetition Senior Lender (such consent to not be unreasonably withheld, conditioned, or delayed).

**V.     Approval of the Assumption and Assignment Procedures.**

22.     The Assumption and Assignment Procedures set forth in the Motion and herein are hereby approved.  The Potential Assumption and Assignment Notice substantially in the form attached to this Order as **Exhibit 3** is approved.  No other or further notice is required.

23.     Within three (3) Business Days after entry of this Order, the Debtors shall file with the Court, and cause to be published on the Case Information Website, the Potential Assumption and Assignment Notice and serve such notice (a) by overnight delivery service upon the Counterparties at the address set forth in the notice provision of the applicable Potential Assumed Contract (and their counsel, if known) and (b) by first class mail, email, or fax upon the Objection Notice Parties.  The Potential Assumption and Assignment Notice shall notify the Counterparties that the applicable Contracts and Leases are subject to potential assumption and assignment and of the Debtors' proposed Cure Amounts relating to such Contracts and Leases.

24.     Any Counterparty may object to the proposed assumption or assignment of its Potential Assumed Contract, the Debtors' proposed Cure Amounts with respect to its Potential

Assumed Contract, if any, or the ability of the Stalking Horse Bidder or a potential bidder to provide adequate assurance of future performance (collectively, an "Assumption and Assignment Objection"). All Assumption and Assignment Objections (other than with respect to a Successful Bidder's ability to provide adequate assurances of future performances other than the Stalking Horse Bidder) must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amount the Counterparty believes is required to cure defaults (as that concept is contemplated by section 365 of the Bankruptcy Code) under the relevant Potential Assumed Contract, (d) be filed by no later than **4:00 p.m. (prevailing Eastern Time) on February 3, 2023**, and (e) be served on the Objection Notice Parties.  Any Assumption and Assignment Objection relating solely to the ability of a Successful Bidder (other than the Stalking Horse Bidder) to provide adequate assurances of future performance under any of the Debtor's unexpired leases may be raised at the Sale Hearing.

25.    If a Counterparty files a timely Assumption and Assignment Objection, the Court will hear and determine such objection at the Sale Hearing or such other date that the Debtors and the Successful Bidder shall determine (subject to the Court's calendar).

26.    If a Counterparty fails to file with the Court and serve a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Potential Assumed Contract; and, notwithstanding anything to the contrary in the Potential Assumed Contract, or any other document, the Cure Amounts set forth in the Potential Assumption and Assignment Notice shall be controlling and shall be the only amount necessary to cure outstanding defaults under the applicable Potential Assumed Contract under section 365(b) of the Bankruptcy Code arising out

of or related to the Potential Assumed Contract following the assumption and assignment thereof, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise; and the Counterparty shall be forever barred from asserting any cure or other pre-assignment amounts in excess of the Cure Amount set forth in the applicable Potential Assumption and Assignment Notice with respect to such Potential Assumed Contract against the Debtors, the Successful Bidder or the property of any of them.

27.     In the event that any Potential Assumed Contract is added to the Contracts Schedule or previously-stated Cure Amounts are modified in accordance with the Stalking Horse Agreement, the Successful Bidder's asset purchase agreement or the Assumption and Assignment Procedures, the Debtors will promptly serve a supplemental assumption and assignment notice, by overnight mail and, if known, e-mail, on the applicable Counterparties (collectively, a "Supplemental Assumption and Assignment Notice"). Each Supplemental Assumption and Assignment Notice will include the same information with respect to the applicable Potential Assumed Contract as is required to be included in the Potential Assumption and Assignment Notice.

28.     Any Counterparty listed on a Supplemental Assumption and Assignment Notice whose Potential Assumed Contract is proposed to be assumed and assigned and was not included in the Potential Assumption and Assignment Notice may object to the proposed assumption or assignment of its Potential Assumed Contract, the Debtors' proposed Cure Amounts with respect to its Potential Assumed Contract, if any, or the ability of the Successful Bidder to provide adequate assurance of future performance (collectively, a "Supplemental Assumption and Assignment Objection"). All Supplemental Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state,

with specificity, the legal and factual bases thereof, including, if applicable, the Cure Amounts the Counterparty believes is required to cure defaults (as that concept is contemplated by section 365 of the Bankruptcy Code) under the relevant Potential Assumed Contract, (d) be filed by no later than ten (10) calendar days after the date of service of such Supplemental Assumption and Assignment Notice and (e) be served on the Objection Notice Parties. Each Supplemental Assumption and Assignment Objection, if any, shall be resolved in the same manner as an Assumption and Assignment Objection. For the avoidance of doubt, if a Potential Assumed Contract was listed in the Potential Assumption and Assignment Notice and the previously-stated Cure Amount is modified in the Supplemental Assumption and Assignment Notice, the Counterparties to such Potential Assumed Contract may file a Supplemental Assumption and Assignment Objection only if such objection is to the modified Cure Amount.

29.    If a Counterparty fails to file with the Court and serve on the Assumption and Assignment Objection Notice Parties a timely Supplemental Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Potential Assumed Contract; and, notwithstanding anything to the contrary in the Potential Assumed Contract, or any other document, the Cure Amounts set forth in the Supplemental Assumption and Assignment Notice shall be controlling and shall be the only amount necessary to cure outstanding defaults under the applicable Potential Assumed Contract under section 365(b) of the Bankruptcy Code arising out of or related to the Potential Assumed Contract following the assumption and assignment thereof, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise; and the Counterparty shall be forever barred from asserting any cure or other pre-assignment amounts in excess of the Cure Amount set forth in the applicable Supplemental Assumption and Assignment Notice with respect

to such Potential Assumed Contract against the Debtors, the Successful Bidder or the property of any of them.

**VI.     Miscellaneous.**

30.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

31.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

32.     In the event of any inconsistencies between this Order and the Interim or Final DIP Order, the then prevailing DIP Order shall govern; *provided, however*, that notwithstanding anything to the contrary in the prevailing DIP Order, the treatment of the Break-Up Fee, the Expense Reimbursement, and credit bid rights contained herein shall be governed by this Order.

33.     This Order, and the claims granted hereunder in favor of the Stalking Horse Bidder on account of the Break-Up Fee and Expense Reimbursement, shall be binding on the Debtors, including any chapter 7 or chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

34.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

35.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

36.     To the extent the dates and deadlines herein are modified pursuant to the Bidding Procedures and such modification is inconsistent with the requirements of Local Rule 9006-1(b), such requirements shall be deemed satisfied.

37.     Notwithstanding any Bankruptcy Rule (including, without limitation, Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014) or Local Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

38.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

39.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.  The Court has the authority to fashion appropriate relief, on an emergency basis or otherwise, for any violations of this Order or the Bidding Procedures.

**Dated: January 18th, 2023**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**