## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:*<br><br>MEDLY HEALTH INC*., et al.[1]*,<br><br>         Debtors. | Chapter: 11<br><br>Case No. 22-11257 (KBO)<br><br>(Jointly Administered)<br><br>**D.I. 312, 315, 325** |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MEDLY HEALTH INC., ET AL. TO COMPEL THE DEBTORS TO QUALIFY THE BIDS OF CVS PHARMACY, INC. AND WALGREEN CO.; AND GRANTING OTHER RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned case of Medly Health, Inc., *et al.* ("Medly" or the "Debtors"), by and through its undersigned counsel, hereby moves (the "Motion to Compel") for entry of an order (the "Order") on shortened notice to compel the above-captioned debtors to qualify the Bids submitted by CVS Pharmacy, Inc. ("CVS") and Walgreen Co. ("Walgreens") as Qualified Bids[2]; and granting related relief.  In support of the Motion to Compel, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      Based on preliminary conversations with Debtors counsel, and the other consulting party, Silicon Valley Bank, the Committee is concerned that the Debtors may ultimately determine

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Medly Health Inc. (3391); Care Well Pharmacy, Inc. (9048); Grubbs Care Pharmacy NW Inc. (0490); Marg Pharmacy, Inc. (5838); Medly Atlanta Inc. (7312); Medly Baltimore Inc. (2354); Medly Bedford Ave Pharmacy Inc. (3690); Medly Bristol Inc. (4556); Medly Bronx Inc. (4741); Medly Chicago Inc. (5231); Medly Dallas Inc. (7581); Medly DC Inc. (9403); Medly Enterprise LLC (8898); Medly Grand Central Inc. (1741); Medly Houston Inc. (7443); Medly Jersey City Inc. (5677); Medly Mail Service Pharmacy LLC (9203); Medly Miami Inc. (8101); Medly Orlando Inc. (7581); Medly Pharmacy Inc. (4606); Medly Pharmacy PA Inc. (8494); Medly Pittsburgh Inc. (8381); Medly Queens Inc. (9623); Medly Raleigh Inc. (5140); Medly San Antonio Inc. (9973); Medly Stamford Inc. (4966); Medly Tampa Inc. (5128); Medly UCHC Pharmacy Inc. (6672); Medly Utah Inc. (4648); Pharmaca Integrative Pharmacy, Inc. (0334); Tango340B LLC (4781); West Campbell Pharmacy Inc. (2931); Khora Health Solutions Inc. (2909); and RPH Innovations LLC (3767). The Debtors' business address is 7088 Winchester Circle, Suite 100, Boulder CO 80301.

[2] Capitalized Terms used but not defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order (as defined below).

7236190

that the bids submitted by Walgreens and CVS are not "Qualified Bids" under a hyper-technical reading of the Bid Procedures (defined below), despite the fact that both the Committee and Silicon Valley Bank believe both bids should be deemed Qualified Bids and that the assets should be put to Auction. Accordingly, by this Motion to Compel, the Committee requests entry of an Order on shortened notice compelling the Debtors to qualify CVS's and Walgreens' Bids as Qualified Bids in accordance with the Bid Procedures Order, and to proceed to Auction.

## JURISDICTION AND VENUE

2.      The United States District Court for the District of Delaware has jurisdiction under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 pursuant to the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      The Committee confirms its consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The bases for the relief requested is to enforce the *Order (I) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially all of the Debtors' Assets; (II) Scheduling Bid Deadlines and the Auction; (III) Approving Form and Manner of Notice Thereof; and (IV) Granting Related Relief* [D.I. 312-1]  (the "Bid Procedures Order") and pursuant to sections 105(a) of the Bankruptcy Code.

7236190

**BACKGROUND**

6.      On December 9, 2022 (the "Petition Date"), the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' chapter 11 cases.

7.      On December 21, 2022, the Committee was appointed to serve in the Debtors' cases by the Office of the United States Trustee for Region Three.

8.      On December 9, 2022, the Debtors filed the *Motion of the Debtors for Entry of Orders: (I)(A) Approving Bidding Procedures of the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Enter Into the Stalking Horse Agreement and to Provide Bid Protections Thereunder, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving the Assumption and Assignment Procedures and (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof; (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests and Encumbrances and (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief*, [D.I. 15] (the "Sale/Bidding Procedures Motion:).

9.      On January 3, 2023, a contested hearing on the Sale/Bidding Procedures Motion was conducted before the Court. At the conclusion of which, the Court reserved decision and adjourned the hearing to allow the parties time to attempt to resolve the contested issues.

10.      On January 18, 2023, the Debtors, the Committee, TriplePoint Venture Growth BDC Corp., TriplePoint Capital LLC, TriplePoint Private Venture Credit Inc., and Silicon Valley

7236190

Bank entered into a term sheet resolving a number of disputes, including the contested issues in the Sale/Bid Procedures Motion [D.I. 309-2] (the "Term Sheet").

11.      On January 18, 2023, in accordance with the timeline set forth in the Term Sheet, the Court entered the *Order (I) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially All of Debtors' Assets, (II) Scheduling Bid Deadlines and the Auction, (III) Approving Form and Manner of Notice Thereof, and (IV) Granted Related Relief*, [D.I. 312] (the "Bidding Procedures Order").  Attached to the Bidding Procedures Order, are approved bid procedures governing the sale of the Debtors' assets, as contemplated in the Sale/Bidding Procedures Motion (the "Bid Procedures").

12.      The Bid Procedures contain a certain amount of flexibility and discretion for the Debtors in consultation with the Consultation Parties, but also describe certain criteria for a bid to qualify in order to generate an Auction, which text is copied in full below:

> Each Bid submitted by an Acceptable Bidder (a "Bidder") must be submitted in writing and satisfy the following requirements (collectively, the "Bid Requirements," unless otherwise modified by the Debtors (except for the requirement set forth in II(d) below), in their discretion, upon consultation with the Consultation Parties (defined below):
>
> a. Bid Deadline. A Bid must be received no later than the Bid Deadline.[3]
> b. Marked Agreement. A Bid must include an executed asset purchase agreement (a "Competing APA"), together with all exhibits and schedules (the "Transaction Documents"), pursuant to which the Acceptable Bidder proposes to effectuate the contemplated transaction, which Competing APA must be similar in form and substance to the Stalking Horse Agreement and be marked to reflect the differences between the Stalking Horse Agreement and the Bidder's Competing APA, including, without limitation, specification of the proposed purchase price, any assumed liabilities, and any changes to any exhibits or schedules to the Competing APA. A Bid must identify with particularity each and every condition to closing and all executory contracts and unexpired leases to be assumed and assigned pursuant to the Transaction Documents. The Transaction Documents must include a commitment to close by no later than the closing date provided in the Stalking Horse Agreement. A Bid should propose a contemplated transaction involving all or substantially all of the Assets; provided, however, that the Debtors in their discretion (following consultation with the Consultation Parties), may consider proposals for less than substantially all the Assets so long as the economic value of such a proposal provides an economic value to the Debtors' estates that is greater than the Stalking Horse

---

[3] The deadline to submit a bid under the Bid Procedures was January 31, 2023 by 5:00 pm (the "Bid Deadline"). See Bid Procedures, at Section I.

7236190

Bid, provided further that the Debtors will evaluate all Bids, in their sole discretion (following consultation with the Consultation Parties), to determine whether such Bid or combination of Bids maximizes the value of the Debtors' estates as a whole in light of any factors regarding such bid which the Debtors, in their discretion, determine are appropriate to be considered in evaluating Bids.

c. Purpose. Each Acceptable Bidder must state that the Bid includes an offer by the Acceptable Bidder to purchase some or all of the Assets and state which Assets with reasonable specificity. Each Acceptable Bid must clearly identify the following: (i) contracts to be assumed, including cure amounts to be paid, if any, and parties responsible for payment thereof; (ii) the liabilities, if any, to be assumed;  (iii) leases of equipment or stores to be assumed, including cure amounts to be paid, if any, and parties responsible for payment thereof; and (iv) which employees or groups thereof will be offered employment.

d. Purchase Price. The consideration proposed by a Bid may include cash and/or other consideration acceptable to the Debtors in an amount of no less than the sum of (i) the Purchase Price (Eighteen Million Nine Hundred Thousand Dollars ($18,900,000) subject to certain adjustments as set forth in the Stalking Horse Agreement), plus (ii) the Break-Up Fee and Expense Reimbursement (as defined in the Stalking Horse Agreement) plus (iii) $100,000. Each Bid must clearly set forth the terms of any proposed Transaction, including and identifying separately any cash and non-cash components of the proposed Transaction consideration, including, for example, any liabilities to be assumed by the Acceptable Bidder.

e. Deposit. Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate value of the cash and non-cash consideration (with the deposit amount for the non-cash consideration determined by the Debtors in their discretion) of the Bid to be held in an escrow account to be identified and established by the Debtors (the "Deposit"); provided that that the Debtors reserve the right (i) to modify the amount of the Deposit in their discretion in an amount of not less than 5% of the aggregate value of the cash and non-cash consideration and (ii) to request an additional Deposit in the event an Acceptable Bidder increases the amount of its Bid.

f. Irrevocable. All Bids must be irrevocable until the Debtors' selection of the Successful Bid and Backup Bid; provided however, that the Bids selected as either the Successful Bid or the Backup Bid (defined below) must be irrevocable and remain open for acceptance by the Debtors until three (3) Business Days after the closing of the Transaction with the Successful Bidder or the Backup Bidder, as applicable, subject to the rights of the of the Stalking Horse Bidder to terminate the Stalking Horse Agreement in accordance with the terms thereof.

g. Committed Financing. To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Transaction set forth in its Bid with cash on hand, each Bid must include committed financing documented to the Debtors' satisfaction, after consultation with the Consultation Parties, that demonstrates that the Acceptable Bidder has received sufficient debt and/or equity funding commitments to satisfy the Acceptable Bidder's purchase price and other obligations under its Bid. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Debtors and reasonably acceptable to each of the Consultation Parties.

h. Unconditional Offer / Contingencies. A statement that the Bid is formal, binding, and unconditional and is not subject to any further due diligence or financing contingency, and is irrevocable until the Debtors notify the Bidder that such Bid is not a Successful Bid or a Backup Bid.

7236190

i. <u>Non-Reliance</u>. A Bid must include a written acknowledgement and representation of the Qualified Bidder that it has had an opportunity to conduct any and all due diligence regarding the Assets and Assumed Liabilities (as defined in the Stalking Horse Agreement) prior to making its Bid, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid, and that it did not rely upon any written or oral statements, representations, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, the Assumed Liabilities, or the completeness of any information provided in connection therewith or the Auction.

j. <u>Identity</u>. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Acceptable Bidder, including if such Acceptable Bidder is an entity formed for the purpose of consummating the proposed Transaction contemplated by such Bid), and the complete terms of any such participation. Under no circumstances shall any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s), counsel and other advisors whom the Debtors' Advisors should contact regarding such Bid. Nothing herein shall preclude multiple Acceptable Bidders from submitting a joint Bid, subject to the Debtors' prior written consent (following consultation with the Consultation Parties) to such submission and the disclosure requirements set forth herein.

k. <u>Adequate Assurance</u>. Each Bid must contain evidence acceptable to the Debtors in their discretion (following consultation with the Consultation Parties) that the Acceptable Bidder has the ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Acceptable Bidder's ability to perform future obligations arising under the contracts and leases proposed in its Bid to be assumed by the Debtors and assigned to the Acceptable Bidder, in a form that will permit the immediate dissemination of such evidence to the Counterparties to such contracts and leases the "Adequate Assurance Information." Adequate Assurance Information may include: (i) the specific name of the proposed assignee, and the proposed name under which the proposed assignee intends to operate the store if not the current trade-name of the Debtors, (ii) a corporate organizational chart or similar disclosure identifying ownership and control of the proposed assignee of the applicable contracts and leases; (iii) audited or unaudited financial statements, tax returns, bank account statements or annual reports; (iv) financial projections, calculations, and/or financial pro-formas prepared in contemplation of purchasing the applicable contracts and leases; (v) the proposed assignee's intended use of the leased premises and a description of the proposed business to be conducted at the premises; (vi) the proposed assignee's experience in retail and in operating retail stores in a shopping center; (vii) a contact person for the proposed assignee;, and/or (viii) any other documentation that the Debtors may further request. The Debtors shall promptly transmit the evidence of adequate assurances of future performance provided by any Bidder to counsel for the landlords of any applicable unexpired leases with respect to such Bid. All Bidders are deemed to consent to the transmission of such evidence of adequate assurances of future performance to counsel for the applicable landlords, as provided herein.

l. <u>Authorization</u>. Each Bid must contain evidence that the Acceptable Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the closing of the Transaction contemplated in such Bid.

m. <u>No Fees Payable to Qualified Bidder</u>. Except with respect to the Break-Up Fee and Expense Reimbursement payable to the Stalking Horse Bidder in accordance with the Stalking Horse Agreement, a Bid may not request or entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment. Moreover, by

7236190

submitting a Bid, a Bidder shall be deemed to waive the right to pursue any break-up fee, termination fee, expense reimbursement or similar type of payment, or substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bidding Procedures.

By submitting its Bid, each Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of the Bidding Procedures and to refrain from submitting a Bid or seeking to reopen the Auction after conclusion of the Auction. The submission of a Bid shall constitute a binding and irrevocable offer to acquire the Assets as reflected in such Bid.

*See* Bid Procedures, at Section II.

13.     The process for determining a qualified bid under Bid Procedures provides that the Debtors, in their discretion after consultation with the Consultation Parties (defined below) will determine whether a bid (a) satisfies the bid requirements, and (b) is reasonably likely to be consummated within an acceptable timeframe to the Debtors. *See* Bid Procedures, at Section III(a) and (b).

14.     The Consultation Parties are defined in the Bid Procedures as the following:

(a) Silicon Valley Bank; (b) Triple Point Capital LLC; and (c) the Committee, provided that if any party that either (i) submits a Bid to purchase the Assets, or (ii) submits a credit bid set forth in Article IV of these Bidding Procedures shall no longer be a Consultation Party, so long as such party's Bid remains open."

*See* Bid Procedures, at Section VII.

15.     Demonstrating additional flexibility, the Bid Procedures also explicitly provide that the Debtors have the right upon consultation with the Consultation Parties to work with any Acceptable Bidder in advance of the Auction to cure any deficiencies in a Bid that is not initially deemed a Qualified Bid, and may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. *See id.*   Additionally, a bid may be amended to increase the purchase price, or otherwise improve the terms of the bid, and the Debtors may "work with Qualified

7

Bidders to aggregate two or more Qualified Bids into a single Qualifying Bid prior to the conclusion of the Auction." *See* id.

16.     Moreover, the Bid Procedures provide that "Notwithstanding anything to the contrary contained herein, nothing in the Bidding Procedures will prevent the Debtors from exercising their fiduciary duties under applicable law.  For the avoidance of doubt, any exercise of fiduciary duties that is materially inconsistent with these Bidding Procedures shall be subject to approval by the Court." *See* Bid Procedures, at Section XIV.

17.     On February 2, 2023, the Debtors are required, following consultation with the Consultation Parties, to notify each bidder whether the party is a Qualified Bidder. *See* Bid Procedures, at Section III.

18.     Prior to the Bid Deadline, the Debtors received bids from both Walgreens and CVS. Both bids differ from the Stalking Horse Bid and from each other—not only in terms of the purchase price, but also in the type/amount of purchased assets and assumed liabilities, and therefore require more than a simple comparison.  However, both satisfy the basic requirements set forth in the Bid Procedures, including an asset purchase agreement with a redline, and involve significant purchase prices.  Specifically, the bid submitted by Walgreens anticipates that the Debtors would receive a purchase price of $20,400,000, and the bid submitted by CVS contemplates $17,600,000, but both exclude certain assets, which would be reserved for the Debtors' estate and made available to other buyers.  In this regard, additional offers on partial assets were received by other entities, which include some of the assets excluded in the Walgreens and CVS bids.  The Committee is prepared to present the testimony of its financial advisor—specifically, Brian Ayers, of Rock Creek Advisors—at the hearing to discuss his analysis of the bids, as well the opportunity associated with aggregating these bids with other offers.

7236190

19.     In the Committee's view, the bids submitted by both CVS and Walgreens satisfy all material bid requirements and should constitute Qualified Bids.  *See* Bid Procedures, Section II. To the extent there are any concerns and/or deficiencies, the Committee believes they may be addressed at the Auction, and/or in the determination of whether such bid constitutes the higher and better bid.  Proceeding in such way will maximize value for all parties-in-interest.

## RELIEF REQUESTED

20.     By this Motion to Compel, the Committee requests entry of an Order on shortened notice compelling the Debtors to qualify CVS's and Walgreens' Bids as Qualified Bids in accordance with the Bid Procedures Order, and proceed to Auction.

21.     Pursuant to 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." "It is axiomatic that a court possesses the inherent authority to enforce its own orders." *In re Continental Airlines, Inc.*, 326 B.R. 318, 325-6 (Bankr. D. Del. 1999). 11 U.S.C. § 105(a) "gives the bankruptcy court "the power and the jurisdiction to enforce its valid orders." *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 266 (3d Cir. 1991) quoting In re Radco Merchandising Services, Inc., 111 B.R. 684, 688-9 (N.D. Ill. 1990). "In the exercise of this authority, courts have inherent powers to enforce compliance with and execution of their lawful orders." *In re Protarga, Inc.*, 329 B.R. 451, 479 (Bankr. D. Del. 2005).

22.     The Committee believes that Walgreens and CVS have submitted qualified bids, as defined by the approved Bid Procedures. *See* Bid Procedures, Section II.  The Court has the authority to enforce the approved Bid Procedures by entering an order qualifying the bids of Walgreens and CVS. *See In re Continental Airlines, Inc.*, 326 B.R. at 325-6; *In re Marcus Hook Development Park, Inc.*, 943 F.2d at 266; *In re Protarga, Inc.*, 329 B.R. at 479.

7236190

23.     Furthermore, it is in furtherance of the Bankruptcy Code to abide by the Bid Procedures in qualifying the bids submitted by CVS and Walgreens to allow for competitive bidding at an auction to increase the value of the Debtors' assets for the Estate. *See* 11 U.S.C. § 105(a).  Indeed, to the extent there are any concerns and/or deficiencies associated with the bids, the Committee believes they may be addressed at the Auction, and/or in the determination of whether such bid constitutes the higher and better bid.

24.     Indeed, the Debtors failing to qualifying the bids of both Walgreens and CVS is materially inconsistent with the Bid Procedures, and a failure in what should be an exercise of the Debtors' fiduciary duties.  As such, the Committee respectfully requests that the Court exercise its authority to qualify the bids of CVS and Walgreens in accordance with the plain language of the bid procedures, the Bankruptcy Code, and applicable precedent. *See* Bid Procedures, at Section II and XIV; 11 U.S.C. § 105(a); *In re Continental Airlines, Inc.*, 326 B.R. at 325-6; *In re Marcus Hook Development Park, Inc.*, 943 F.2d at 266; *In re Protarga, Inc.*, 329 B.R. at 479.  Additionally, similar relief to the relief sought in this motion was granted by Judge Walrath this past summer in the Chapter 11 cases of *In re EYP Group Holdings, Inc., et al*., Case 22-10367-MFW, at D.I. 226, 227, 236, 243 & 245.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court grant the Motion to Compel deeming the bids by Walgreens and CVS to be deemed qualified bids under the Bid Procedures, and grant such other and further relief as the Court deems just and proper.

[remainder of page left intentionally blank]

10

7236190

Dated: February 2, 2023

/s/ Cheryl A. Santaniello
Cheryl A. Santaniello, Esq. (DE Bar No. 5062)
Porzio, Bromberg & Newman, P.C.
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 526-1235
Facsimile: (302) 416-6064
E-mail: casantaniello@pbnlaw.com

- and –

Warren J. Martin, Jr. (*Pro Hac Vice Admitted*)
Robert M. Schechter, Esq. (*Pro Hac Vice Admitted*)
Kelly D. Curtin, Esq. (*Pro Hac Vice Admitted*)
David E. Sklar, Esq. (*Pro Hac Vice Admitted*)
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway, P.O. Box. 1997
Morristown, New Jersey 07962
Telephone: (973) 538-4006
Facsimile: (973) 538-5146
E-mail: wjmartin@pbnlaw.com
E-mail: rmschechter@pbnlaw.com
E-mail: kdcurtin@pbnlaw.com
E-mail: desklar@pbnlaw.com

*Counsel for the Official Committee of
Unsecured Creditors*

11

7236190