**<u>EXHIBIT B</u>**

**Blackline Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MEDLY HEALTH INC., *et al.*,[1] | ) Case No. 22-11257 (KBO) |
| | ) |
| Debtors. | ) |
| | ) **Re: Docket Nos. 15, 312 and 312353** |
| | ) |

**ORDER (AI) APPROVING THE WALGREENS PURCHASE AGREEMENT; (BII) AUTHORIZING~~AUTHORIZNG~~ THE SALE OF ~~SUBSTANTIALLY ALL~~CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; ~~(C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES;~~ AND (DIII) GRANTING RELATED RELIEF**

Upon the motion [Docket No. 15] (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105, 363, and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 6004-1 and 6006-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (a) ~~approving that certain asset purchase agreement dated December 9, 2022, as amended by that certain Amendment to Asset Purchase Agreement dated as of January 18, 2023, attached hereto as Attachment 1 (as~~

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Medly Health Inc. (3391); Care Well Pharmacy, Inc. (9048); Grubbs Care Pharmacy NW Inc. (0490); Marg Pharmacy, Inc. (5838); Medly Atlanta Inc. (7312); Medly Baltimore Inc. (2354); Medly Bedford Ave Pharmacy Inc. (3690); Medly Bristol Inc. (4556); Medly Bronx Inc. (4741); Medly Chicago Inc. (5231); Medly Dallas Inc. (7581); Medly DC Inc. (9403); Medly Enterprise LLC (8898); Medly Grand Central Inc. (1741); Medly Houston Inc. (7443); Medly Jersey City Inc. (5677); Medly Mail Service Pharmacy LLC (9203); Medly Miami Inc. (8101); Medly Orlando Inc. (7581); Medly Pharmacy Inc. (4606); Medly Pharmacy PA Inc. (8494); Medly Pittsburgh Inc. (8381); Medly Queens Inc. (9623); Medly Raleigh Inc. (5140); Medly San Antonio Inc. (9973); Medly Stamford Inc. (4966); Medly Tampa Inc. (5128); Medly UCHC Pharmacy Inc. (6672); Medly Utah Inc. (4648); Pharmaca Integrative Pharmacy, Inc. (0334); Tango340B LLC (4781); West Campbell Pharmacy Inc. (2931); Khora Health Solutions Inc. (2909); and RPH Innovations LLC (3767).  The Debtors' business address is 7088 Winchester Circle, Suite 100, Boulder CO 80301.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the Walgreens Purchase Agreement, as applicable.

the same may be amended in accordance with the terms thereof, the Bidding Procedures Order (defined below) and of this Sale Order, the "**Purchase Agreement**") between and among the Debtors and MedPharmaca Holdings, Inc. ("**Buyer**"); (b) authorizing the sale (the "**Sale**") of either substantially all or less than substantially all of the Debtors' assets (the "~~Acquired~~Available **Assets**") free and clear of all Liens, Claims, Encumbrances, and Interests (other than the Assumed Liabilities and Permitted Liens), with such Liens, Claims, Encumbrances, and Interests to attach to the proceeds of the Sale as further provided herein; and (c) authorizing the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in connection therewith (including pursuant to the contract and lease designation rights set forth in Section 1.5(a) of the Purchase Agreement); andb) the Court having considered and previously entered the *Order (I) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially All of Debtors' Assets, (II) Scheduling Bid Deadlines and the Auction, (III) Approving Form and Manner of Notice Thereof, and (IV) Granting Related Relief*, dated January 18, 2023 [Docket No. 312] (the "**Bidding Procedures Order**"), approving bidding procedures for the marketing and sale of the Acquired Assets (the "**Bidding Procedures**") and granting certain related relief, including, without limitation, designating BuyerMedPharmaca Holdings, Inc. as the "Stalking Horse Bidder" in accordance with the Bidding Procedures Order; and Buyerthe Debtors having conducted an auction February 3, 2023 and February 4, 2023 (the "**Auction**"); and the Debtors, in consultation with the Consultation Parties, having selected the bid submitted by Walgreen Co. ("**Buyer**") as the highest or otherwise best bid for the all or substantially all of the Debtors' Pharmacy Records and Scripts, Pharmaceutical Inventory, Intellectual Property, and certain other assets (the "**Acquired Assets** which was the Successful Bid (as defined in the Bidding Procedures) for the Acquired Assets"); and the Court having conducted a hearing to

consider the Sale on February 7, 2023 (the "**Sale Hearing**"), at which all interested parties were offered an opportunity to be heard with respect to the Sale; and the Court having reviewed and considered (a) the Motion and the exhibits thereto~~,~~; (b) the Asset Purchase Agreement between the Debtors and Buyer dated as of February 5, 2023 and filed with the Court on February 6, 2023 [Docket No. 354] (the "**Purchase Agreement**"), whereby the Debtors have agreed, among other things, to sell the Acquired Assets to Buyer, ~~including certain executory contracts and unexpired leases of the Debtors that will be assumed and assigned to Buyer and to which all objections have been resolved or otherwise overruled (collectively, the "**Assumed Contracts and Assumed Leases**"),~~ on the terms and conditions set forth in the Purchase Agreement and any ancillary or supplemental documents executed in connection therewith; ~~(c) the *Declaration of [\_\_\_\_] in Support of Entry of Order (A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Interests and Encumbrances, (B)Approving Assumption and Assignment of Executory Contracts and Unexpired Leases and (C) Granting Related Relief*, dated February [●], 2023 [Docket No. [●]] (the "[\_\_\_\_] **Declaration**"); (d) the *Declaration of Joshua Phillips in Support of Entry of Order (A) Approving the Purchase Agreement; (B) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; (C) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (D) Granting Related Relief*, dated February [●], 2023 [Docket No. [\_\_\_\_]] (the "**Phillips Declaration**" and, together with the [\_\_\_\_] Declaration, the "**Sale Declarations**");~~ and (~~c~~c) the arguments of counsel made, and the evidence proffered and adduced, at the Sale Hearing; and due notice of the Motion and the form of this order (this "**Sale Order**") having been provided; and it appearing that the relief granted herein is in the best interests of the Debtors, their estates, creditors, and all parties in interest in the Debtors' chapter 11 cases (collectively, the

"**Bankruptcy Case**"); and upon the record of the Sale Hearing and the Bankruptcy Case; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.     **Fed. R. Bankr. P. 7052**. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     **Jurisdiction and Venue**. The Court has jurisdiction to decide the Motion and approve the Sale pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final order hereon under Article III of the U.S. Constitution. Venue of the Bankruptcy Case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

C.     **Statutory and Rule Predicates**. The statutory and other legal predicates for the relief granted herein are sections 105(a), and 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, and 9014, and Local Rules 6004-1 and 6006-1.

D.     **Opportunity to Object**. A fair and reasonable opportunity to object to, and be heard with respect to, the Motion and the Sale has been given to all Persons entitled to notice pursuant to the Bidding Procedures Order, including, without limitation, the following: (i) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (ii) counsel for the official committee of unsecured creditors (the "**Committee**"); (iii)  Silicon Valley Bank; (iv) the Prepetition TPC Lenders and the DIP Lenders; (v) the Stalking Horse Bidder; (vi) all

known creditors of the Debtors (for whom identifying information and addresses are available to the Debtors); (vii) the Internal Revenue Service; (viii) all applicable federal, state, and local taxing authorities; (ix) all persons and entities known by the Debtors to have expressed an interest to the Debtors in the Acquired Assets during the past 6 months; (x) all persons and entities known by the Debtors to have asserted any lien, claim, interest or encumbrance in the Acquired Assets (for whom identifying information and addresses are available to the Debtors); (xi) Counterparties to Potential Assumed Contracts; (xii) any governmental authority known to have a claim against the Debtors in the Chapter 11 Cases; (xiii xii) the United States Securities and Exchange Commission; (xiii) the United States Attorney's Office for the District of Delaware; (xiv) the United States Attorney General's Office for the District of Delaware; (xv) United States Attorney General's Office for the District of Delaware; (xvi) the Office of the Attorney General and the Secretary of State in each state in which the Debtors operate; (xvii xvi) all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; and (xviii xvii) all other parties as directed by the Court. *See* Docket Nos. [●]328, 329, 342.

     **E.**    **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

     **F.**    **Sound Business Purpose**. The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of the Purchase Agreement, the Sale, and entering into the Purchase Agreement. The Debtors' entry into and performance under the Purchase Agreement: (i) constitutes a sound and reasonable exercise of the Debtors' business judgment; (ii) provides value to and is beneficial to the Debtors' estates and is in the best interests of the Debtors and their stakeholders; and (iii) is reasonable and appropriate under the circumstances. Business justifications for the Sale include, without limitation, the following: (i)

the value of the Debtors' estates will be maximized through the Sale of the Acquired Assets pursuant to the Purchase Agreement; (ii) the Purchase Agreement constitutes the highest or otherwise best offer received for the Available Assets, including without limitation, the Acquired Assets; (iii) the Purchase Agreement presents the best opportunity to maximize the value of the Debtors' assets on a going concern basis and avoid decline and devaluation of the Acquired Assets; and (iv) unless the Sale is concluded expeditiously, as provided for pursuant to the Purchase Agreement, certainty of consummating the Sale will be compromised and recoveries to creditors may be materially diminished.

G.    **Compliance with Bidding Procedures Order**. The Debtors and Buyer complied with the Bidding Procedures Order and the Bidding Procedures in all respects. Buyer was the Successful Bidder (as defined in the Bidding Procedures) for the Acquired Assets in accordance with the Bidding Procedures Order and the Bidding Procedures.

H.    **No Claims by Debtors**.  Except as set forth herein and under the Purchase Agreement, the Debtors agree and acknowledge that they have no liabilities that could be asserted against Buyer.

I.    **Local Rule**.  The Motion complies with all aspects of Local Rule 6004-1.

J.    **Compliance with Bankruptcy Code**.  The consummation of the transactions contemplated under the Purchase Agreement is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m), 365(b), and 365(f) thereof, and all of the applicable requirements of such sections have been complied with in respect of such transactions.

K.    **Highest or Otherwise Best Value**. Prior to the commencement of the Bankruptcy Case and through the postpetition sale process pursuant to the Bidding Procedures Order and the

Bidding Procedures, the Debtors conducted a fair and open sale process. In doing so, the Debtors afforded Potential Bidders due diligence access to provide any such Potential Bidders an opportunity to submit a Qualified Bid. The Bidding Procedures Order, the Bidding Procedures, and the process utilized pursuant thereto were designed to obtain the highest or otherwise best value for the Available Assets, including the Acquired Assets for the Debtors and their estates under the circumstances, and any other transaction would not have yielded as favorable an economic result. The sale process and the Bidding Procedures were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Available Assets, including the Acquired Assets.

**L.** **No Better Alternative**. The Debtors' determination that the Purchase Agreement constitutes the highest or otherwise best offer for either the Acquired Assets or for all of the Available Assets was a reasonable, valid, and sound exercise of the Debtors' business judgment. No other person or entity or group or combination of persons or entities has offered to purchase the Acquired Assets, all of the Available Assets, or any combination of the Available Assets for an amount that would give an opportunity for equal or greater value to the Debtors than the value provided by Buyer pursuant to the Purchase Agreement. Execution of the Sale is the best alternative available to the Debtors to maximize the return to their creditors~~and limit the losses to non-Debtor Counterparties to the Assumed Contracts and Assumed Leases~~. No alternative to the Sale exists that would provide a greater value to the Debtors, their creditors, or other parties in interest.

**M.** **No *Sub Rosa* Plan**. The sale and assignment of the Acquired Assets outside of a chapter 11 plan pursuant to the Purchase Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of any chapter 11 plan of the

Debtors. Neither the Purchase Agreement, nor the Sale contemplated thereby constitutes a *de facto* or *sub rosa* chapter 11 plan.

**N.**     **Fair Consideration**.   The consideration to be paid by Buyer under the Purchase Agreement constitutes fair and reasonable consideration for the Acquired Assets.

**O.**     **Good Faith**. The Purchase Agreement and each of the transactions contemplated therein, were negotiated, proposed, and entered into by the Debtors, and Buyer in good faith, without collusion, and from arm's-length bargaining positions. Buyer is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby. None of the Debtors or Buyer have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code. The Purchase Agreement ~~were~~was not entered into for the purpose of hindering, delaying, or defrauding present or future creditors of the Debtors. None of the Debtors or Buyer is entering into the Purchase Agreement, or proposing to consummate the Sale, fraudulently or for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof, or the District of Columbia.

**P.**     **Privacy**. The Sale is consistent with the Debtors' policy concerning the transfer of personally identifiable information and the Debtors have, to the extent necessary, satisfied section 363(b)(1) of the Bankruptcy Code, and Buyer will honor the obligations thereunder. Accordingly, appointment of a consumer ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Motion.

**Q.**     **Notice**. As evidenced by the affidavits of service filed with the Court: (i) proper, timely, adequate, and sufficient notice of the Motion, the Bidding Procedures Order, the Bidding

Procedures, the sale process (including, without limitation, the Bid Deadline), the Sale Hearing, the Sale, and the proposed Sale Order was provided by the Debtors to all interested parties; (ii) such notice was good, sufficient, and appropriate under the particular circumstances and complied with the Bidding Procedures Order, sections 102(1) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007, 9008, and 9014, Local Rules 6004-1 and 6006-1, and the procedural due process requirements of the United States Constitution; and (iii) no other or further notice of the Motion, the Bidding Procedures Order, the Bidding Procedures, the Sale, the Sale Hearing, or this Sale Order is required. *See* Docket Nos. [•]. With respect to Persons whose identities are not reasonably ascertained by the Debtors, publication of the notice in the National Edition of *USA Today*, on January [•]24, 2023, was sufficient and reasonably calculated under the circumstances to reach such Persons. *See* Docket No. [•].

**R.    Cure Notice.** As evidenced by the certificates of service filed with the Court, and in accordance with the provisions of the Bidding Procedures Order, the Debtors have served the Potential Assumption and Assignment Notice (as amended or modified) (as such term is defined in the Bidding Procedures Order) and provided notice of the potential assumption and assignment of the executory Contracts and unexpired Leases and of the related proposed Cure Amounts (as defined below) upon each non-Debtor party to the executory Contracts and unexpired Leases. *See* Docket No. 316 The service of the Potential Assumption and Assignment Notice on the non-Debtor Counterparties was good, sufficient, and appropriate under the circumstances and no further notice need be given with respect to the proposed Cure Amounts for the assumption and assignment of the executory Contracts and unexpired Leases. All non-Debtor Counterparties to the executory Contracts and unexpired Leases have had a reasonable opportunity to object to (i) the assumption by the Debtors of the executory Contracts

and unexpired Leases and (ii) the assignment of the Assumed Contracts and Assumed Leases to Buyer and the proposed Cure Amounts listed on the Potential Assumption and Assignment Notice. No defaults exist in the Debtors' performance under the Assumed Contracts and Assumed Leases as of the date of this Sale Order other than the failure to pay amounts equal to the Cure Amounts in the manner required by this Sale Order or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

**R.** ~~S.~~ **Satisfaction of Section 363(f) Standards**. Except as expressly set forth in the Purchase Agreement or this Sale Order, the Debtors may sell the Acquired Assets pursuant to the Purchase Agreement free and clear of all liens ~~(other than Permitted Liens)~~, claims (including, without limitation, those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights, liabilities, encumbrances and other interests of any kind or nature whatsoever against the Debtors or against such assets (including, without limitation, all Liens, Claims, Encumbrances, and Interests as those terms are defined in the Purchase Agreement) arising prior to the Closing of the Sale (collectively, "**Liens-Claims-Encumbrances-Interests**"), including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, any and all claims arising under state or federal antitrust laws, environmental liabilities (to the greatest extent allowed by applicable law), employee pension or benefit plan claims, multiemployer benefit plan claims, workers' compensation claims, retiree healthcare or life insurance claims, claims related to the purchase or dispensing of controlled substances, claims relating to applicable state laws and regulations governing the practice of pharmacy and pharmacy operation, claims relating to the compliant operation of compounding pharmacies, or claims for taxes of or against the Debtors, and any derivative,

vicarious, transferee, or successor liability claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the commencement of the Bankruptcy Case, whether known or unknown, and whether imposed by agreement, understanding, law, equity, or otherwise arising under or out of, in connection with, or in any way related to the Debtors, the Debtors' interests in the Acquired Assets, the operation of the Debtors' business before the Closing, or the transfer of the Debtors' interests in the Acquired Assets to Buyer, and all Excluded Liabilities, ~~but excluding any Assumed Liabilities (as defined in the Purchase Agreement),~~ because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied. Those holders of Liens-Claims-Encumbrances-Interests who did not object (or who ultimately withdrew their objections, if any) to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Liens-Claims-Encumbrances-Interests who did object that have an interest in the Acquired Assets fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are therefore adequately protected by having their Liens-Claims-Encumbrances-Interests that constitute interests in the Acquired Assets, attach solely to the proceeds of the Sale ultimately attributable to the property in which they have an interest, in the same order of priority and with the same extent, validity, force, and effect that such holders had prior to consummation of the Sale, subject to any rights, claims, and defenses that the Debtors' estates and/or the Debtors, as applicable, may possess with respect thereto. All Persons having Liens-Claims-Encumbrances-Interests of any kind or nature whatsoever against the Debtors or the Acquired Assets shall be forever prohibited, barred, and

estopped from pursuing or asserting such Liens-Claims-Encumbrances-Interests against Buyer or any of its assets, property, Affiliates, successors, assigns, or the Acquired Assets.

**S.** ~~T.~~ **No Obligation Regarding Excluded Liabilities**.  Buyer has not agreed to assume and shall have no obligation with respect to any Liens-Claims-Encumbrances-Interests, ~~other than as expressly set forth in the Purchase Agreement and this Sale Order. Other than the Assumed Liabilities and Permitted Liens, and except as expressly provided for by the terms of the Purchase Agreement,~~ Buyer (i) shall have no obligations with respect to any Excluded Liabilities, (ii) shall acquire all of the Acquired Assets free and clear of the Liens-Claims-Encumbrances-Interests, and (iii) is released by the Debtors and all other Persons with respect to such Excluded Liabilities.

**T.** ~~U.~~ **Consideration**. Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors and their estates and their creditors, if the sale of the Acquired Assets, was not free and clear of all Liens-Claims-Encumbrances-Interests, or if Buyer would, or in the future could, be liable for any such Liens-Claims-Encumbrances-Interests. The total consideration to be provided under the Purchase Agreement reflects Buyer's reliance on this Sale Order to provide it with title to and possession of the Acquired Assets free and clear of all Liens-Claims-Encumbrances-Interests.

~~V.    **Assumption and Assignment of Assumed Contracts and Assumed Leases**. Buyer's assumption and assignment of the Assumed Contracts and Assumed Leases, and designation rights with respect to Retained Contracts (as defined in the Purchase Agreement), are integral to the Purchase Agreement, are in the best interests of the Debtors and their estates, and represent the valid and reasonable exercise of the Debtors' sound business judgment.~~

Specifically, the designation rights and the assumption and assignment of the Assumed Contracts and Assumed Leases: (i) are necessary to sell the Acquired Assets to Buyer; (ii) allow the Debtors to sell their business to Buyer as a going concern; (iii) limit the losses suffered by non-Debtor Counterparties to the Assumed Contracts and Assumed Leases; and (iv) maximize the recoveries to other creditors of the Debtors by limiting the number and total asserted amount of claims against the Debtors' estates to the extent the Debtors are able to avoid the rejection of the Assumed Contracts and Assumed Leases.

W.     **Cure Amounts**.  With respect to each of the Assumed Contracts and Assumed Leases, including, without limitation, the Retained Contracts that are later designated as Assumed Contracts or Assumed Leases, the Debtors have met all of the requirements of section 365(b) of the Bankruptcy Code. The amounts payable to cure all defaults (as that concept is contemplated by section 365 of the Bankruptcy Code) under any applicable Assumed Contracts or Assumed Leases listed on the Contract Schedule (as defined in the Purchase Agreement), including, without limitation, any Retained Contracts that are later designated as Assumed Contracts or Assumed Leases, to effectuate the assumption by the Debtors and the assignment to Buyer of such Assumed Contracts or Assumed Leases in accordance with section 365 of the Bankruptcy Code at Closing or during the Retained Contracts Period, either in an amount mutually agreed upon between Buyer and the applicable non-Debtor Counterparties or otherwise judicially resolved (collectively, the "**Cure Amounts**"), are deemed to be the entire cure obligation due and owing under such Assumed Contracts and Assumed Leases (as that concept is contemplated by section 365 of the Bankruptcy Code).  Further, Buyer has provided adequate assurance of future performance under the Assumed Contracts and Assumed Leases in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code. Accordingly, the Assumed

Contracts and Assumed Leases may be assumed by the Debtors and assigned to Buyer either at Closing or during the Retained Contracts Period (as defined in the Purchase Agreement), as provided for in the Purchase Agreement and this Sale Order.

U. X. **Validity of Transfer**. The transfer of the Acquired Assets to Buyer in accordance with the Purchase Agreement will be a legal, valid, and effective transfer of the Acquired Assets, and will vest Buyer with all right, title, and interest of the Debtors in respect of the Acquired Assets, free and clear of all Liens-Claims-Encumbrances-Interests (except as otherwise set forth in the Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens). The consummation of the Sale is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), and 363(m), 365(b), and 365(f) of the Bankruptcy Code and all of the applicable requirements of such sections have been complied with in respect of the Sale.

Y. **Granting of Liens and Superpriority Expense**. Pursuant to Section 2.1(e) of the Purchase Agreement, the Debtors and Buyer have agreed that Buyer is entitled to receive certain payments from the Available Amounts for any Seller Obligations actually paid by Buyer on behalf of the Debtors post-Closing. The Purchase Agreement provides, and the Debtors and Buyer have stipulated, acknowledged, and agreed that, as adequate protection for payment of the Available Amounts, Buyer is entitled to (i) allowed superpriority administrative expense claims pursuant to section 364(c) of Bankruptcy Code senior to all other superpriority claims against the Debtors' estates Case with priority over any and all other superpriority administrative expense claims, and (ii) secured by perfected first priority liens on all of the assets of the Debtors to the extent that such assets are not subject to valid, perfected, and non-avoidable liens (and perfected liens junior to such valid, perfected, and non-avoidable liens otherwise) without further order,

notice, or action other than entry of this Sale Order; provided however, that Buyer's rights to any payments provided under section 2.1(e) of the Purchase Agreement, are expressly subordinated to payments of any amounts due under (i) the Carve-Out (as defined in the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, and 507 (I) Authorizing Debtors to Obtain Secured Superpriority Postpetition Financing, (II) Granting Priming Liens and Superpriority Administrative Expense Status, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, and (V) Granting Related Relief* [Docket No. 309] (the "**DIP Order**")), (ii) the DIP Facility for principal amounts of up to Eight Million Dollars ($8,000,000) plus all interest, fees, expenses and other amounts in the DIP Facility approved by the DIP Order, and (iii) any wind-down amounts set forth in line 13 (Wind-Down/Trustee's Fees) of the approved Budget in the DIP Facility, which amount shall not exceed $650,000 (it being expressly understood, however, that the $650,000 limitation set forth in this provision applies to the subordination of Buyer's rights, not as a limitation on Seller's right to seek or obtain additional funds for the wind-down of their bankruptcy estates).

**Z.**     **Limited Powers of Attorney**. For purposes of continuing and maintaining uninterrupted pharmacy operations in compliance with state and federal law, the Debtors and Buyer may be required to enter into certain powers of attorney (collectively, the "**POAs**") to give Buyer full power and authority under and the full use and benefit of: (i) any pharmacy license or permit number, or any other required license, permit, registration, or document, issued to the Debtors for the pharmacies operated by Buyer; (ii) registrations, certifications, and provider numbers, and to transition payor agreements, including, without limitation, Medicare and Medicaid provider agreements, required to obtain reimbursement for services provided by the pharmacies operated by Buyer; and (iii) the Debtors' controlled substances registrations, Drug

Enforcement Agency registrations, and other state pharmacy permits and registrations required to continue pharmacy operations for the pharmacies operated by Buyer.

**V.** ~~AA.~~ **Corporate Authorization**. ~~Pursuant to the *(i) Omnibus Written Consent of the Sole Director and Sole Manager of Certain Affiliates of Medly Health Inc., Effective as of December 8, 2002; (ii) Action by Unanimous Written Consent of the Board of Directors of Medly Health Inc., Effective as of December 8, 2022; and (iii) Written Consent of the Sole Member of Medly Mail Service Pharmacy, LLC, Effective as of December 8, 2022,* the~~The Debtors: (i) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated and required thereby, and the Sale has been duly and validly authorized by all necessary corporate action of the Debtors; (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated and required by the Purchase Agreement; and (iii) upon entry of this Sale Order, other than any consents identified in the Purchase Agreement~~,~~ (including, without limitation, with respect to ~~antitrust or other~~ regulatory matters), need no consent or approval from any other Person to consummate the Sale.

**W.** ~~BB.~~ **Good Title**. The Acquired Assets of the Debtors constitute property of their estates and good title is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

**X.** ~~CC.~~ **Not Intended to Delay, Defraud**. The Purchase Agreement is a valid and lawful contract binding upon each of the signatories thereto and shall be enforceable pursuant to ~~their respective~~its terms. The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under laws of the United States, any state, territory, possession, or the District of Columbia. This Sale Order, the Purchase Agreement and, upon Closing, the Sale and the consummation thereof, shall be

specifically enforceable against and binding upon (without posting any bond) Buyer, the Debtors, and any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Case, and shall not be subject to rejection or avoidance by the foregoing parties or any other Person.

~~DD.    Purchase of Avoidance Actions.    The Avoidance Actions (as defined in the Purchase Agreement) that are being acquired by Buyer are an integral part of the transactions contemplated by the Purchase Agreement. The consideration provided by Buyer under the Purchase Agreement for the Avoidance Actions, and the right to pursue and recover on account of such Avoidance Actions, constitutes a benefit to the Debtors' estates.~~

**Y.**    ~~EE.~~ **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. The sale of the Acquired Assets must be approved and consummated promptly to preserve the value of the Acquired Assets. Therefore, time is of the essence in consummating the Sale and the Debtors and Buyer intend to close the Sale as soon as reasonably practicable. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the immediate approval and consummation of the Sale as contemplated by the Purchase Agreement. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the transactions contemplated by this Sale Order.

**Z.**    ~~FF.~~ **Legal and Factual Bases**. The legal and factual bases set forth in the Motion~~,~~ ~~the Sale Declarations,~~ and at the Sale Hearing establish just cause for the relief granted herein.

**NOW THEREFORE, IT IS ORDERED THAT:**

1.    **Motion Granted**. The Motion and the relief requested therein is granted and approved as set forth herein.

2.      **Objections Overruled**. All objections to the Motion or the relief requested therein that have not been withdrawn, waived, settled, or otherwise resolved are hereby overruled on the merits and with prejudice.

3.      **Prior Findings and Conclusions Incorporated**.  The Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

4.      **Notice.** Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with the Bidding Procedures Order, section 102(1) of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006.

5.      **Power to Transfer Acquired Assets**.  The Debtors, in transferring the Acquired Assets pursuant to this Sale Order and section 363 of the Bankruptcy Code, are deemed, under section 1107(a) of the Bankruptcy Code, to have all rights and powers to perform all the functions and duties of a trustee serving in a case under chapter 11 and will transfer the property pursuant to this Sale Order subject to the terms of the Purchase Agreement.  The Debtors have full corporate power and authority to execute and deliver the Purchase Agreement and all other documents contemplated thereby, and no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Purchase Agreement.

6.      **Fair Purchase Price**. The consideration provided by Buyer under the Purchase Agreement is fair and reasonable and constitutes: (a) reasonably equivalent value under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act; (b) fair consideration under the Uniform Fraudulent Conveyance Act; and (c) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory, or possession or the District of Columbia.

7.  **Highest or Otherwise Best Offer**.  The Sale of the Acquired Assets, the bid by Buyer in accordance with the Bidding Procedures, the terms and conditions of the Purchase Agreement, and the transactions contemplated thereby and all of the terms and conditions thereof, are the highest or otherwise best offer for the Acquired Assets, all of the Available Assets, or any combination of the Available Assets and hereby are authorized and approved in all respects.

8.  **Approval of the Agreements**. The Purchase Agreement, including, without limitation, all transactions contemplated thereby and all of the terms and conditions thereof, is hereby approved in its entirety, except as modified by the ~~Bid~~Bidding Procedures Order and this Sale Order.  The failure to specifically include or reference in this Sale Order any particular provisions of the Purchase Agreement, or any of the documents, agreements, or instruments related thereto and executed in connection therewith, shall not diminish or impair the effectiveness of such provisions, documents, agreements, or instruments, it being the intent of the Court, the Debtors, and Buyer that the Purchase Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Sale Order prior to Closing.

9.  **Consummation of Sale**.  Pursuant to sections 105, and 363~~, and 365~~ of the Bankruptcy Code, the Debtors, as well as their officers, employees, and agents, are authorized to execute, deliver, and perform their obligations under and comply with the terms of the Purchase Agreement, and to consummate the Sale, including, without limitation, by taking any and all actions as may be reasonably necessary or desirable to implement the terms of the Purchase Agreement, and each of the transactions contemplated thereby, or to otherwise effectuate the relief granted pursuant to this Sale Order.

10.     **Authorization**. The Debtors, their Affiliates, and their respective officers, employees, and agents, are authorized to execute and deliver, and authorized to perform under, consummate, and implement all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and to take all further actions as may be reasonably (a) requested by Buyer for the purpose of assigning, transferring, granting, conveying, and/or conferring to Buyer the Acquired Assets, or (b) necessary or appropriate to the performance of the obligations contemplated by the Purchase Agreement, all without further order of the Court.

11.     **Transfer of Acquired Assets Free and Clear**.  Pursuant to sections 105, 363(b), and 363(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to Buyer in accordance with the terms of the Purchase Agreement and this Sale Order.  Subject to the provisions of the Purchase Agreement ~~(including with respect to the Assumed Liabilities and the Permitted Liens),~~ and this Sale Order, the Acquired Assets shall be transferred to Buyer and such transfer shall (a) be valid, legal, binding, and effective, (b) vest Buyer with all right, title, and interest of any of the Debtors in the Acquired Assets, and (c) upon the Debtors' receipt of the Purchase Price, be free and clear of any Liens-Claims-Encumbrances-Interests in accordance with section 363(f) of the Bankruptcy Code ~~(other than Permitted Liens and Assumed Liabilities)~~.  Any such Liens-Claims-Encumbrances-Interests shall attach to the proceeds of the Sale of the Acquired Assets in the same order of priority, and with the same extent, validity, force, and effect as existed with respect to the Acquired Assets prior to the Sale and subject to any rights, claims, defenses, and counterclaims of the Debtors' estates and/or the Debtors to such Liens-Claims-Encumbrances-Interests.  Upon the Closing, Buyer shall take title to and possession of the Acquired Assets ~~subject only to the Assumed Liabilities and Permitted Liens~~

in accordance with the terms of the Purchase Agreement, and the Acquired Assets shall thereafter be the sole and exclusive property of Buyer and not be deemed property of the Debtors or their estates for any purpose after the ~~Closing~~Closings. Notwithstanding anything to the contrary herein, but subject to funding of the Carve-Out (as defined in the DIP Order) and the UCC Settlement (as defined below), ~~Buyer is~~upon completion of the Closings, the Debtors are hereby authorized and directed to pay, or cause to be paid, the amounts ~~available at Closing, which amount is set forth in the Budget at $6,301,000 (but remains~~necessary to satisfy (i) the DIP Facility; and (ii) subject to the extent of available proceeds~~), to satisfy~~ all or any portion of the Prepetition Senior Obligations (as defined in the DIP Order) in cash at Closing (or at the time of any post-Closing distributions of Sale proceeds) directly to Silicon Valley Bank.  For the avoidance of doubt, any such payments made pursuant to the foregoing sentence shall not be subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except pursuant to a Challenge (as defined in the DIP Order).

12.    **UCC Settlement Proceeds**.  Pursuant to the terms of the settlement reached between the Debtors, the Committee, the DIP Lender, the Prepetition TPC Lenders, and the Prepetition Senior Lender (as defined in the DIP Order) (the "**UCC Settlement**"),[3] after (a) all outstanding DIP Obligations (as defined in the DIP Order) have been indefeasibly repaid in full in cash and (b) the sale of assets to the Buyer has closed, a minimum of $1,000,000 (the "**UCC Reserve**") will be reserved from the Purchase Price for the benefit of general unsecured creditors (other than holders of unsecured claims arising under section 506 of the Bankruptcy Code and the SVB Deficiency Claim (as defined in the UCC Settlement)). The UCC Reserve will be

---

[3] A copy of the UCC Settlement term sheet is attached to the DIP Order as **Exhibit B**.

distributed for the benefit of holders of general unsecured claims pursuant to a chapter 11 plan or other Court approved wind-down process.

13.    **Claims After Closing**.  Except as set forth in the Purchase Agreement (including with respect to the Assumed Liabilities) and this Sale Order, all Persons (and their respective successors and assigns) holding Liens-Claims-Encumbrances-Interests against, on, or in any of the Debtors or all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), including, without limitation, debt holders, equity security holders, governmental, tax and regulatory authorities, governmental units, lenders, employees, former employees, pension plans, multiemployer pension plans, labor unions, and trade creditors are hereby forever prohibited, barred, and estopped from asserting or pursuing such Liens-Claims-Encumbrances-Interests against Buyer, its Affiliates, successors or assigns, its property, or the Acquired Assets, including, without limitation, by taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding against Buyer, its Affiliates, successors or assigns, its assets, or its properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Buyer, its Affiliates, successors or assigns, its assets, or its properties; (c) creating, perfecting, or enforcing any Claim against Buyer, its Affiliates, successors or assigns, its assets, or its properties; (d) asserting a Claim as a setoff (except for setoffs exercised prior to the Petition Date) or right of subrogation of any kind against any obligation due Buyer or its successors or assigns; or (e) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Sale Order or the agreements or actions approved, contemplated, or taken in respect thereof; provided that the foregoing shall not release any obligations assumed or established by Buyer

~~under the Purchase Agreement or~~under this Sale Order, including Buyer's performance obligations under the Purchase Agreement and any and all post-Closing obligations. ~~Notwithstanding anything to the contrary in this Sale Order or the Purchase Agreement, the rights of a Person to exercise any right to recoupment are not impaired.~~

14.    **No Interference with Acquired Assets**. All Persons are hereby forever prohibited, barred, and estopped from taking any action that would interfere with or adversely affect the ability of the Debtors to transfer the Acquired Assets in accordance with the terms of the Purchase Agreement and this Sale Order. Except as otherwise provided in this Sale Order, following the Closing, no holder of any Lien-Claim-Encumbrance-Interest shall interfere with Buyer's title to or use and enjoyment of the Acquired Assets, or assert any claims against Buyer based on or related to any such Lien-Claim-Encumbrance-Interest or based on any actions that the Debtors have taken or may take, or failed to take or may fail to take, in the Bankruptcy Case. ~~Except as expressly set forth in the Purchase Agreement (including with respect to the Assumed Liabilities and Permitted Liens),~~ Buyer and its Affiliates and successors and assigns shall have no liability for any Liens-Claims-Encumbrances-Interests, causes of action, obligations, demands, losses, claims, taxes, costs, and expenses of any kind, character, or nature whatsoever, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee or successor or otherwise, of any kind, nature or character whatsoever relating to or arising from the Debtors, their estates, the Acquired Assets, or the Sale, including, without limitation, with respect to: (a) any employment or labor agreements; (b) any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of or related to any of the Debtors or any Debtor's Affiliates or predecessors or any current or former

employees of any of the foregoing, including, without limitation, the Employee Benefit Plans and any participation or other agreements related to the Employee Benefit Plans, or the termination of any of the foregoing; (c) the Debtors' business operations or the cessation thereof; (d) any litigation involving one or more of the Debtors; (e) any employee, workers' compensation, occupational disease, or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985 ("**COBRA**"), (x) the Multiemployer Pension Plan Amendments Act of 1980, (xi) state and local discrimination laws, (xii) state and local unemployment compensation laws or any other similar state and local laws, (xiii) state workers' compensation laws, or (xiv) any other state, local, or federal employee benefit laws, regulations or rules, or other state, local, or federal laws, regulations or rules relating to, wages, benefits, employment, or termination of employment with any or all Debtors or any predecessors; (f) any antitrust laws; (g) any product liability or similar laws, whether state or federal or otherwise; (h) to the greatest extent allowed by applicable law, any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes; (i) any bulk sales or similar laws; (j) any federal, state, or local tax statutes, regulations, or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (k) the

Coronavirus Aid, Relief, and Economic Security Act of 2020; and (l) any statute or theory of or related to successor liability, including, without limitation, the common law doctrine of *de facto* merger or successor or transferee liability, or successor-in-interest liability theory.  Entry of this Sale Order shall not affect any release of (x) any future or ongoing obligation(s) under the Purchase Agreement, or this Sale Order or (y) any Person's rights, claims, causes of action, or remedies relating to the foregoing.

15.    **Liability Regarding Employees**.  Buyer shall not be deemed to be a joint employer, single employer, co-employer, or successor employer with the Debtors for any purpose or under the laws of the United States, any state, territory, or possession thereof, and Buyer shall not have any obligation to pay any past wages, benefits, or severance pay or extend or make any benefits or benefit programs, including, without limitation, COBRA or any similar laws or regulations, to any of the Debtors' employees or former employees (or any of their respective spouses, dependents, or beneficiaries), including, without limitation, any such employees who may become employees of Buyer ~~except pursuant to the terms of the Purchase Agreement~~.

16.    **Self-Executing Order**.  The provisions of this Sale Order authorizing the Sale of the Acquired Assets free and clear of Liens-Claims-Encumbrances-Interests shall be self-executing, and neither the Debtors nor Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, or implement the foregoing provisions of this Sale Order; *provided, however*, that this paragraph shall not excuse such Persons from performing any and all of their respective obligations under this Sale Order or the Purchase Agreement, and the Debtors and Buyer, and each of their respective directors, officers, employees, authorized signatories, members, agents,

representatives, and attorneys are hereby authorized and empowered to take all actions and execute and deliver any and all documents and instruments that either the Debtors or Buyer deem necessary or appropriate to implement and effectuate the terms of the Purchase Agreement and this Sale Order.

17.    **General Assignment**. This Sale Order (a) shall be effective as a determination that, as of the Closing, the conveyances and transfers described herein and the Purchase Agreement have been effected and (b) is and shall be binding upon and govern the acts of all Persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments that reflect that Buyer is the assignee and owner of the Acquired Assets free and clear of all Liens-Claims-Encumbrances-Interests, ~~or who may be required to report or insure any title or state of title in or to any lease~~; and each of the foregoing Persons is hereby authorized to accept for filing any and all of the documents and instruments reasonably necessary or appropriate to consummate the transactions contemplated by the Purchase Agreement. This Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Acquired Assets and/or a bill of sale or assignment transferring indefeasible title and interest in the Acquired Assets, ~~including, without limitation, the Assumed Contracts and Assumed Leases,~~ to Buyer on the terms set forth in the Purchase Agreement.

18.    **Release of Liens-Claims-Encumbrances-Interests**.

a.    Subject to subparagraph (b) of this Paragraph ~~17~~18, if any Person that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or

{10820999:6 }
DOCS_SF:~~108380.6 56185/001~~108380.14 56185/001

other documents or agreements evidencing Liens-Claims-Encumbrances-Interests on, against, or in the Acquired Assets shall not have delivered to the Debtors by the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all interests that the Person has with respect to the Acquired Assets, then with regard to the Acquired Assets that are purchased by Buyer pursuant to the Purchase Agreement and this Sale Order (a) the Buyer or its designee are hereby authorized to execute and file such statements, instruments, or releases on behalf of the Person with respect to the Acquired Assets and (b) Buyer or its designee is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens-Claims-Encumbrances-Interests against the Acquired Assets.

b.  The DIP Liens on, against, or in the Acquired Assets shall be released by the DIP Secured Parties and terminated upon the payment of the ~~DIP Obligations~~Purchase Price by the Buyer; *provided*, that the DIP Liens shall attach to the proceeds of the Sale to the Buyer in accordance with Paragraph 11 of this Sale Order; *provided*, *further*, either the Debtors ~~are~~or the Buyer is authorized to execute and file such statements, instruments, or releases on behalf of the DIP Secured Parties with respect to the Acquired Assets. Capitalized terms used in this subparagraph but not otherwise defined herein shall have the meanings ascribed to them in the DIP Order.

~~19.  **Permits and Licenses.**  To the maximum extent available under applicable law and to the extent provided for under the Purchase Agreement, Buyer shall be authorized, as of the Closing: (a) to enter into and perform under the POAs with the Debtors to allow Buyer to continue operating the Acquired Assets; and (b) to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and, to the maximum extent available under applicable law and to the extent provided for under the Purchase Agreement, all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Buyer as of the Closing; *provided*, *however*, that, for the avoidance of doubt, nothing in this Sale Order or the Purchase Agreement shall authorize the transfer to Buyer of any government-issued license, permit, or registration, or governmental authorization or approval, or the discontinuation of any~~

obligation thereunder, without Buyer's compliance with all applicable legal requirements and approvals under non-bankruptcy law governing such transfer. To the maximum extent available under applicable law and subject in all respects to the provisions of the Purchase Agreement, all existing licenses or permits applicable to the Debtors' business shall remain in place for Buyer's benefit until either new licenses and permits are obtained or existing licenses and permits are transferred in accordance with applicable administrative procedures and, to the maximum extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred, or conveyed to Buyer on account of the filing or pendency of the Bankruptcy Case or the consummation of the Sale.  Nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law.

Subject to paragraph 11, upon completion of the Closings, the Debtors are hereby authorized and directed to pay the claims and other obligations owing to the DIP Secured Parties from the proceeds of such Sale, which payment shall be in full satisfaction of the DIP Obligations (as defined in the DIP Order).

19.    20.  **No Successor or Other Derivative Liability**.  Except as set forth in the Purchase Agreement with respect to the Assumed LiabilitiesUpon the last Closing, to the fullest extent permitted by applicable law, neither Buyer nor its Affiliates, or their successors or assigns, shall, as a result of the consummation of the transactions set forth in the Purchase Agreement: (a) be an alter ego, mere continuation, orshall not and shall not be deemed to: (a) be a successor (or other such similarly situated party), or otherwise be deemed a successor in interest, to the Debtors or the Debtors' estates; (b, including, a "successor employer" for the purposes of the Code, ERISA, or other applicable Law; (b) have Liability or responsibility for any Liability or other obligation of the Debtors

arising under or related to the Acquired Assets, including successor or vicarious liabilities of any kind or character, including any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, or substantial continuity (including under securities laws of any Governmental Authority); (c) have, de facto or otherwise, merged or consolidated with or into the Debtors or the Debtors' estatesany Debtor; (cd) be an alter ego or a mere continuation or substantial continuation of the Debtors or any(and there is no continuity of enterprise ofbetween Buyer and the Debtors; or (d) be a joint employer or co-employer with, or successor employer of, the Debtors.  Except as specifically provided by the Purchase Agreement with respect to the Assumed Liabilities and Permitted Liens  or this Sale Order, Buyer shall not), including, within the meaning of any foreign, federal, state or local revenue, pension, ERISA, COBRA, Tax, labor, employment, environmental, or other Law, rule or regulation (including filing requirements under any such Laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' Liability under such Law, rule or regulation or doctrine; (e) be holding itself out to the public as a continuation of Seller or its estate; or (f) assume, or be deemed to assume, or in any way be responsible for, any Liens-Claims-Encumbrances-Interests of the Debtors and/or their estates, including, without limitation, pursuant to any successor liability or other theory of liability or  any responsibility for any Liens-Claims-Encumbrances-Interests against the Debtors, against an insider of the Debtors, against the Acquired Assets, the Debtors' assets, or similar liability.  Buyer is not an "insider" or "affiliate" of the Debtors, as those terms are defined in the Bankruptcy Code.

21.    **Assumption and Assignment of Assumed Contracts and Assumed Leases**. The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Contracts and Assumed Leases to Buyer free and clear of all  Liens Claims Encumbrances Interests,  and  to  execute  and  deliver  to  Buyer  such documents  or  other  instruments  as  may  be  reasonably  necessary  to  assign  and  transfer  the

Assumed Contracts and Assumed Leases to Buyer, as provided in the Purchase Agreement. Upon the assumption and assignment to Buyer of any Assumed Contract or Assumed Lease at Closing or during the Retained Contracts Period (as defined in the Purchase Agreement) in accordance with this Sale Order, and the payment of any applicable Cure Amounts in accordance with this Sale Order, Buyer shall succeed to the entirety of the Debtors' rights and obligations in respect of each Assumed Contract and Assumed Lease so assumed and assigned at Closing or during the Retained Contracts Period. Except as otherwise provided in this Sale Order or the Purchase Agreement, upon payment of any applicable Cure Amounts, to the extent set forth in section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to such Assumed Contract or Assumed Lease.

22.    **Consent to Assumption and Assignment**. All non-Debtor Counterparties to each Assumed Contract or Assumed Lease shall be deemed to have consented to such assignment under section 365(c)(1)(B) of the Bankruptcy Code, section 365(e)(2)(A)(ii) of the Bankruptcy Code, or otherwise, and Buyer shall enjoy all of the rights and benefits under each such Assumed Contract or Assumed Lease as of the applicable effective date of assumption and assignment without the necessity of obtaining such Person's written consent to the assumption or assignment of such Assumed Contract or Assumed Lease. Any non-Debtor Counterparty to an Assumed Contract that is a personal services contract that has not objected to the assignment thereof is deemed to consent to such assignment pursuant to section 365(c) of the Bankruptcy Code. Any non-Debtor Counterparty to an Assumed Lease that is a shopping center lease that has not objected to the assignment thereof is deemed to consent to such assignment pursuant to section 365(c) of the Bankruptcy Code.

23.    **Notice of Assumption and Assignment**. At the Closing, the Debtors shall have assumed and assigned to Buyer any Assumed Contract or Assumed Lease designated by Buyer for assumption at the Closing pursuant to Section 1.5(a) of the Purchase Agreement. Immediately after the Closing, the Debtors shall file a notice of sale closing indicating those Assumed Contracts and Assumed Leases that were assumed and assigned to Buyer at the Closing and shall serve the same on the non-Debtor Counterparty to each such Assumed Contract or Assumed Lease. Such notice shall serve as notice that such Assumed Contracts and Assumed Leases were assumed and assigned at the Closing, without further order of the Court.

24.    **Retained Contracts Period**. During the Retained Contracts Period, Buyer may, in its sole discretion in accordance with the terms of the Purchase Agreement, designate a Retained Contract, that has not previously been assumed and assigned or rejected, for assumption and assignment to Buyer or its designee by providing written notice to Debtors pursuant to Section 1.5(a) of the Purchase Agreement. For the avoidance of doubt, the Debtors may continue to serve Supplemental Assumption and Assignment Notices (as defined in the Bidding Procedures Order) with respect to Retained Contracts in accordance with the Bidding Procedures Order and the Purchase Agreement. For any Retained Contract that Buyer directs the Debtors to assume and assign to Buyer pursuant to the terms of the Purchase Agreement, the Debtors shall file a notice on the docket (the "**Assumption Notice**"), and, if the applicable Counterparty to a Retained Contract (a "**Retained Contract Counterparty**") requests a supplemental order approving such assumption and assignment, a proposed order, identifying the Retained Contract Counterparty, the Retained Contract, and the proposed assignee. Except where the Retained Contract Counterparty has requested a supplemental order approving such assumption and assignment, the Assumption Notice shall serve as notice that such Assumed

Contracts have actually been assumed and assigned, and such assumption and assignment shall be effective as of the date of such filing without further order of the Court.

25.    **Rejection of Contracts and Leases**. During the Retained Contracts Period, Buyer may, in its sole discretion and in accordance with the terms of the Purchase Agreement, designate a Retained Contract that has not previously been assumed and assigned or rejected, for rejection by providing written notice to the Debtors pursuant to Section 1.5(a) of the Purchase Agreement.

26.    **Payment of Cure Amounts**. All Cure Amounts that have not been waived shall be determined in accordance with the Bidding Procedures Order and this Sale Order and paid in accordance with the terms of the Purchase Agreement, subject to the terms of this Sale Order, and any other applicable order of the Court. With respect to any Assumed Contract and Assumed Lease that is assumed and assigned to Buyer at Closing or during the Retained Contracts Period, Buyer, in its sole discretion, shall pay to the applicable non-Debtor Counterparty (a) the proposed Cure Amount listed in the Potential Assumption and Assignment Notice or as set forth or modified in a Supplemental Assumption and Assignment Notice (as applicable) or (b) an amount mutually agreed upon between Buyer and the non-Debtor Counterparty or otherwise judicially resolved. The payment of the Cure Amounts shall be deemed to be in full satisfaction of and cure all defaults (as that concept is contemplated by section 365 of the Bankruptcy Code) under the Assumed Contracts and Assumed Leases necessary to effectuate the assumption by the Debtors and the assignment to Buyer of such Assumed Contracts or Assumed Leases pursuant to section 365 of the Bankruptcy Code, and, upon payment in accordance with the preceding sentence, such Assumed Contracts and Assumed Leases shall be deemed to be in full force and effect, free of default for such purposes.  To the extent a non-Debtor Counterparty to an Assumed Contract or

Assumed Lease failed to timely object to any proposed Cure Amounts listed in the Potential Assumption and Assignment Notice or as set forth or modified in a Supplemental Assumption and Assignment Notice, the Cure Amounts listed therein have been and shall be deemed to be finally determined and any such non-Debtor Counterparty shall be prohibited, barred, and estopped from challenging, objecting to, or denying the validity and finality of the Cure Amount at any time. Each non-Debtor Counterparty to an Assumed Contract or Assumed Lease is forever prohibited, barred, and estopped from asserting against the Debtors or Buyer, their Affiliates, successors or assigns, or the property of any of them, any default existing as of the date of the Sale Hearing if such default was not raised or asserted prior to or at the Sale Hearing or in a timely filed objection, as applicable.

27. **No Assumption and Assignment if Sale Does Not Close**. In the event that the Closing does not occur, none of the Contracts or the Leases shall be assumed or rejected pursuant to this Sale Order, and all of the Contracts and Leases shall remain subject to further administration in the Bankruptcy Case. Except as explicitly provided in the Purchase Agreement (including, without limitation, with respect to Buyer's obligations in connection with the Retained Contracts) or this Sale Order, unless and until a Contract or Lease becomes an Assumed Contract or an Assumed Lease pursuant to the terms of this Sale Order, Buyer shall have no liability under such Contract or Lease.

28. ***Ipso Facto*** **Clauses Ineffective**. The Assumed Contracts and Assumed Leases shall be transferred to, and remain in full force and effect for the benefit of, Buyer in accordance with their respective terms, including, without limitation, all obligations of Buyer as the assignee of the Assumed Contracts and Assumed Leases, notwithstanding any provision in any such Assumed Contracts and Assumed Leases (including, without limitation, those of the type

described in sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer. There shall be no, and all non-Debtor Counterparties to any Assumed Contract or Assumed Lease are forever prohibited, barred, and estopped from raising or asserting against the Debtors or Buyer any, defaults, breach, claim, pecuniary loss, rent accelerations, escalations, assignment fees, increases, or any fees charged to Buyer or the Debtors as a result of the assumption or assignment of the Assumed Contracts and Assumed Leases.

29.    Upon the Debtors' assumption and assignment of the Assumed Contracts and Assumed Leases to Buyer and payment of all Cure Amounts in accordance with this Sale Order, and subject to the resolution or adjudication of any disputed Cure Amounts, no default shall exist under any Assumed Contracts or Assumed Leases, and no non-Debtor Counterparty to any Assumed Contracts or Assumed Leases shall be permitted to declare a default by any Debtor or Buyer, or otherwise take action against Buyer, as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Assumed Contracts or Assumed Leases prior to the Closing Date or effective date of assignment and assumption. To the greatest extent permitted under applicable Law, any provision in an Assumed Contract or Assumed Lease that prohibits or conditions the assignment or sublease of such Assumed Contract or Assumed Lease (including, without limitation, the granting of a lien therein) or allows the non-Debtor Counterparty thereto to terminate, recapture, impose any penalty, condition on renewal, or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect with respect to assignment of the Assumed Contracts and Assumed Leases in the Sale. The failure of the Debtors or Buyer to enforce at any time one or more terms or conditions of any

Assumed Contract or Assumed Lease shall not be a waiver of such terms or conditions, or of the Debtors' and Buyer's rights to enforce every term and condition of the Assumed Contract or Assumed Lease.

20. 30. **Good Faith Purchaser**.  Buyer is a good faith purchaser and is hereby granted and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code to a "good faith" purchaser, including, without limitation, with respect to the transfer of the Assumed Contracts and Assumed Leases as part of the Sale of the Acquired Assets pursuant to section 365 of the Bankruptcy Code.

21. 31. **Validity**.  The reversal or modification of any provisions of the Sale Order shall not affect the validity of any transfer under the Purchase Agreement, or obligation or right granted pursuant to the terms of this Sale Order (unless stayed pending appeal), and, notwithstanding any such reversal or modification, the validity of any transfer under the Purchase Agreement, or obligation or right granted pursuant to the terms of this Sale Order shall be governed in all respects by the original provisions of this Sale Order, and the Purchase Agreement, as applicable.

22. 32. **Buyer's Use and Enjoyment**.  On and after the Closing Date, Buyer is entitled to possession of the Acquired Assets in possession of any Person, and all Persons, if any, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of such Acquired Assets to Buyer as of Closing.  Following the Closing under the Purchase Agreement, no holder of any Liens-Claims-Encumbrances-Interests against the Acquired Assets shall have any basis to interfere with Buyer's or its designee's use and enjoyment of the Acquired Assets based on or related to such Liens-Claims-Encumbrances-Interests, or any actions that the Debtors may take in the Bankruptcy Case, and no Person may take any action to

prevent, interfere with, or otherwise impair consummation of the transactions contemplated in or by the Purchase Agreement or this Sale Order.

33.   ~~**Authority to Assign, Lease, Sublease, License, Sublicense, Transfer, Otherwise Dispose**.   Subject to the terms of the Purchase Agreement, in connection with the transactions under the Purchase Agreement, Buyer, in its sole and absolute discretion, is authorized to allocate or assign, lease, sublease, license, sublicense, transfer, or otherwise dispose of the Acquired Assets, the Assumed Liabilities, and the Assumed Contracts and Assumed Leases to any or multiple Persons (affiliated or unaffiliated) all or a portion of its rights, interests, or obligations under the Purchase Agreement (i) for Acquired Assets and Assumed Liabilities, at the time of acquisition, and (ii) for Assumed Contracts and Assumed Liabilities, at the time of assignment (subject to satisfying applicable law with respect to adequate assurance of future performance in accordance with section 365 of the Bankruptcy Code); provided that no such Person or Persons is an "insider" (as such term is defined in section 101(31) of the Bankruptcy Code) of the Debtors without further order of the Court. Upon any such assignment, the references in this Sale Order or the Purchase Agreement to Buyer shall also apply to any such assignee.~~

23.   ~~34.~~ **Enforcement of Sale Order**.   ~~Except for the Assumed Liabilities and Permitted Liens, pursuant~~Pursuant to section 105 of the Bankruptcy Code, creditors of the Debtors are prohibited from taking any actions against Buyer or the Acquired Assets on account of Liens-Claims-Encumbrances-Interests against or in the Debtors.

24.   ~~35.~~ **Release**.   Subject to and upon the last Closing ~~Date~~date, the Debtors hereby waive any and all actions related to, and hereby release, Buyer and the property of Buyer (including,     without     limitation,     the     Acquired     Assets)     from     any     and     all

Liens-Claims-Encumbrances-Interests of any kind, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material or non-material, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise to the extent the Liens-Claims-Encumbrances-Interests arises under or is related to the sale process; *provided* that the foregoing shall not release any obligations ~~assumed or~~ established by Buyer under the Purchase Agreement or this Sale Order, including Buyer's performance obligations under the Purchase Agreement and any and all post-Closing obligations.

25.    ~~36.~~ **No Avoidance of Agreements**. Neither the Debtors nor Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided or costs and damages to be imposed under section 363(n) of the Bankruptcy Code.

26.    ~~37.~~ **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**. Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Sale Order shall be effective and enforceable immediately upon entry, and the fourteen (14)-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply. Time is of the essence in closing the Sale and the Debtors and Buyer intend to close the Sale as soon as practicable.

27.    ~~38.~~ **Order Binds Successors**. The terms of this Sale Order and the Purchase Agreement shall be binding in all respects upon: (a) Buyer and its successors and assigns; (b) Buyer's Affiliates; (c) the Debtors and their Affiliates; (d) successors of the Debtors, including, without limitation, any trustee or examiner appointed in the Bankruptcy Case or upon a conversion of the Bankruptcy Case to proceedings under chapter 7 of the Bankruptcy Code; (e) all known and unknown creditors of, and holders of equity interests in, the Debtors, including,

without limitation, any holders of Liens-Claims-Encumbrances-Interests; ~~(f) all non-Debtor Counterparties to the Assumed Contracts or the Assumed Leases;~~ and (~~g~~f) all other parties in interest in the Bankruptcy Case and their successors and assigns (collectively, the "**Bound Parties**").   The provisions of this Sale Order and the terms and provisions of the Purchase Agreement, and any actions taken pursuant hereto or thereto as of the date of entry of such order shall survive the entry of any order that may be entered confirming or consummating any chapter 11 plan of the Debtors or converting the Bankruptcy Case to chapter 7, and the terms and provisions of the Purchase Agreement, as well as the rights and interests granted pursuant to this Sale Order, and the Purchase Agreement shall continue in this or any superseding case and shall be binding upon the Bound Parties and their respective successors and permitted assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code.

28.    ~~39.~~  **Order Binds Government Authorities**. This Sale Order and the Purchase Agreement shall be binding upon and govern all acts of all Persons, governmental units (as defined in sections 101(27) and 101(41) of the Bankruptcy Code), and all holders of Liens-Claims-Encumbrances-Interests, including, without limitation, federal, state, and governmental agencies and departments, licensing authorities, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other Persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, ~~or who may be required to report, insure any title or state of title in or to any lease,~~ and each of the foregoing Persons, is hereby authorized to accept for filing any and all of the

documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

29. 40. **Conflict**. In the event that there is a conflict between the terms of this Sale Order and the terms of the Purchase Agreement, the terms of this Sale Order shall control.

30. 41. **Modification of Purchase Agreement**. The Purchase Agreement and any related agreements, documents, or other instruments, may, be modified, amended, or supplemented by the parties thereto, in a writing signed by the party against whom enforcement of any such modification, amendment, or supplement is sought, and in accordance with the terms thereof, without further order of the Court but subject to; provided, however, that any material amendments or modifications must be approved by the Court, on notice to parties in interest; provided further, however, that the final version of the Purchase Agreement beingshall be filed in the Bankruptcy Case if modified, amended, or supplemented in accordance with this provision.

31. 42. **Bulk Sales**. No bulk sales law, bulk transfer law, or similar law of any state or other jurisdiction shall apply in any way to the Sale. The Debtors and Buyer waive, and hereby shall be deemed to have waived, any requirement of compliance with, and any claims related to non-compliance with, the provisions of any bulk sales, bulk transfer, or similar law of any jurisdiction that may be applicable.

32. 43. **Privacy Policy**. Buyer shall continue the Debtors' existing policy concerningcomply with applicable Law relating to the transfer of personally identifiable information upon Closing, as may be modified in accordanceabout individuals consistent with the termsrequirements of such policySection 363(b)(1)(A) of the Bankruptcy Code.

33. 44. **Conditions Precedent**. Notwithstanding anything to the contrary herein, none of the parties to the Purchase Agreement shall have an obligation to close the Sale until all

conditions precedent in the Purchase Agreement to the parties' respective obligations to close the Sale have been met, satisfied, or waived in accordance with the terms of the Purchase Agreement.

34.    45. **Excluded Assets**. Notwithstanding anything in the Purchase Agreement or this Sale Order to the contrary and for the avoidance of doubt, the Acquired Assets shall not include any of the Excluded Assets as set forth in Section 1.2 of the Purchase Agreement; *provided, however*, this provision shall not impair the rights of Buyer to be paid for the Seller Obligations including, without limitation, from the Available Amounts subject to the terms of the Purchase Agreement.

46.    **Assumed Liabilities**. Buyer shall be responsible for the satisfaction of the Assumed Liabilities under the Purchase Agreement. Except as provided in the Purchase Agreement or this Sale Order, after the Closing, the Debtors and their estates shall have no further liability or obligations with respect to any Assumed Liability, including those arising under the Assumed Contracts or the Assumed Leases (provided that assumption and assignment of any Contract or Lease is subject to payment of any applicable Cure Amount in accordance with the Purchase Agreement), and all holders of such claims are forever prohibited, barred, and estopped from asserting any claims under any Assumed Liability (including those arising under the Assumed Contracts or the Assumed Leases) against the Debtors, their successors or assigns, and their estates.

35.    47. **Determination of Released Liens**. Except as otherwise set forth in the Purchase Agreement with respect to Assumed Liabilities and Permitted Liens, thisThis Sale Order shall be effective as a determination that, on the Closing Date, all Liens-Claims-Encumbrances-Interests of any kind or nature whatsoever existing as to the

Acquired Assets prior to the Closing have been unconditionally terminated and have no further effect as to the Acquired Assets (other than the Permitted Liens) and the acquisition by Buyer of such Acquired Assets shall be free and clear of all Liens-Claims-Encumbrances-Interests other than Permitted Liens, with such Liens-Claims-Encumbrances-Interests to attach to the proceeds of the Sale in the same order of priority and with the same extent, validity, force, and effect as such Liens-Claims-Encumbrances-Interests in the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

36. 48. **Calculation of Time**. All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

37. 49. **Change of Corporate Name**. Subject to the terms of the Purchase Agreement, the Debtors shall, and are hereby authorized and empowered to, no later thanwithin thirty (30) Business Days after the last Closing, and subject to Section 6.2 of the Purchase Agreement, take all steps necessary to effect a change in the legal name of the Debtors to remove the Business Names (as defined in the Purchase Agreement) from such names and the caption in the Bankruptcy Case. The Debtors may file a notice or other document or process requested by the Clerk of the Court, which may be a certification of counsel and order from the Court (the "**Notice of Name Change**"), which shall be effective to: (a) change their corporate names consistent with applicable law; and (b) change the captions in each Bankruptcy Case, containing the new captions and the new corporate names of the Debtors, to remove the words "Pharmaca" and "Medly."

38. 50. **Non-Severability**. The provisions of this Sale Order are non-severable and mutually dependent.

39. 51. **Automatic Stay**.  Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to deliver any notice provided for in

the Purchase Agreement, or any other Sale-related document or take any and all actions permitted under the Purchase Agreement, or any other Sale-related document in accordance with the terms and conditions thereof. The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified to the extent necessary to implement the preceding sentence.

40.    ~~52.~~ **Sale Order Survives Dismissal**. In the event of the dismissal of one or more of the Bankruptcy Case, the terms of this Sale Order shall remain in effect notwithstanding section 349 of the Bankruptcy Code.

41.    ~~53.~~ **Insurance**. Nothing in the Purchase Agreement or in this Sale Order shall have the effect of transferring, impairing, reducing, or otherwise limiting any of the Debtors' rights in any insurance policies covering Excluded Liabilities or the proceeds of such policies. For the avoidance of doubt, the Debtors reserve control over the privilege concerning any retained documents and nothing in this Sale Order relieves the Debtors of any document retention obligations.

42.    ~~54.~~ **Brokers**. No brokers for Buyer were involved in the consummation of the Sale, and no brokers' commissions are due by the Debtors to any person in connection with the Sale.

43.    ~~55.~~ **Buyer Is Party in Interest**. Buyer is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order, the Sale, and any issues related to or otherwise connected to the Purchase Agreement and the Sale.

44.    **Payment of Expense Reimbursement and Return of Deposit**. Subject to the provisions of the Bidding Procedures Order, upon the Closings of the Sale, the Debtors shall pay the amount of Five Hundred Thousand Dollars ($500,000) in cash by wire transfer to the

Stalking Horse Bidder (via wire instructions provided by the Stalking Horse Bidder to the Debtors) on account of the Expense Reimbursement (as defined in the Stalking Horse Agreement, which is as defined in the Notice of Filing of Amendment to Asset Purchase Agreement [Docket No. 318]).  The Deposit (as defined in the Stalking Horse Agreement) will be returned to the Stalking Horse Bidder no later than three (3) business day after the entry of this Order.

45. 56. **Retention of Jurisdiction**. The Court shall retain exclusive jurisdiction to, among other things, (a) interpret, enforce, and implement the terms and provisions of this Sale Order and the Purchase Agreement (including, without limitation, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith) and (b) adjudicate disputes related to this Sale Order and the Purchase Agreement (including, without limitation, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith).

57. **Prosecution of Avoidance Actions**. Buyer shall have complete and absolute discretion to pursue (or to not pursue) the Avoidance Actions against any Person or entity (including, without limitation, trade vendors, suppliers, employees, or customers).

58. **Granting of Buyer Superpriority Claim and Buyer Liens**. In respect of the obligations arising under the Purchase Agreement related to Buyer's right to receive payment from the Available Amounts on account of any Seller Obligations actually paid by Buyers, Buyer is granted the following with respect to each of the Debtors and their estates: (a) a superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code (the "**Buyer Superpriority Claim**"); and (b) a first priority lien pursuant to section 364(d)(1) of the Bankruptcy Code, to the extent that such assets are not subject to valid, perfected, and

non-avoidable liens and perfected liens junior to such valid, perfected, and non-avoidable liens otherwise (the "**Buyer Liens**") without further order, notice, or action other than the entry of this Sale Order; *provided*, *however*, that the Buyer Superpriority Claim and Buyer Liens shall be expressly subordinate to payments of any amounts due under (i) the Carve-Out, (ii) the DIP Credit Facility (as defined in the DIP Order) for principal amounts of up to Eight Million Dollars ($8,000,000) plus all interest, fees, expenses and other amounts in the DIP Credit Facility approved by the DIP Order, and (iii) any wind down amounts set forth in line 13 (Wind-Down/Trustee's Fees) of the approved Budget in the DIP Credit Facility and approved by the DIP Order, which amount shall not exceed $650,000 (it being expressly understood that the $650,000 limitation set forth herein applies to the subordination of Buyer's rights, not as a limitation on the Debtors' right to seek or obtain additional funds for the wind down of their bankruptcy estates).

59.    The Buyer Liens granted to Buyer pursuant to this Sale Order are valid, enforceable, and perfected by operation of law upon entry of this Sale Order by the Court without any further action by any Person.  Buyer shall not be required to enter into or to obtain any control agreements, landlord waivers (unless required by law or contract), mortgagee waivers, bailee waivers, or warehouseman waivers or to give, file, or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien, or similar instruments in any jurisdiction (including, without limitation, filings with the United States Patent and Trademark Office, the United States Copyright Office, or any similar agency in respect of trademarks, copyrights, trade names, or patents with respect to intellectual property) or obtain consents from any licensor or similarly

situated party in interest, or take any other action to validate, record, or perfect the Buyer Liens granted under this Sale Order.

46.    60.    **Headings**. The headings of paragraphs in this Sale Order are for reference purposes only and shall not affect the meaning or interpretation of this Sale Order.

**Attachment 1**

[Purchase Agreement]

{10820999:6 }
DOCS_SF:108380.6 56185/001108380.14 56185/001