IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>MEDLY HEALTH INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Case Nos. 22-11257 (KBO), *et seq.*<br>(Jointly Administered)<br><br>**Objections due by: April 3, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: April 11, 2023 at 9:30 a.m. (ET)** |

## MOTION OF CARDINAL HEALTH FOR
## RELIEF FROM THE AUTOMATIC STAY, FOR CAUSE, TO SET-OFF
## MUTUAL PRE-PETITION OBLIGATIONS AND TO TERMINATE CONTRACTS

Cardinal Health[2], by and through its undersigned attorneys, hereby moves (the "**Motion**") for the entry of an Order, pursuant to Sections 362(d)(1) and 553 of Title 11 of the United States Code (the "**Bankruptcy Code**") and Fed. R. Bankr. P. ("**Bankruptcy Rule**") 4001(a)(3), granting it relief from the automatic stay, for cause, to (1) setoff mutual pre-petition obligations against its general unsecured claim; and (2) terminate the Contracts (defined *infra*). In support thereof, Cardinal Health respectfully represents as follows:

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Medly Health Inc. (3391); Care Well Pharmacy, Inc. (9048); Grubbs Care Pharmacy NW Inc. (0490); Marg Pharmacy, Inc. (5838); Medly Atlanta Inc. (7312); Medly Baltimore Inc. (2354); Medly Bedford Ave Pharmacy Inc. (3690); Medly Bristol Inc. (4556); Medly Bronx Inc. (4741); Medly Chicago Inc. (5231); Medly Dallas Inc. (7581); Medly DC Inc. (9403); Medly Enterprise LLC (8898); Medly Grand Central Inc. (1741); Medly Houston Inc. (7443); Medly Jersey City Inc. (5677); Medly Mail Service Pharmacy LLC (9203); Medly Miami Inc. (8101); Medly Orlando Inc. (7581); Medly Pharmacy Inc. (4606); Medly Pharmacy PA Inc. (8494); Medly Pittsburgh Inc. (8381); Medly Queens Inc. (9623); Medly Raleigh Inc. (5140); Medly San Antonio Inc. (9973); Medly Stamford Inc. (4966); Medly Tampa Inc. (5128); Medly UCHC Pharmacy Inc. (6672); Medly Utah Inc. (4648); Pharmaca Integrative Pharmacy, Inc. (0334); Tango340B LLC (4781); West Campbell Pharmacy Inc. (2931); Khora Health Solutions Inc. (2909); and RPH Innovations LLC (3767). The Debtors' business address is 7088 Winchester Circle, Suite 100, Boulder CO 80301.

[2] **Cardinal Health** means the following affiliated companies: Leader Drugstores, Inc. d/b/a LeaderNET, a subsidiary of Cardinal Health, Inc., Cardinal Health, LLC 118; Cardinal Health 110, LLC, Cardinal Health 112, LLC, Cardinal Health 110, LLC d/b/a Kinray, and mScripts, LLC, owned by mScripts Holdings, LLC, a subsidiary of Cardinal Health, Inc., and any other subsidiary of Cardinal Health, Inc., an Ohio corporation, as may be designated from time to time by Cardinal Health, Inc.

## I.   JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion, pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding, pursuant to 28 U.S.C. §§ 157(b)(2)(B), (G).

4. The statutory predicates for the relief sought in this Motion are Sections 362(d)(1) and 553 of the Bankruptcy Code and Bankruptcy Rule 4001(a)(3).

## II.   RELEVANT BACKGROUND

**A. The Chapter 11 Case.**

5. On December 9, 2022 (the "**Petition Date**"), the Debtors commenced these proceedings under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

6. On December 29, 2022, the Debtors filed their Second Omnibus Motion (the "**Rejection Motion**"), Seeking Entry of an Order (i) Authorizing the Rejection of Certain (a) Unexpired Leases and (b) Executory Contracts; (ii) Authorizing the Abandonment of Certain Personal Property; and (iii) Granting Related Relief [Dkt. No.127-2]. In the Motion, the Debtors do not list the Contracts by name[3]. Rather, the Contracts are referenced as follows:

| Cardinal | 7000 Cardinal Place, Dublin, Oh 43017 | Pharma Drug Wholesaler |
| --- | --- | --- |
| LeaderNET | 7000 Cardinal Place, Dublin, Oh 43017 | Managed Contracting Services |
| mscripts, LLC | 445 Bush St Ste 200 San Francisco, CA 94108 | Mobile pharmacy solutions |

---

[3] By way of clarification, all of the Contracts, and specifically the interrelated LeaderNET Contracts (defined below), irrespective of how identified by the Debtors in the Motion, or otherwise described herein, were rejected by the Debtors, and Cardinal Health is seeking relief from stay, to the extent necessary, to setoff under and terminate all Contracts.

7. The Rejection Motion was heard on February 7, 2023, and thereafter, on February 10, 2023, the Court entered the Order (i) Authorizing the Rejection of Certain (A) Unexpired Leases and (B) Executory Contracts, Each Effective as of the Rejection Date, (ii) the Abandonment of Certain Personal Property Effective as of the Rejection Date, and (ii) Granting Related Relief [Dkt. No. 372] (the "**Order**").[4]

**B. The Contracts between Cardinal Health and the Debtors.**

8. At various times prepetition, Cardinal Health and the Debtors entered into multiple, interrelated and complex agreements including, but not limited to, that certain Retail Independent Pharmacy Master Service Agreement ("**Master Agreement**"), that certain Reconciliation Services Agreement ("**Recon Agreement**"), that certain LeaderNET Services Agreement ("**Services Agreement**"), and those multiple Central Pay Service Agreements and addendums ("**Central Pay Agreements**", and together with the Master Agreement, the Recon Agreement, and the Services Agreement, the "**LeaderNET Contracts**").

9. Cardinal Health, as a PSAO[5] through LeaderNET, provides a broad range of services to its network of independent member pharmacies, which services are intended to achieve contract and payment efficiencies for LeaderNET members in their interactions with third-party payers and the third-party payers' pharmacy benefit managers.

10. Prepetition, on or around April 19, 2012, Cardinal Heath and the Debtors entered into that certain Application Service Provider Agreement ("**ASPA**"), pursuant to which the Debtors utilized a cloud-based mobile pharmacy platform ("**mscripts$^{tm}$**") which delivered

---

[4] On February 14, 2023, the Court entered a *Corrected Order (I) Authorizing the Rejection of Certain (A) Unexpired Leases and (B) Executory Contracts, Each Effective as of the Rejection Date, (II) the Abandonment of Certain Personal Property Effective as of the Rejection Date, and (III) Granting Related Relief*, which has no effect on the rejection of the Contracts.

[5] LeaderNET is a subsidiary of Cardinal Health, Inc. and a pharmacy services administrative organization ("**PSAO**").

targeted messages to patients through mobile and web platforms tied directly to the pharmacy dispensing system.

11.     Prepetition, on or around October 3, 2022, Cardinal Health and the Debtors entered into that certain Prime Vendor Agreement, as amended (the "**PVA**", and together with all interrelated LeaderNET Contracts and the ASPA, are sometimes collectively referred to herein as the "**Contracts**").[6] Pursuant to the PVA, among the other terms, the Debtors designated Cardinal Health as its primary wholesale pharmaceutical supplier and agreed to purchase both branded and generic pharmaceuticals from Cardinal Health (the "**Products**").

**C.  Cardinal Health's Prepetition Claims.**

12.     As of the Petition Date, according to Cardinal Health's books and records, the amount of $9,999,949.66 is owed by the Debtors to Cardinal Health under the PVA for the purchase of Products (the "**Prepetition PVA Claim**"). *See* **Exhibit A** attached hereto.

13.     As of the Petition Date, according to Cardinal Health's books and records, the amount of $147,543.07 is owed by the Debtors to Cardinal Health under the LeaderNET Contracts for unpaid service fees.  *See* **Exhibit B** attached hereto.

14.     As of the Petition Date, according to Cardinal Health's books and records, the amount of $1,542.31 is owed by the Debtors to Cardinal Health under the ASPA for unpaid service fees.  *See* **Exhibit C** attached hereto.

15.     Based on Cardinal Health's books and records, the total claim owed by the Debtors to Cardinal Health is $10,149,035.04.[7]

---

[6] Due to the proprietary and voluminous nature of the Contracts they are not attached hereto, but can be made available upon request subject to appropriate confidentiality provisions.

[7] The amount of the claims and credits referenced in sections III.C and II.D (below) are approximate and may remain subject to further reconciliation by the parties.

**D. The Prepetition Credits.**

16. Under the PVA, Cardinal Health holds prepetition rebates ("**Prepetition PVA Credits**") in favor of the Debtors. *See* **Exhibits D-1 and D-2** attached hereto. The Prepetition PVA Credits are summarized as follows:

| Rebate Type | Amount |
| --- | --- |
| Retail Business Conference ("RBC") Rebates | $63,299.95 (Ex. D-1) |
| Returned Goods Policy for Unmerchantable Product (generic) Rebates | $177,844.82 (Ex. D-2)<br><br>(Rebates in the amount of $119,628.69 accumulated in November 2023 and rebates in the amount of $58,216.13 accumulated between December 1-8, 2023) |
| Inmar Rebates | $136,805.43[8] |
| Total Prepetition PVA Credits | $377,950.20 |

17. There are no credits, rebates or other amounts to be setoff under either the LeaderNET Contracts or ASPA.

### III.   RELIEF SOUGHT

18. By this motion, Cardinal Health seeks, to the extent necessary, entry of an order granting it relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code to (i) setoff the mutual prepetition debts and (ii) terminate the Contracts. In addition, Cardinal Health seeks a waiver of Bankruptcy Rule 4001(a)(3), and such other and further relief as the Court deems appropriate.

---

[8] The Exhibit supporting the Inmar Rebates is not yet available as of this filing.

## IV. LEGAL ARGUMENT

### A. Cause exists to waive the automatic stay because the parties have the right of mutual setoff.

19. Section 362(d)(1) of the Bankruptcy Code allows a party in interest to request relief from the automatic stay "for cause". *See* 11 U.S.C. §§ 362(d)(1). Although cause is not defined in the Bankruptcy Code, courts have determined whether cause exists by looking at "the totality of the circumstances in each particular case." *See Bricker v. Scalera (In re Scalera)*, 521 B.R. 513, 516 (Bankr. W.D. Pa. 2014); *In re Project Orange Assocs.*, LLC, 432 B.R. 89, 113 (Bankr. S.D.N.Y. 2010).

20. The right of setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A." *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995); *See also*, *In re WL Homes LLC*, 471 B.R. 349, 351 (Bankr. D. Del. 2012).

21. The existence of the right of setoff constitutes sufficient "cause" to grant stay relief to permit setoff of mutual, prepetition debts. *See, In re Nuclear Imaging Sys., Inc.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000). Upon demonstrating a right to setoff, a creditor has established a *prima facie* showing of cause for stay relief under section 362(d)(1) of the Bankruptcy Code. *Id. See also, In re Gould,* 401 B.R. 415, 426 (9th Cir. BAP 2009); *United States v. Orlinski (In re Orlinski)*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991).

22. A creditor's contractual or common law right of setoff is preserved under the Bankruptcy Code. Section 553 of the Bankruptcy Code provides, in pertinent part:

> [e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a).

23. "Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Strumpf*, 516 U.S. at 18.[9] *See*, *In re Fu*, No. 17-41205 CN, 2020 WL 9211230 (Bankr. N.D. Cal. Sept. 25, 2020) (the Bankruptcy Code recognizes and preserves rights that exist under non-bankruptcy law such as the rights to setoff and recoupment).

24. A creditor seeking to setoff or recoup a debt must establish a claim and a right to do so under state or federal law. *In re Pieri*, 86 B.R. 208, 210 (9th Cir. 1988). The PVA contains a choice of law clause which states:

> The terms of this Agreement shall be governed and controlled under the laws of the State of Ohio, without regard to conflict of law principles.

See, PVA, paragraph 21.

25. In addition, "the right to setoff mutual debts exists as a remedy under Ohio law." *Lewis v. United Joint Venture*, 691 F.3d 835, 839 (6th Cir. 2012). "In Ohio, the decision to grant a party's request for a setoff lies within the discretion of the trial court." *Id*. Indeed, The Ohio Supreme Court has described the right to setoff in an ordinary debtor-creditor relationship as "an equitable and statutory defense." *Daugherty v. Cent. Trust Co. of Ne. Ohio, N.A.*, 28 Ohio St. 3d 441, 447, 504 N.E.2d 1100, 1104 (1986).

26. Thus, Cardinal Health submits that Ohio state law, applicable to the relief requested herein, permits the setoff. *See also, Restatement (Second) of Conflicts of Laws § 187*.

---

[9] Cardinal Health submits that it has both a common-law right of setoff, and a contractual right of setoff. *See* Black's Law Dictionary 1538 (4th ed. 1968) (Setoff has been defined as that right which exists between two parties, each of whom under an independent contract owes an ascertained amount to the other, to set off his respective debt by way of mutual deduction...). Cardinal Health also reserves the right to assert that all or part of its right to apply debts of the Debtors against amounts owed to Cardinal Health are subject to a right of recoupment.

### B. Cause Exists for Relief from the Automatic Stay Because the Parties Have the Right of Mutual Setoff.

27. As set forth in section 553(a) above, the three (3) elements necessary to exercise a right of setoff are as follows: (a) A debt exists from the creditor to the debtor that arose before the commencement of the bankruptcy case; (b) the creditor has a claim against the debtor that arose before the commencement of the bankruptcy case; and (c) the debt and the claim are mutual obligations. *Folger Adam Security, Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 262-63 (3rd Cir. 2000).

28. Here, Cardinal Health satisfies each of the elements necessary to exercise a right of setoff under section 553(a) of the Bankruptcy Code. First, the Prepetition PVA Claims and the Prepetition PVA Credits both arose before the Petition Date, fulfilling the first two elements under section 553(a). Consequently, under section 553(a) of the Bankruptcy Code, a creditor may set off its claim for damages from a pre-petition contract against a pre-petition debt that it otherwise would owe to the debtor. *See, e.g., In re Commc'n Dynamics, Inc.*, 382 B.R. 219, 230 (Bankr. D. Del. 2008); *In re Public Serv. Co. of New Hampshire*, 884 F.2d 11, 15 (1st Cir. 1989).

29. Lastly, the mutuality requirement under section 553(a) of the Bankruptcy Code requires that the claims sought to be set off exist between the same parties. *In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010); *In re Bridge Info. Sys., Inc.*, 314 B.R. 421, 428 (Bankr. E.D. Mo. 2004). The Prepetition PVA Credits and the Prepetition PVA Claims are owed to and from the same parties, so the mutuality element has been satisfied. Cardinal Health therefore holds a valid and enforceable right of setoff against the Debtors under section 553(a) of the Bankruptcy Code.

30. Since the Prepetition PVA Credits and the Prepetition PVA Claims both arose pre-petition, and these mutual obligations are due to the parties in their same rights and capacities, Cardinal Health submits it has the right to setoff the Prepetition PVA Credits against the Prepetition PVA Claims.

31. Therefore, Cardinal Health hereby moves for the entry of an order by this Court permitting stay relief so as to permit Cardinal Health to setoff the Prepetition PVA Credits against the Prepetition PVA Claims.

**C.  Relief from Stay to Terminate the Contracts is Appropriate.**

32. It is well-settled that rejection of an executory contract is not the equivalent of termination of the contract. It is only a breach. *See In re Columbia Gas Sys., Inc.* (*Enterprise Energy Corp. v. U.S.*), 50 F.3d 233, 239 n.8 (3rd Cir.1995); *In re DBSI, Inc.,* 409 B.R. 720, 731 (Bankr.D.Del.2009) (citing *In re Austin Dev. Co.,* 19 F.3d 1077, 1082-83 (5th Cir.1994); *In re Bacon*, 212 B.R. 66 (Bankr. E.D. Pa. 1997). In fact, "contract rejection" is a bankruptcy concept that determines whether the estate will retain an interest in the contract terms, whereas "contract termination" is state law concept that is prescribed by state common law or statutes. *See*, 11 U.S.C. § 365.

33. Although the Contracts may have been rejected, relief from the automatic stay may still be required to terminate the Contracts. *See Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne),* 114 F.3d 379, 386–87 (2nd Cir. 1997) (discussing the effect of rejection on executory contracts).

34. In the Rejection Motion, the Debtors stated they "analyzed their executory contracts and determined in their business judgment that certain Contracts are unnecessary and burdensome to the Debtors' estates." *See* Rejection Motion, ¶ 12. The Debtors went on to further state that, in their business judgment and in consultation with their advisors:

the costs incurred under the Leases and Contracts constitute an unnecessary drain on the Debtors' already limited resources. The transactional costs and postpetition carrying costs associated with marketing the Contracts and Leases exceed any potential benefit that may be realized from potential assignments or subleases. Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of the Debtors' business judgment, the Debtors believe that the rejection of the Leases and Contracts as of the Rejection Date, is in the best interests of the Debtors, their estates, and all parties in interest.

*See* Rejection Motion, ¶ 13.

35. In rejecting the Contracts, the Debtors repudiated any further performance of their duties under the Contracts. *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019).

36. Likewise, it is black-letter law that a material breach[10] of a contract excuses future performance by the non-breaching party. *Marion Family YMCA v. Hensel*, 178 Ohio App.3d 140, 897 N.E.2d 184 (2008), *citing Nious v. Griffin Constr., Inc.*, 10th Dist. No. 03AP–980, 2004 Ohio 4103, 2004 WL 1752872, ¶ 16.[11]

37. In this case, the stated purpose for the rejection is that the Contracts are burdensome and do not benefit the Debtors' estates. Thus, the Debtors rejected the Contracts so as not to have further obligations under the Contracts, and the breach excused Cardinal Health from further performance under the Contracts. It is therefore inequitable to bind Cardinal Health to Contracts under which it has no obligations left to perform.

38. Based on the foregoing, Cardinal Health has provided sufficient basis for relief from stay for cause to terminate the Contracts, and the rejected Contracts should therefore be terminated.

---

[10] A "material breach of contract" is a failure to do something that is so fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform. WILLISTON ON CONTRACTS, Chapter § 63:3.

[11] As discussed *supra*, Ohio law is the controlling state law.

## V. WAIVER OF BANKRUPTCY RULE 4001(A)(3)

39. The Debtors request a waiver of Bankruptcy Rule 4001(a)(3).

40. Bankruptcy Rule 4001(a)(3) provides that "[an] order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of fourteen days after entry of the order, unless the court orders otherwise."

41. Because Cardinal Health has established a *prima facie* case for relief from the stay, for cause, Cardinal Health submits it is appropriate for this Court to waive the 14-day injunction under Bankruptcy Rule 4001(a)(3), and permit Cardinal Health to immediately exercise its rights to setoff, and terminate the Contracts.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, Cardinal Health respectfully requests that this Court enter an order granting Cardinal Health stay relief to (i) setoff the Prepetition PVA Credits against the Prepetition PVA Claims, and (ii) terminate the Contracts. In addition, Cardinal Health seeks a waiver of Bankruptcy Rule 4001(a)(3), and such other and further relief as the Court deems appropriate.

| | |
|---|---|
| Dated:  March 16, 2023<br>           Wilmington, Delaware | Respectfully submitted,<br><br>HILLER LAW, LLC<br><br> /s/ Adam Hiller<br>Adam Hiller (DE No. 4105)<br>300 Delaware Avenue, Suite 210, #227<br>Wilmington, Delaware 19801<br>(302) 442-7677 telephone<br>ahiller@adamhillerlaw.com |

-and-

-12-

    Scott A. Zuber, Esq. (Admitted *Pro Hac Vice*)
    Terri Jane Freedman, Esq. (Admitted *Pro Hac Vice*)
    **CHIESA SHAHINIAN & GIANTOMASI PC**
    105 Eisenhower Parkway
    Roseland, NJ 07068
    Tel: (973) 325-1500
    Email:szuber@csglaw.com
    Email: tfreedman@csglaw.com

*Attorneys for Cardinal Health*